**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LISA VIZCARRA,**<br><br>Plaintiff**,**<br><br>vs.<br><br>**UNILEVER UNITED STATES, INC.,**<br><br>Defendant**.** | CASE NO. 4:20-cv-02777-YGR<br><br>**ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO FILE A STATEMENT OF RECENT DECISION**<br><br>Re: Dkt. Nos. 7, 20 |

Plaintiff Lisa Vizcarra brings this putative class action against defendant Unilever United States, Inc. ("Unilever") for claims arising out of Unilever's labeling and marketing of Breyers Natural Vanilla Ice Cream as containing vanilla flavor derived exclusively from the vanilla plant. Vizcarra alleges that the labeling and marketing for this product is false and misleading because laboratory testing of the ice cream revealed that its vanilla flavor primarily is derived from substances other than the vanilla plant.

Pending before the Court is Unilever's motion under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) to dismiss Vizcarra's claim for damages under the Consumer Legal Remedies Act ("CLRA"), her claim under the unlawful prong of California's Unfair Competition Law ("UCL"), and her request for injunctive relief. Also pending is Unilever's motion to file a statement of recent decision. Having carefully considered the pleadings and the parties' briefs, and for the reasons set forth below, the Court **GRANTS** the motion to file a statement of recent decision and **DENIES** the motion to dismiss.

**I.   BACKGROUND**

Unilever sells Breyers Natural Vanilla Ice Cream in cartons that state "natural vanilla" on the front side in large green letters against a black background. Complaint ("Compl.") ¶ 12,

1   Docket. No. 1.  The front of the carton depicts two vanilla beans and vanilla flowers and a scoop

2   of the ice cream with noticeable vanilla-bean specks.  *Id.*  Vizcarra alleges that she interpreted this

3   labeling and marketing as indicative that the ice cream's vanilla flavor is derived from the vanilla

4   plant and that she relied on this labeling and marketing when purchasing the ice cream.  *Id.*  The

5   ice cream's ingredient list states that the ice cream contains "natural flavor," which Vizcarra

6   alleges could be interpreted by a reasonable consumer as consistent with the ice cream's vanilla

7   flavor being derived from the vanilla plant.  *Id.* ¶¶ 37, 46-47, 62.

8         Laboratory testing performed on Breyers Natural Vanilla Ice Cream revealed that most of

9   its vanilla flavor is derived from sources that are not the vanilla plant.  *Id.* ¶ 29.  Vizcarra alleges

10  that the labeling used for Breyers Natural Vanilla Ice Cream does not comply with applicable

11  food-labeling regulations, which require that the ice cream be labeled as "artificially flavored

12  vanilla" in light of the near-absence of vanilla flavor in the ice cream that is actually derived from

13  the vanilla plant.  *Id.* ¶¶ 26, 43.

14        Vizcarra alleges that she would not have purchased or paid more for Breyers Natural

15  Vanilla Ice Cream had she realized that much, if not all, of its vanilla flavor comes from non-

16  vanilla-plant sources.  *Id.* ¶ 7.  Vizcarra would purchase Breyers Natural Vanilla Ice Cream again

17  in the future if the product reflected its labeling and marketing.  *Id.* ¶ 12.

18        In the complaint, Vizcarra asserts the following claims on her own behalf and on behalf of

19  a proposed class of consumers in California who purchased Breyers Natural Vanilla Ice Cream for

20  personal use from April 21, 2016, to the present: (1) claims under the unlawful, unfair, and

21  fraudulent prongs of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) a claim for false and

22  misleading advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. &

23  Prof. Code § 17500 *et seq.*; and (3) a claim for violations of the CLRA, Cal. Civ. Code § 1750 *et*

24  *seq.*  Vizcarra seeks damages, restitution, and an injunction to stop Unilever's allegedly false and

25  misleading marketing practices with respect to Breyers Natural Vanilla Ice Cream, among other

26  remedies.

27  //

28

**II.     LEGAL STANDARD**

**A.     Motion to dismiss under Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for "failure to state a claim upon which relief can be granted."  Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  The complaint must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When considering a motion to dismiss, a court must accept all material allegations in the complaint as true and construe them in the light most favorable to plaintiff.  *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

**B.     Motion to dismiss under Rule 12(b)(1)**

Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways.  A "facial" attack accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6), namely by determining whether the allegations are sufficient to invoke the court's jurisdiction while accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor.  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

A "factual" attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings.  *Safe Air for Everyone*, 373 F.3d at 1039.  "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof' . . . under the same evidentiary standard that governs in the summary judgment context."  *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) (citations omitted).  "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met."  *Id.* (citation omitted).  "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself."  *Id.* (citations omitted).  "It is to be presumed that a cause lies outside [a

3

1  federal court's] limited jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S.
2  375, 377 (1994) (citation omitted).

3  **III.    DISCUSSION**

4      Unilever moves to dismiss: (1) Vizcarra's claim for damages under the CLRA with
5  prejudice on the ground that the claim is barred because she failed to send Unilever a pre-lawsuit
6  demand letter as required by California Civil Code section 1782(a); (2) Vizcarra's unlawful-prong
7  UCL claim to the extent that it is predicated on violations of the CLRA on the ground that
8  Vizcarra's CLRA claim for damages is subject to dismissal; and (3) Vizcarra's request for
9  injunctive relief on the ground that she lacks standing under Article III.

10      The Court addresses each of these arguments in turn.

11      **A.    Notice required by the CLRA**

12      California Civil Code section 1782(a) provides that, at least thirty days prior to
13  commencing an action for damages under the CLRA, a consumer is required to (1) notify the
14  person alleged to have committed the violations of the CLRA as described in California Civil
15  Code section 1770; and (2) demand that the person "correct, repair, replace, or otherwise rectify
16  the goods or services" in question. Cal. Civ. Code § 1782(a). The notice must be in writing and
17  must be sent by certified or registered mail. *Id.* This notice requirement does not apply where the
18  action is for injunctive relief. Cal. Civ. Code § 1782(d). A demand letter under section 1782(a)
19  can be made on behalf of an individual consumer or on behalf of a class of consumers. *See Kagan*
20  *v. Gibraltar Sav. & Loan Assn.*, 35 Cal. 3d 582, 590 (1984), *disapproved of on other grounds by*
21  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634 (2009) (holding that a demand letter under section
22  1782(a) can set forth "an individual or class grievance" with respect to alleged violations of
23  section 1770).

24      Unilever moves to dismiss Vizcarra's claim for damages under the CLRA with prejudice,
25  arguing that Vizcarra failed to comply with the requirements of section 1782(a) because Unilever
26  did not receive a demand letter from Vizcarra prior to her filing this action on April 21, 2020.
27  Unilever represents that on February 19, 2020, it received a letter from counsel for Steve Nunez,
28  who is a named plaintiff in a separate lawsuit against Unilever pending in the Central District of

United States District Court
Northern District of California

1    California.  *See* Letter, Docket No. 7-3; Declaration of Courtney Ozer ¶ 6, Docket No. 7-2.  This

2    letter states that Nunez sought to notify Unilever, on his own behalf and on behalf of others

3    similarly situated, that the labeling and marketing of certain of Unilever's "vanilla ice cream

4    products" is misleading and in violation of the CLRA and other laws because the products' vanilla

5    flavor is, in fact, artificial.  Letter at 2-3, Docket No. 7-3.  This letter also states that Nunez

6    intended to bring class claims on behalf of himself and others similarly situated against Unilever

7    in the event that Unilever failed to remedy the violations.  *Id.*  Unilever argues that Vizcarra

8    cannot rely on Nunez's letter to satisfy section 1782(a)'s requirements in this action, because (1)

9    that letter did not provide Unilever with notice of Vizcarra's demands or with an opportunity to try

10   to resolve Vizcarra's claims; and (2) no class of consumers of Breyers Natural Vanilla Ice Cream

11   has been certified.

12         The Court concludes that the letter that Unilever received from Steve Nunez prior to the

13   filing of this lawsuit satisfies the notice requirements of section 1782(a) with respect to the CLRA

14   damages claims asserted in the complaint.

15         "The purpose of the notice requirement of section 1782 is to give the manufacturer or

16   vendor sufficient notice of alleged defects to permit appropriate corrections or replacements. . . .

17   The clear intent of the [CLRA] is to provide and facilitate pre-complaint settlements of consumer

18   actions wherever possible and to establish a limited period during which such settlement may be

19   accomplished.  This clear purpose may only be accomplished by a literal application of the notice

20   provisions."  *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 40-41 (1975).

21         A demand letter served in accordance with section 1782(a) can facilitate the settlement of

22   an individual consumer's claim for damages because a person served with the demand letter can

23   negate the damages claim by correcting the alleged CLRA violation (such as by offering a

24   replacement product to the consumer) within thirty days of receiving the demand letter.  *See* Cal.

25   Civ. Code § 1782(b).  The resolution of claims for damages asserted on behalf of a class of

26   consumers, however, requires more than simply correcting the alleged CLRA violation with

27   respect to an individual consumer who seeks to be a class representative.  In that circumstance, the

28   person served with the demand letter cannot negate the class claims for damages unless the person

offers to provide appropriate corrections to *all* members of the class of consumers. *See* Cal. Civ. Code § 1782(c) (providing that no action for damages on behalf of a class of consumers may be maintained if a person alleged to have violated section 1770 shows that he or she has identified and notified the members of the class that he or she will remedy the violations upon request and he or she has ceased or will cease to engage in the violations); *see also Kagan*, 35 Cal. 3d at 591 (holding that "a prospective defendant receiving notice of a grievance which affects a class of consumers can avert a subsequent class action only by remedying the contested practices as to all affected consumers"); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1023 (9th Cir. 2011) (noting that "if a defendant seeks to avoid facing a class action, it must take certain steps regarding '[a]ll consumers similarly situated' to the person giving notice") (quoting Cal. Civ. Code § 1782(c)(1)).

Here, contrary to Unilever's assertions, Nunez's letter provided Unilever with notice, not only of his individual claims, but of the claims he sought to assert on behalf of other similarly situated consumers who purchased Unilever's vanilla ice cream products from January 1, 2014, to the present. That class of consumers includes Vizcarra, who alleges to have purchased Breyers Natural Vanilla Ice Cream during that time period. *See* Compl. ¶ 12, Docket No. 1. It also includes the members of the proposed class of California consumers that Vizcarra seeks to represent in this action, who purchased the ice cream in question from April 21, 2016, to the present. *Id.* ¶ 80. Further, Nunez's letter provided Unilever with an opportunity to resolve the claims of consumers similarly situated to Nunez, which, again, included Vizcarra and the members of the proposed class in this action. Unilever could have resolved the class claims by performing the actions required in section 1782(c).[1] Because Nunez's letter provided Unilever with the

---

[1] Unilever implies that the purpose of the notice requirement in section 1782(a) is to provide the defendant with the opportunity to "pick off" potential class representatives by resolving the individual claims of the potential class representatives. Such an argument is inconsistent with the requirements of section 1782(c) and the CLRA's legislative intent. *See* Cal. Civ. Code § 1782(c); *Kagan*, 35 Cal. 3d at 593 (noting that the "clear legislative intent" of the CLRA is to preclude prospective defendants from "avert[ing] a class action by exempting or 'picking off' prospective plaintiffs one-by-one through the provision of individual remedies"). Moreover, "[o]nce a person has been the victim of a proscribed practice under the CLRA and makes a demand on behalf of a class, remedying the plaintiff's individual complaint does not disqualify her as class representative." *Polo v. Innoventions International, LLC*, 833 F.3d 1193, 1198 (9th Cir. 2016) (citation and internal quotation marks omitted).

6

1  opportunity to resolve the individual and proposed class claims for damages under the CLRA

2  asserted here, such claims cannot be dismissed for failure to comply with section 1782(a).

3        Unilever's argument that Nunez's letter could not provide notice to Unilever of Vizcarra's

4  claims because no class has been certified has no merit.  Section 1782(c) does not require that a

5  class be certified before notice under section 1782(a) can be provided on behalf of a class of

6  consumers; nor does it require that a class be certified before the person who receives a demand

7  letter on behalf of a class of consumers can resolve the class claims by following the procedures

8  set forth in that statute.  *See Kagan*, 35 Cal. 3d at 592 (holding that a demand letter indicating that

9  persons other than the consumer who sent it could be affected by the alleged CLRA violations is

10  sufficient to "put [the defendant] on notice that its alleged violations of section 1770 affected

11  individuals in addition to [the consumer who sent it] and her husband, and possibly a broad class

12  of consumers" and to trigger "an affirmative obligation to meet the conditions set forth in section

13  1782, subdivision (c) in order to avert a class action").

14        The Court finds that its conclusion that Nunez's letter satisfies section 1782(a)'s

15  requirements is further supported by California Civil Code section 1760, which provides that the

16  CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to

17  protect consumers against unfair and deceptive business practices and to provide efficient and

18  economical procedures to secure such protection."  Cal. Civ. Code § 1760.  Interpreting section

19  1782(a) as requiring each consumer similarly situated to Nunez to serve Unilever with his or her

20  own demand letter, as Unilever urges the Court to do, would be contrary to the text and purpose of

21  that statute, as discussed above, and it would also contravene section 1760's requirement that the

22  CLRA be construed and applied in a manner that "provide[s] efficient and economical procedures

23  to secure [the CLRA's] protections."

24        The Court's conclusion is not altered by the cases upon which Unilever relies for the

25  proposition that Nunez's demand letter does not satisfy section 1782(a) with respect to the CLRA

26  claims in this action.  In *Victor v. R.C. Bigelow, Inc.*, No. 13-CV-02976-WHO, 2014 WL

27  1028881, at *19 (N.D. Cal. Mar. 14, 2014), the demand letter upon which the plaintiff relied was

28  sent by a named plaintiff in an earlier-filed lawsuit more than a year before the lawsuit before the

court was filed. The court found that this demand letter was insufficient under section 1782(a) on the ground that it was not provided to the defendant within thirty days of the filing date of the lawsuit pending before it. This opinion, however, did not address whether the demand letter in question had been sent by the named plaintiff in the earlier-filed lawsuit on behalf of a class of consumers that included the plaintiff. Accordingly, this opinion does not conflict with the findings and reasoning here as to Nunez's letter. In *Stearns v. Ticketmaster Corp.*, No. CV080117DSFJTLX, 2008 WL 11383479, at \*2 (C.D. Cal. May 28, 2008), *aff'd in part and rev'd in part* (9th Cir. 2011), the district court held that a demand letter was insufficient under section 1782(a) because the consumer who sent it did not expressly state that she would seek class action relief if the defendants did not meet her demands. Unilever fails to mention that, on appeal, the Ninth Circuit concluded that this holding was erroneous. The court of appeals held that the letter provided sufficient notice to the defendants about the potential for class action litigation because the letter "expressly told" the defendants that they would need to comply with section 1782(c) if they wished to avoid CLRA claims on behalf of a class of consumers. *See Stearns*, 655 F.3d at 1023. Finally, in *Keilholtz v. Superior Fireplace Co.*, No. C 08-00836 CW, 2009 WL 839076, at \*2-3 (N.D. Cal. Mar. 30, 2009), the court held that a demand letter sent by a consumer seeking to represent a *state-wide* class of consumers did not satisfy section 1782(a) because it could not have facilitated the settlement of the claims of the proposed *nationwide* class in the case before it. This problem is not present here. Nunez's demand letter was sent on behalf of similarly situated consumers who purchased Unilever's vanilla-flavored ice cream products from January 1, 2014, to the present; this class includes all members of the proposed class that Vizcarra seeks to represent in this action, which are California consumers who purchased Breyers Natural Vanilla Ice Cream from April 21, 2016, to the present. Accordingly, *Keilholtz* does not conflict with the Court's reasoning and conclusion here.

For the foregoing reasons, the Court **DENIES** Unilever's motion to dismiss Vizcarra's claims for damages under the CLRA.

//

**B.     UCL claim**

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted).

Unilever moves to dismiss Vizcarra's claim under the unlawful prong of the UCL, arguing that this claim fails to the extent that it is predicated on violations of the CLRA because the CLRA damages claims in this action are subject to dismissal for failure to comply with the notice requirements of section 1782(a).

Because the Court has concluded that the CLRA damages claims in this action are not subject to dismissal for failure to comply with section 1782(a), Unilever's motion to dismiss Vizcarra's UCL claim is without merit. The Court, therefore, **DENIES** Unilever's motion to dismiss as to this claim.

**C.     Standing to seek injunctive relief**

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (citation and internal quotation marks omitted). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citation and internal quotation marks omitted).

Article III standing differs from statutory standing in that the lack of the former "requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)," whereas the lack of the latter "requires dismissal for failure to state a claim" under Federal Rule of Civil Procedure 12(b)(6). *Id.* (citation omitted). This distinction impacts the scope and nature of the court's analysis. For example, whereas the court must apply the standards of *Twombly* and *Iqbal* when resolving a Rule 12(b)(6) motion, a court may not apply such standards when deciding

9

1  a Rule 12(b)(1) challenge to constitutional standing.  *See id.* at 1068 ("*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in determining whether plaintiff states a claim under 12(b)(6), the court necessarily assesses the merits of plaintiff's case. But the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim[.]").

To have Article III standing to seek "injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted).  "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show a sufficient likelihood that he will again be wronged in a similar way."  *Id.* (internal citations and quotation marks omitted).

Unilever argues that Vizcarra lacks standing to seek injunctive relief because she is now aware of the true source of the vanilla flavoring in the ice cream at issue and therefore cannot allege that she is likely to suffer future injury as a result of its labeling and marketing.

Unilever's argument fails in light of *Davidson*.  There, the Ninth Circuit considered whether a plaintiff suing under California consumer-protection statutes based on a theory of fraudulent misrepresentations and omissions had standing to seek injunctive relief.  *Id.* at 961. The defendant in *Davidson* allegedly had misrepresented through labeling and advertising that certain of its wipes were "flushable"; the plaintiff purchased these wipes and later discovered that the wipes were not, in fact, flushable.  *Id.* at 961-62.  The court of appeals concluded that the plaintiff had satisfied Article III's requirements for seeking injunctive relief by averring that she "would purchase truly flushable wipes manufactured by [the defendant] if it were possible," and that, at that point in time, she could not purchase the wipes, although she would like to, because she could not rely on the product's advertising or labeling to determine whether the wipes were truly flushable.  *Id.* at 969-70.  The Ninth Circuit reasoned that these allegations were sufficient to show that the plaintiff faced a likelihood of future injury in light of her allegations regarding the defendant's alleged past misrepresentations about the wipes.  *Id.* at 970-972 (holding that the plaintiff had alleged a likelihood of future harm because she "faces the similar injury of being

10

1  unable to rely on [the defendant's] representations of its product in deciding whether or not she
2  should purchase the product in the future").
3        Here, Vizcarra has shown that she has standing to seek injunctive relief by alleging that she
4  was deceived by the "natural vanilla" labeling and marketing for Breyers Natural Vanilla Ice
5  Cream, that she purchased the ice cream in reliance of its allegedly deceptive labeling and
6  marketing, and that she would purchase the ice cream in the future if it were truly flavored as
7  labeled and advertised. *See, e.g.*, FAC ¶ 12. These allegations, which are analogous to those in
8  *Davidson* and which need not satisfy the pleading standards of *Twombly* and *Iqbal*, *Maya*, 658
9  F.3d at 1067, are sufficient to show that, absent injunctive relief, Vizcarra could suffer future
10 injury because she would not know based on the ice cream's "natural vanilla" labeling and
11 marketing whether the ice cream's vanilla flavor is derived from the vanilla plant. *See Tucker v.*
12 *Post Consumer Brands, LLC*, No. 19-cv-03993-YGR, 2020 WL 1929368, at *6 (N.D. Cal. April
13 21, 2020) (Gonzalez Rogers, J.) (holding that the plaintiff had standing to seek injunctive relief
14 because the "[p]laintiff's inability to rely on the honey-related words and images prominently
15 featured on the front and top of the cereal box constitutes an ongoing injury for which plaintiff
16 may seek injunctive relief"). That the carton for the ice cream at issue contains a list of
17 ingredients does not change this conclusion. *See id.* (noting that it is not the case that "the onus" is
18 "on plaintiff to consult the ingredient list to try to discern" the actual contents of the allegedly
19 mislabeled product); *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) ("We do
20 not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and
21 then rely on the ingredient list to correct those misinterpretations and provide a shield for liability
22 for the deception. Instead, reasonable consumers expect that the ingredient list contains more
23 detailed information about the product that confirms other representations on the packaging.");
24 *Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 1948830, at *5 (N.D. Cal. Apr.
25 25, 2018) (holding that the plaintiff's "ability to read the products' ingredients does not render [the
26 defendant's] allegedly false advertising that the products contain only naturally-derived
27 ingredients any more truthful") (citation and internal quotation marks omitted).
28

Unilever relies on several non-binding opinions for the proposition that courts routinely hold that a plaintiff cannot show a likelihood of future injury where the plaintiff has become aware that the product in question does not actually possess the qualities that the plaintiff initially believed it did. Most of these opinions, however, pre-date *Davidson* and therefore have been overruled by that opinion. *See* Motion at 6-8, Docket No. 7-1. The two opinions that post-date *Davidson* are distinguishable. In *Jackson v. Gen. Mills, Inc.*, No. 18-cv-2634-LAB (BGS), 2019 WL 4599845, at *5 (S.D. Cal. Sept. 23, 2019), the plaintiff failed to allege facts showing that she herself had been deceived or misled by the labeling and marketing of the product in question. Here, as discussed above, Vizcarra alleges that she was deceived by the labeling and marketing of the ice cream at issue. In *Joslin v. Clif Bar & Co.*, No. 4:18-CV-04941-JSW, 2019 WL 5690632, at *3 (N.D. Cal. Aug. 26, 2019), the plaintiffs did "not allege [that] they want to or intend to purchase the Products in the future." Here, as discussed above, Vizcarra alleges that she would purchase the ice cream in the future if it were flavored as labeled and advertised.

After the briefing on the present motion to dismiss was completed, and after the Court vacated the hearing on the motion, Unilever filed a motion for leave to file a statement of recent decision with respect to *Prescott v. Nestle USA, Inc.*, No. 19-CV-07471-BLF, 2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020), which the Court now **GRANTS.** *Prescott* was issued after Unilever filed its reply. *See* Motion to File, Docket No. 20. Unilever relies on *Prescott* for the proposition that Vizcarra has not shown that she has standing to seek injunctive relief.

*Prescott*, which is not binding on this court, is distinguishable. There, the plaintiffs alleged that the defendant's labeling and marketing of "Nestle Toll House's Premier White Morsels" led them to believe that the product contained white chocolate. The plaintiffs sought, in relevant part, "an injunction prohibiting Nestle from labeling or advertising its Product as white chocolate." *Id.* at *1. The plaintiffs did not allege that the product was labeled as containing white chocolate, however, and the court questioned the viability of the plaintiffs' request for injunctive relief for that reason. *See id.* at *1 n.1 ("The Court notes that Plaintiffs do not allege that Nestle currently labels its Product as 'white chocolate,' and thus it does not appear on the face of the FAC that such injunctive relief would be a reasonable remedy."). Further, the plaintiffs there did not

12

"allege[] that they would purchase the Product absent the alleged misleading labeling." *Id.* at *6. The court concluded, therefore, that the plaintiffs had "failed to allege facts demonstrating standing to seek injunctive relief." *Id.*

*Prescott* does not change the Court's conclusion that Vizcarra has shown that she has standing to seek injunctive relief. The labeling of the product in *Prescott* said nothing about white chocolate, which made the plaintiffs' request for injunctive relief prohibiting the defendant from the labeling the product at issue as white chocolate nonsensical. The same cannot be said about Vizcarra's request for injunctive relief here. The carton of the ice cream at issue states that the ice cream is "natural vanilla" ice cream and it depicts vanilla beans and vanilla flowers, which Vizcarra alleges was misleading in light of the ice cream's artificial flavoring. Further, Vizcarra alleges that she would purchase the ice cream again if she could be sure that the product was *truly* a "natural vanilla" ice cream, just like the plaintiff in *Davidson* alleged that she would purchase the wipes again if she could know for sure that the wipes were *truly* flushable. In light of Vizcarra's allegations, which are distinguishable from those in *Prescott* and analogous to those in *Davidson*, the Court cannot conclude that Vizcarra has failed to show that she has standing to seek injunctive relief.

Based on the foregoing, the Court **DENIES** Unilever's motion to dismiss Vizcarra's request for injunctive relief for lack of Article III standing.

//

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Unilever's motion for leave to file a statement of recent decision and **DENIES** its motion to dismiss.

The Court notes that Unilever asserts in its motion to dismiss that it "has many substantive grounds on which to dismiss the Complaint (Dkt. 1), which it expressly reserves for a later Rule 12(b)(6) motion if needed." *See* Motion at 1, Docket No. 7-1. Unilever may not file any further motions under Rule 12 that are not permitted by Rule 12(g)(2). *See* Fed. R. Civ. P. 12(g)(2) ("Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

Unilever shall file an answer to the complaint within twenty-one (21) days of the date of this Order.

This Order terminates Docket Numbers 7 and 20.

**IT IS SO ORDERED.**

Dated: July 16, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**