August T. Horvath (*pro hac vice*)
ahorvath@foleyhoag.com
FOLEY HOAG LLP
1301 Avenue of the Americas, 25th floor
New York, NY 10019
Telephone:  646-927-5544

Christopher A. Nedeau (SBN 81297)
cnedeau@nedeaulaw.net
THE NEDEAU LAW FIRM
750 Battery Street, 7th floor
San Francisco, CA 94111
Telephone:  415-516-4010

Philip C. Swain (SBN 150322)
pcs@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617-832-1000

Attorneys for Defendant
Unilever United States, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| LISA VIZCARRA, individually, and on behalf of those similarly situation,<br><br>                                   Plaintiff,<br><br>     v.<br><br>UNILEVER UNITED STATES, INC.,<br><br>                                   Defendant. | Case No. 4:20-CV-02777-YGR<br><br>**DEFENDANT UNILEVER UNITED STATES, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF LISA VIZCARRA'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:  Sept. 14, 2021<br>Time:  2:00 p.m.<br>Courtroom:  1 (1301 Clay Street)<br>Judge:  Hon. Yvonne Gonzalez Rogers |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................1

III.  LEGAL STANDARD........................................................................................7

IV.   ARGUMENT.....................................................................................................9

    A.  Plaintiffs Cannot Satisfy the Commonality and Predominance
        Requirements of Rules 23(a)(2) and 23(b)(3)............................................9

        1.  Plaintiff Cannot Establish Class-Wide Deception Because Dr.
            Dennis' Survey Is Incompetent, Unreliable, and Does Not
            Show Any Deception by the Challenged Labeling Elements.....................9

            a.  Dr. Dennis Never Tested the Challenged Claims ...............................9

            b.  Dr. Dennis' Survey Was Biased and Leading ...................................10

            c.  Dr. Dennis Failed to Employ Necessary Controls .............................12

         2.  Plaintiff Cannot Establish Class-Wide Materiality Because Dr.
            Dennis' Survey Is Incompetent, Unreliable, and Does Not
            Show the Materiality of the Challenged Labeling Elements ...................14

         3.  Plaintiff Cannot Establish Class-Wide Damages in the Form of a
            Price Premium Because Dr. Dennis Proposes No Viable
            Method for Doing So ...........................................................................16

             a.  The Price Premium Study Will Not Test the Labeling
                Elements Directly, but Will Rely on the Fatally Flawed
                Consumer Perception and Materiality Studies...............................16

            b.  The Price Premium Study Has No Real Means to
                Incorporate Supply-Side Market Factors .......................................18

         4.  Even If Credited, Plaintiff's Consumer Protection and Materiality
            Surveys Establish that More than a De Minimis Part of the
            Class Is Not Injured, Defeating Predominance.........................................19

    B.  Plaintiff Cannot Satisfy the Requirements of Rule 23(a)(4) .......................21

V.    CONCLUSION..................................................................................................25

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013).................................................................................................7

4

5

*Barreto v. Westbrae Natural, Inc.*,
    No. 19-cv-9677-PKC, 2021 U.S. Dist. LEXIS 3436, 2021 WL 76331
    (S.D.N.Y. Jan. 7, 2021).........................................................................................2

6

7

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ..............................................................................4

8

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
    923 F. Supp. 2d 1245 (S.D. Cal. 2013)................................................................10

9

10

*Budhani v. Monster Energy Co.*,
    No. 20-cv-1409-LJL, 2021 U.S. Dist. LEXIS 54551 (S.D.N.Y. Mar. 12, 2021) ..............2, 3, 4

11

12

*Clark v. Westbrae Natural, Inc.*,
    No. 20-cv-03221-JSC, 2020 U.S. Dist. LEXIS 224966, 2021 U.S. Dist.
    LEXIS 78703, 2020 WL 7043879 (N.D. Cal. Dec. 1, 2020), *amended*
    *complaint dismissed with prejudice*, 2021 U.S. Dist. LEXIS 78703, 2021 WL
    1580827 (N.D. Cal. Apr. 22, 2021) ...................................................................2, 4

13

14

15

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)............................................................................................6, 7

16

17

*Cosgrove v. Blue Diamond Growers*,
    No. 19-cv-08993-VM, 2020 U.S. Dist. LEXIS 229294, 2020 WL 7211218
    (S.D.N.Y. Dec. 7, 2020)........................................................................................2

18

19

*Cosgrove v. Or. Chai, Inc.*,
    No. 19-cv-10686-KPF, 2021 U.S. Dist. LEXIS 32229 (S.D.N.Y. Feb. 22,
    2021) .....................................................................................................................2

20

21

*Cytosport, Inc. v. Vital Pharms, Inc.*,
    894 F. Supp. 2d 1285 (E.D. Ca. 2012).................................................................13

22

23

*Dashnau v. Unilever Mfg. U.S., Inc.*,
    No. 19-cv-10102-KMK, 2021 U.S. Dist. LEXIS 58194, 2021 WL 1163716
    (S.D.N.Y. Mar. 26, 2021) .....................................................................................2

24

25

*Derchin v. Unilever U.S., Inc.*,
    No. 19-cv-3543-RPK-RER (E.D.N.Y.) (filed June 17, 2019; dismissed Jan.
    13, 2021) .....................................................................................................3, 4, 22

26

27

*Ebner v. Fresh, Inc.*,
    838 F.3d 958, 965-66 (9th Cir. 2016) ................................................................14

28

DEFENDANT UNILEVER UNITED STATES, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF
LISA VIZCARRA'S MOTION FOR CLASS CERTIFICATION

ii

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ...........................................................................7

*Fahey v. Whole Foods Markets*,
  No. 20-cv-05737-JST, 2021 U.S. Dist. LEXIS 127685 (N.D. Cal. June 30,
  2021) ..............................................................................................................2, 4

*Fleury v. Richemont N. Am., Inc.*,
  2008 U.S. Dist. LEXIS 64521 (N.D. Cal. July 3, 2008)..................................24

*Fox-Quamme v. Health Net Health Plan of Or., Inc.*,
  No. 3:15-cv-01248, 2017 WL 1034202 (D. Or. Mar. 9, 2017) ........................19

*Garadi v. Mars Wrigley Confectionary US LLC*,
  No. 1:19-cv-03209-RJD, 2021 U.S. Dist. LEXIS 128814 (E.D.N.Y.) (July 6,
  2021) .................................................................................................................2

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................21, 22

*Harris v. McDonald's Corp.*,
  No. 20-cv-06533-RS (N.D. Cal. Mar. 24, 2021) .............................................2

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer
  Pharms., Inc.*,
  19 F.3d 125 (3d Cir. 1994)................................................................................10

*Jones v. ConAgra Foods, Inc.*,
  No. C12-01633-CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014)....................9

*Kamara v. Pepperidge Farm, Inc.*,
  Case No. 1:20-cv-09012-PKC (S.D.N.Y.).................................................23, 24

*In re Lamictal Direct Purchaser Antitrust Litig.*,
  957 F.3d 184 (3d Cir. 2020).............................................................................8

*Lavie v. Procter & Gamble Co.*,
  105 Cal.App.4th 496, 129 Cal. Rptr.2d 486 (2003)........................................14

*Maeda v. Kennedy Endeavors, Inc., No. 18-00459 JAO-WRP*,
  2021 U.S. Dist. LEXIS 117433 (D. Haw. June 23, 2021).........................17, 20, 21

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .......................................................................7, 19

*McMorrow v. Mondelez Int'l, Inc.*,
  3:17-cv-2327-BAS-JLB, 2020 WL 1157191 (S.D. Cal. March 9, 2020)................9

*Moore v. Apple Inc.*,
  309 F.R.D. 532 (N.D. Cal. 2015)......................................................................20

*In re NJOY, Inc. Consumer Class Action Litig.*,
  120 F. Supp. 3d 1050 (C.D. Cal. 2015) ............................................................18

*O'Bannon v. Nat. Collegiate Athletic Ass'n*,
  7 F. Supp. 3d 955 (N.D. Cal. 2014), *aff'd in part and rev'd in part on other
  grounds*, 802 F.3d 1049 (9th Cir. 2015) ....................................................9, 10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  993 F.3d 774 (9th Cir. 2021) .......................................6, 8, 16, 19, 20, 21

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ............................................................................20

*Pardini v. Unilever*,
  No. 13-cv-1675-JSW (N.D. Cal. July 10, 2020)...............................................9

*Parham v. Aldi, Inc.*,
  No. 19-cv-08975-PGG-SDA, 2021 U.S. Dist. LEXIS 28892 (S.D.N.Y. Feb.
  15, 2021) .............................................................................................................2

*Pichardo v. Only What You Need*,
  No. 20-cv-0493-VEC, 2020 U.S. Dist. LEXIS 199791, 2020 WL 6323775
  (S.D.N.Y. Oct. 27, 2020) .............................................................................2, 4

*Procter & Gamble v. Ultreo, Inc.*,
  574 F. Supp. 2d 339 (S.D.N.Y. 2008).......................................................12, 13

*Robie v. Trader Joe's Co.*,
  No. 20-cv-07355-JSW, 2021 U.S. Dist. LEXIS 117336 (N.D. Cal. June 14,
  2021) ...................................................................................................................2

*Rutledge v. Elec. Hose & Rubber Co.*,
  511 F.2d 668 (9th Cir. 1975) .......................................................................7, 21

*Saavedra v. Eli Lilly & Co.*,
  2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ................................................18

*Scotts Co. v. United Indus. Corp.*,
  315 F.3d 264 (4th Cir. 2002) ...........................................................................10

*Sharpe v. A&W Concentrate Co.*,
  481 F. Supp. 3d 94 (E.D.N.Y. 2020) ................................................................2

*Steele v. Wegmans Food Markets, Inc.*,
  No. 19-cv-09227-LLS, 472 F. Supp. 3d 47 (S.D.N.Y. July 14, 2020) ...................1

*Strumlauf v. Starbucks Corp.*,
  No. 16-cv-1306-YGR (N.D. Cal. Jan. 5, 2018) .............................................10

*Sunbeam Corp. v. Equity Indus. Corp.*,
 635 F. Supp. 625 (E.D. Va. 1986) ....................................................................10

*Twohig v. Shop-Rite*,
 No, 20-cv-783-CS, 2021 U.S. Dist. LEXIS 26489 (S.D.N.Y. Feb. 11, 2021) ...............2, 4, 12

*United States v. Gissantaner*,
 990 F.3d 457 (6th Cir. 2021) ............................................................................8

*Universal City Studios, Inc. v. Nintendo Co., Ltd.*,
 746 F.2d 112 ..................................................................................................10

*Valentino v. Carter-Wallace, Inc.*,
 97 F.3d 1227 (9th Cir. 1996) ............................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ........................................................................................8

*Weisberg v. Takeda Pharm. U.S.A., Inc.*,
 No. CV 18-784 PA, 2018 WL 4043171 (C.D. Cal. Aug. 21, 2018), *recons.*
 *denied sub nom. Weisberg v. Takeda Pharm. Co. Ltd.*, 2018 WL 5917884
 (C.D. Cal. Oct. 15, 2018) ..................................................................................7

*Williams-Sonoma Song-Beverly Act Cases*, No. JCCP-4611 (Cal. Super. Ct. San
 Francisco Cty. March 16, 2018) ........................................................................9

*Wynn v. Topco Assocs. LLC*,
 No. 19-cv-11104-RA, 2021 U.S. Dist. LEXIS 9714, 2021 WL 168541
 (S.D.N.Y. Jan. 29, 2021)...................................................................................2

*Zaback v. Kellogg Sales Co.*,
 No. 20-cv-00268-BEN, 2020 U.S. Dist. LEXIS 202697, 2020 WL 6381987
 (S.D. Cal. Oct. 29, 2020) ..................................................................................2

*Zakaria v. Gerber Prods. Co.*,
 No. 15-cv-00200-JAK, 2017 U.S. Dist. LEXIS 221124, 2017 WL 9512587
 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018).........................18

**Rules**

Fed. R. Civ. P. 23 ...................................................................................1, 5, 7, 8, 21, 24, 25

**Other Authorities**

6 J. Thomas McCarthy, MCCARTHY ON TRADEMARK & UNFAIR COMPETITION (4th
 ed. 2017) ........................................................................................................13

S. S. Diamond, "Reference Guide on Survey Research," in *Reference Manual on
 Scientific Evidence, 3d ed.*, National Academies Press, 2011 .....................11, 12, 13

1

2

**I.      INTRODUCTION**

Unilever respectfully requests that the Court DENY Plaintiff's motion for class

3

certification (Dkt. 47) on the grounds that:

4

(1) this case does not meet the requirement of Rule 23(a)(2) that there are questions of

5

law or fact common to the class;

6

(2) this case does not meet the requirement of Rule 23(a)(4) that the representative party,

7

and her counsel, will fairly and adequately protect the interests of the class, and for the same

8

reason, Plaintiff's counsel should not be appointed class counsel because they do not meet the

9

requirements of Rule 23(g);

10

(4) this case does not meet the requirement of Rule 23(b)(3) that questions of law or fact

11

common to the class predominate over any questions affecting only individual members.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

12

Plaintiff alleges that four elements on the packaging of Breyers Natural Vanilla Ice

13

Cream communicate to consumers that all of the vanilla flavor of the ice cream is provided by

14

vanilla extract, sourced from the vanilla plant.  The four are (1) the phrase "Natural Vanilla," (2)

15

an image of a vanilla flower, (3) a partial image of a vanilla bean pod, and (4) an image of the ice

16

cream, in which small black specks can be seen (the "Challenged Label Elements," which

17

Plaintiff more conclusorily terms the "Vanilla Representations.")[1]

18

These and other plaintiffs' counsel have filed well over 100 vanilla flavor cases over the

19

past three years.  Thus far, sixteen District Courts, including four in this District, have ruled that

20

Plaintiff's theory does not state a claim as a matter of law because a it is not plausible that a

21

reasonable consumer viewing a "vanilla" flavor designator and related imagery would interpret

22

these packaging elements to represent that all vanilla flavor in the product comes from vanilla

23

extract.  These cases have concerned vanilla ice creams, vanilla plant-based milk beverages, and

24

other vanilla products such as herbal teas, breakfast cereals, and cake mixes.  *Steele v. Wegmans*

25

*Food Markets, Inc.*, No. 19-cv-09227-LLS, 472 F. Supp. 3d 47 (S.D.N.Y. July 14, 2020) (vanilla

26

---

[1] The Complaint also cites the "Rainforest Alliance Certified Vanilla" seal, but as Plaintiff does
not include this in her "Vanilla Representations" in her motion for class certification, Unilever
assumes she has abandoned any allegation that it is deceptive.

27

28

DEFENDANT UNILEVER UNITED STATES, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF
LISA VIZCARRA'S MOTION FOR CLASS CERTIFICATION

1

ice cream); *Pichardo v. Only What You Need,* No. 20-cv-0493-VEC, 2020 U.S. Dist. LEXIS 199791, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) (vanilla protein drink); *Zaback v. Kellogg Sales Co.*, No. 20-cv-00268-BEN, 2020 U.S. Dist. LEXIS 202697, 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) (vanilla granola); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2020 U.S. Dist. LEXIS 224966, 2021 U.S. Dist. LEXIS 78703, 2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) ("*Clark I*"), *amended complaint dismissed with prejudice*, 2021 U.S. Dist. LEXIS 78703, 2021 WL 1580827 (N.D. Cal. Apr. 22, 2021) ("*Clark II*") (vanilla soy milk); *Cosgrove v. Blue Diamond Growers*, No. 19-cv-08993-VM, 2020 U.S. Dist. LEXIS 229294, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) (vanilla almond milk); *Wynn v. Topco Assocs. LLC*, No. 19-cv-11104-RA, 2021 U.S. Dist. LEXIS 9714, 2021 WL 168541 (S.D.N.Y. Jan. 29, 2021) (vanilla almond milk); *Barreto v. Westbrae Natural, Inc.*, No. 19-cv-9677-PKC, 2021 U.S. Dist. LEXIS 3436, 2021 WL 76331 (S.D.N.Y. Jan. 7, 2021) (vanilla soy milk); *Twohig v. Shop-Rite*, No, 20-cv-783-CS, 2021 U.S. Dist. LEXIS 26489 (S.D.N.Y. Feb. 11, 2021) (vanilla soy milk); *Parham v. Aldi, Inc.*, No. 19-cv-08975-PGG-SDA, 2021 U.S. Dist. LEXIS 28892 (S.D.N.Y. Feb. 15, 2021) (vanilla almond milk); *Cosgrove v. Or. Chai, Inc.*, No. 19-cv-10686-KPF, 2021 U.S. Dist. LEXIS 32229 (S.D.N.Y. Feb. 22, 2021) (vanilla tea beverage); *Budhani v. Monster Energy Co.*, No. 20-cv-1409-LJL, 2021 U.S. Dist. LEXIS 54551 (S.D.N.Y. Mar. 12, 2021) (vanilla espresso drink); *Harris v. McDonald's Corp.*, No. 20-cv-06533-RS (N.D. Cal. Mar. 24, 2021) (vanilla ice cream); *Dashnau v. Unilever Mfg. U.S., Inc.*, No. 19-cv-10102-KMK, 2021 U.S. Dist. LEXIS 58194, 2021 WL 1163716 (S.D.N.Y. Mar. 26, 2021) (vanilla ice cream); *Robie v. Trader Joe's Co.*, No. 20-cv-07355-JSW, 2021 U.S. Dist. LEXIS 117336, at *17 (N.D. Cal. June 14, 2021) (vanilla cereal); *Fahey v. Whole Foods Markets*, No. 20-cv-05737-JST, 2021 U.S. Dist. LEXIS 127685 (N.D. Cal. June 30, 2021) (vanilla almond milk); *Garadi v. Mars Wrigley Confectionary US LLC*, No. 1:19-cv-03209-RJD, 2021 U.S. Dist. LEXIS 128814  (E.D.N.Y.) (July 6, 2021) (vanilla ice cream).  No District Court has ruled in favor of any of these cases on a motion to dismiss for failure to state a claim.[2]

---

[2] One vanilla-related case, *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94 (E.D.N.Y. 2020), partially survived a motion to dismiss, but this case concerned an explicit ingredient claim

Plaintiffs in vanilla flavoring actions have also voluntarily dismissed, without settlement, dozens more of these cases when it became apparent to them that they, also, were likely to be dismissed, including an identical predecessor of this case that was filed New York. *Derchin v. Unilever U.S., Inc.*, No. 19-cv-3543-RPK-RER (E.D.N.Y.) (filed June 17, 2019; dismissed Jan. 13, 2021). These cases, had they proceeded to decision, would have built a still higher wall of jurisprudence against Plaintiff's claim here.

The courts that have evaluated the legal sufficiency of Plaintiff's theory thus far, including allegations that vanilla-related imagery such as vanilla flowers and seed pods accompanies the "vanilla" flavor designator, have unanimously held that these labels either communicate (1) nothing at all about the source of the vanilla flavor in the food, but merely inform consumers what the product will taste like, or (2) that there is at least some vanilla extract in the product, as is admitted by Plaintiff here (Complaint ¶ 28), but not any specific amount or proportion. *See, e.g, Budhani v. Monster Beverage*, 2021 U.S. Dist. LEXIS 54551, at *22 (holding, as to a coffee beverage displaying images of vanilla flower and seed pod as well as "vanilla" flavor designator, that the labeling "makes no representation with respect to the sources of the vanilla flavoring or whether, despite vanilla bean being contained in the Product, all or most of the vanilla flavor comes from vanilla beans."). Unilever will soon move this Court to concur with these other courts by ruling, even before reaching any further details of the Product's composition, that Plaintiff's theory fails as a matter of law.

In several of these decided cases that have rejected the theory put forward here by Plaintiff, the plaintiffs presented or described survey evidence purporting to support their allegations regarding the label claims. The courts in these vanilla cases have uniformly held that a consumer perception survey, even if presumed to be valid, cannot override the determination that the plaintiffs' proposed interpretation of the labeling is implausible as a matter of law. *See,*

---

"made with aged vanilla claim" and not a vanilla flavor designator with associated imagery, and has been distinguished by the courts in many of the sixteen cases cited above. The only vanilla flavoring case not dismissed on a Rule 12(b)(6) motion is this action, in which Unilever did not challenge the sufficiency of Plaintiff's legal theory at the pleading stage because it wanted also to put before this Court the evidence that the Product does, in fact, derive all of its vanilla flavor from vanilla extract, as discussed herein.

*e.g., Clark II,* 2021 U.S. Dist. LEXIS 78703, at *7; *Twohig,* 2021 U.S. Dist. LEXIS 26489, at *13-16; *Pichardo,* 2020 U.S. Dist. LEXIS 199791, at n.7; *Fahey,* 2021 U.S. Dist. LEXIS 127685 at *9-10; *Budhani,* 2021 U.S. Dist. LEXIS 54551,  at *22; *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) (affirming dismissal of false advertising case and finding that even if a survey is presumed valid, "the survey does not shift the prevailing reasonable understanding of what reasonable consumers understand the word 'diet' to mean or make plausible the allegation that reasonable consumers are misled by the term 'diet.'").

1   c███████████████████████████████████

2   Plaintiff therefore has only one hope for her case.  ████████████████

3   ████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████

7   ██████████████████████████████████████████████████████

8   ████████████████████████████████████████

9   ████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████████

13  ██████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ██████████████████████████████████████████████

16  ██████████████████████████████████████████████

17  ██████████████████████████████████████████████████████

18  ████████████████████████

19  Before Unilever moves for summary judgment, the Court may limit the scope of this case

20  on the present motion by ruling that Plaintiff has failed to establish the Rule 23 requirements of

21  commonality and predominance, and is not entitled to class certification.  Plaintiff relies

22  exclusively on the expert report of J. Michael Dennis as factual support for her contentions that

23  the Plaintiff's alleged interpretation of the Product label "is in line with those of other reasonable

24  consumers" and therefore is a common issue.  Dkt. 47 at 3-4.  Plaintiff also relies entirely on Dr.

25  Dennis' attempt to study whether the misrepresentation that Plaintiff alleges is "material to

26  consumers' purchasing decisions" at a common, rather than individual, level, to establish

27  commonality of materiality.  *Id.* at 4.  In fact, Dr. Dennis' expert report demonstrates neither

28

deception nor materiality as to *any* member of the class, let alone substantially all of them.  Dr. Dennis commits the same fundamental methodological errors in his Report here that have caused his opinions to be stricken, excluded, or given little weight by several courts, including this Court, in just the past few years.  As fully set forth in the accompanying expert declaration of Dr. Olivier Toubia, Glaubinger Professor of Business and Chair of the Marketing Division of the Columbia University Business School (Exhibit 1 to Horvath Decl.) ("Toubia Rep."), and in Unilever's Motion to Strike or Exclude the testimony of Dr. Dennis filed concurrently herewith ("Motion to Strike"), the studies described in Dr. Dennis' expert report do not meet the standards of competent research in the relevant fields in multiple ways, each of which would be fatal in isolation.  Dr. Dennis' expert report, if it shows anything, shows that at least three of the four Challenged Label Elements, even combined, have no significant impact on the proportion of consumers who receive the implied message that all of the vanilla flavor in the Product comes from vanilla extract.

With respect to the *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) requirement that a Plaintiff must put forth a viable method of calculating class-wide damages, Dr. Dennis fails to propose a method that will do so.  Dr. Dennis does not put forth a method with enough particularity for the Court to conduct the necessary evaluation under the recent guidance of the Ninth Circuit in *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021), doing little more than copying text from statistical software manuals into his declaration, with no information about how he would actually design the study for this case – which he admits he has not even started to do.  Based on his deposition, Dr. Dennis intends to rely on and incorporate the fatal mistakes that he made in his consumer perception and materiality analyses.  Dr. Dennis' Consumer Perception Study, in particular, is the foundation of his proposed price premium study, because Dr. Dennis intends not to have respondents in his price premium study choose among products on the basis of the Product label, but rather on the basis of the leading, incomplete, and ambiguous response alternatives that he put into respondents' mouths in the perception study, and is thereby rendered invalid and unreliable.

1    In addition, Plaintiff's counsel's conduct with respect to the past classes that they have

2    represented in vanilla flavoring cases establishes that they are inadequate as class counsel under

3    Rule 23(g).   In numerous cases, after filing complaints on behalf of consumer classes and

4    actively soliciting class representatives, Plaintiff's counsel has half-heartedly litigated them for a

5    time, preventing other counsel from seeking to represent the same class, when all along they plan

6    to, and ultimately do, dismiss the cases with no settlement or other relief to the class.   They

7    abandon their putative classes, including the New York version of the class sought to be certified

8    here, with no relief, having misled them to think that they would be vigorously represented, and

9    now with no remedy for the purported damages that became untimely during counsel's charade

10   of representation.   Plaintiff's counsel's cavalier approach to their purported client classes in their

11   campaign of vanilla litigation renders them unfit to represent the putative class in this case.

## III.   LEGAL STANDARD

13   "[A] party seeking to maintain a class action 'must affirmatively demonstrate his

14   compliance' with Rule 23."  *Comcast*, 569 U.S. at 33 (citation omitted).  Rule 23 imposes "strict

15   requirements" for class certification.  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234

16   (2013).  Plaintiffs bear the burden of showing "that they have met each of the four requirements

17   of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)."

18   *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011); *Mazza v. Am. Honda*

19   *Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  Plaintiff's failure of proof on any one of the elements

20   of Rule 23(a) defeats class certification.  *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668,

21   673 (9th Cir. 1975).  This requires proof under the preponderance of evidence standard.

22   *Weisberg v. Takeda Pharm. U.S.A., Inc.*, No. CV 18-784 PA, 2018 WL 4043171, at *4 (C.D.

23   Cal. Aug. 21, 2018), *recons. denied sub nom. Weisberg v. Takeda Pharm. Co. Ltd.*, 2018 WL

24   5917884 (C.D. Cal. Oct. 15, 2018).  "[T]he trial court must conduct a 'rigorous analysis' to

25   determine whether the party seeking certification has met the prerequisites of Rule 23."  *Mazza*,

26   666 F.3d at 588 (citation omitted).  After determining that a case meets all of the requirements of

27   Rule 23(a), a court must continue its "rigorous analysis" to determine whether the case meets at

28   least one of the requirements of Rule 23(b).  *Comcast*, 569 U.S. at 33.

The Ninth Circuit's most recent guidance on the legal standard for review of a motion to class certification was in *Olean Wholesale Grocery Coop., Inc.*, 993 F.3d at 793 (vacating class certification in a case alleging a price-fixing conspiracy). In that case, as here, the plaintiffs put forward a damages model that purported to estimate a class-wide overcharge in order to establish predominance under Rule 23(b)(3). Expert witnesses for the defense critiqued these methods, pointing to significant flaws. The Ninth Circuit held that the District Court erred by ruling that although the defendant's "criticisms [of the damages methodology] are serious and could be persuasive to a finder of fact ... determining which expert is correct is beyond the scope of a class certification motion." *Id.* at 783 (internal quotations omitted). The court ruled, "Courts must resolve all factual and legal disputes relevant to class certification, even if doing so overlaps with the merits. A district court abuses its discretion when it fails to adequately determine predominance was met before certifying the class." *Id.* at 784, *citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), *and Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

The Ninth Circuit held that "a district court must find by a preponderance of the evidence that the plaintiff has established predominance under Rule 23(b)(3)." *Id.* at 784, citing *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020). "A district court that 'has doubts about whether the requirements of Rule 23 have been met should refuse certification until they have been met.'" *Id.* at 793 (citation and footnote omitted). In the *Olean* case, the court held that statistical evidence purporting to establish predominance should be "scrutinized with care and vigor," and despite the ease of being confused or overawed by such evidence, courts must 'ensure that it produces reliable information.' Id. at 786-87, *quoting United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021). After conducting such an analysis here, the Court should determine that Plaintiff's arguments for class-wide commonality, materiality, and damages, which hinge entirely on actual or potential survey and statistical, do not establish, by a preponderance of the evidence, that these issues have been or will be provable on a class-wide basis.

IV.     **ARGUMENT**

     A.     **Plaintiffs Cannot Satisfy the Commonality and Predominance Requirements of Rules 23(a)(2) and 23(b)(3)**

        1.     **Plaintiff Cannot Establish Class-Wide Deception Because Dr. Dennis' Survey Is Incompetent, Unreliable, and Does Not Show Any Deception by the Challenged Labeling Elements**

          a.     **Dr. Dennis Never Tested the Challenged Claims**

Plaintiff objects to four Challenged Label Elements on the Breyers Product, which Plaintiff and Dr. Dennis refer to, conclusorily, as the "Vanilla Representations." These are:  (1) the flavor designator phrase "Natural Vanilla," (2) an image of a vanilla flower, (3) a partial image of a vanilla seed pod, and (4) an image of the Product, showing black specks within the ice cream.  To be relevant to Plaintiff's claims and motion for class certification and to be admissible under F.R.E. 702, Dr. Dennis' report must focus on these elements and be able to make causal statements that they, specifically, influenced class members' beliefs and behaviors. *See Jones v. ConAgra Foods, Inc.*, No. C12-01633-CRB, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014) (survey must show "how the challenged statements, together or alone, were a factor in any consumer's purchasing decisions").

As in his past litigation surveys that have been rejected by Courts, Dr. Dennis failed to test the advertising representations actually challenged by Plaintiff.  *See McMorrow v. Mondelez Int'l, Inc.*, 3:17-cv-2327-BAS-JLB, 2020 WL 1157191, at *5-9 (S.D. Cal. March 9, 2020) (initial Dennis survey rejected, and class certification motion denied, because it did not isolate the effect of the challenged word "nutritious" in tested advertising claims); *Pardini v. Unilever*, No. 13-cv-1675-JSW (N.D. Cal. July 10, 2020) (Dennis survey struck, and class certification motion denied, where Dennis opinions were not addressed to the theory of liability because he did not test specific challenged statements); *Williams-Sonoma Song-Beverly Act Cases*, No. JCCP-4611 (Cal. Super. Ct. San Francisco Cty. March 16, 2018) (rejecting Dennis survey and granting motion to decertify class where Dennis tested different signage than what was at issue); *O'Bannon v. Nat. Collegiate Athletic Ass'n*, 7 F. Supp. 3d 955, 975-76 (N.D. Cal. 2014), *aff'd in part and rev'd in part on other grounds*, 802 F.3d 1049 (9th Cir. 2015), (finding that a Dennis

survey did not provide credible evidence, in part, because it failed to ask respondents about the specific issues in the litigation).  Dr. Dennis made no effort to test the effect of the four Challenged Label Elements, never isolating them analytically from the rest of the Product packaging or from the context of a survey about vanilla ice cream.  Dennis Dep. at 57:9-22.  Therefore, his Consumer Perception Study – and also his proposed price premium study, which is to be built on top of its research conclusions – have no bearing on Plaintiff's theory of liability.

b.      **Dr. Dennis' Survey Was Biased and Leading**

Another error that Dr. Dennis has repeatedly made in his surveys for litigation, causing them to be excluded or disregarded by courts, is asking biased and leading questions.  "[W]hen survey questions are leading and suggestive, this 'weakens the relevance and credibility of the survey evidence to the point that it sheds no light on the critical question in [the] case." *Strumlauf v. Starbucks Corp.*, No. 16-cv-1306-YGR (N.D. Cal. Jan. 5, 2018), *quoting Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 269 (4ᵗʰ Cir. 2002), *citing Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994).  In *Strumlauf*, Dr. Dennis was retained by counsel for plaintiffs alleging that Starbucks cafes under-fill their latte beverages, in part by counting the milk foam component of a latte as part of the total volume.  His survey purported to show that most consumers viewed the milk foam as being "in addition to" the stated volume of a latte.  In granting a motion for summary judgment, this Court ruled that Dr. Dennis' repeated use of the word "fluid" in his questions led respondents toward his desired result of counting only liquid components of the beverages in the volumes.  *Id.*, *citing Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1257 (S.D. Cal. 2013); *Sunbeam Corp. v. Equity Indus. Corp.*, 635 F. Supp. 625, 634 (E.D. Va. 1986) ("When a survey question begs its own answer it is not a true indicator of the likelihood of consumer confusion"); *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 118 (excluding survey where a leading question suggested its own answer).  Leading questions were also the primary reason for the rejection of Dr. Dennis' survey in *O'Bannon*, 7 F. Supp. 3d at 975-76 (finding that Dennis survey did not provide credible evidence because it asked "an initial

question that apparently affected many respondents' answers to the survey's substantive

questions," and that "primed respondents to think about" the issue of interest to the plaintiff.

In this survey, as set forth in detail in Dr. Toubia's expert declaration and in Unilever's

motion to strike, Dr. Dennis built his survey around closed-end questions that inherently tend to

be leading, as Dr. Dennis admitted at his deposition.  Dennis Dep. at 136:20-139:9; *see also*

Toubia Rep. ¶ 34 (a closed-end, multiple-choice question "directs the respondent's attention to

consider a set of response options and implies that one of these response options is correct").  He

took none of the measures or precautions recommended by authorities such as S. S. Diamond,

"Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence, 3d ed.*,

National Academies Press, 2011, pp. 359-423 ("Diamond (2011)"), to prevent or mitigate this

tendency.  *Id.* ¶¶ 34-35.  He did not take care to provide exhaustive or comprehensive response

choices, but instead, did the opposite.  *Id.* ¶ 35.  He provided only one affirmative, clear

response, the one that he wanted respondents to select:  "All of the vanilla flavor [comes from

vanilla extract]."  His second response option was negative and ambiguous: "Not all of the

vanilla flavor [comes from vanilla extract]."  This answer could mean anything from 0% (no

vanilla extract at all) to more than 99% of the vanilla flavor coming from vanilla extract, and Dr.

Dennis has no idea how respondents interpreted this alternative.  Respondents could easily see

that this alterative was less desirable, in the researcher's eyes, than the "All of the vanilla flavor"

option.  The responses clearly suggested which answer respondents were supposed to select.

Further, the two substantive responses both presume that the label tells consumers, one

way or the other, whether the vanilla flavor all comes from vanilla extract.  Dr. Dennis included

no accurate option for the answer that the product packaging does not communicate anything

about how much of the vanilla flavor comes from vanilla extract, which courts have ruled that

any reasonable consumer would give.  Toubia Rep. ¶ 35.  The "Not sure" non-response option

does not accurately express this option, and clearly is even more disfavored by the researcher

than the "Not all" response option, as it is readily recognized by respondents as the catch-all,

non-response option, always coming last, that they would select if they cannot be bothered to pay

attention or to form an opinion.  "Overall, the ambiguous answer options to the key vanilla flavor question in the Dennis Consumer Perceptions Survey render the results unreliable."  *Id.*

Besides being characteristic of surveys that Dr. Dennis has done in the past, leading questions with incomplete response options are also typical of other surveys that this Plaintiff's counsel have commissioned in their vanilla cases, and that have been rejected by courts.  In *Twohig v. Shop-Rite*, the court found a survey commissioned by these counsel was fatally flawed in exactly the same way, because "in asking, 'What does the label above convey about the origin of the vanilla taste?' the survey presumes that the label conveys something about that origin, and it did not give participants the option of stating that they believed the label conveyed nothing about the origin of the vanilla taste. … the survey here – designed at the behest of counsel who has brought nearly 100 similar lawsuits challenging the labeling of vanilla flavored products and presumably has given significant thought to the questions – is sufficiently flawed that it does not contribute enough to render the claims plausible."  *Twohig*, 2021 U.S. Dist. LEXIS 26489 at *15, *citing Procter & Gamble v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 352 (S.D.N.Y. 2008) ("A survey is not credible if it relies on leading questions which are inherently suggestive and invite guessing by those who did not get any clear message at a Häagen ll.").

### c.      Dr. Dennis Failed to Employ Necessary Controls

Dr. Dennis could have isolated the Challenged Label Elements from the context of the rest of the Breyers Product label, and from any expectations arising from the fact that it is a vanilla ice cream, by using an appropriate control.  "Without a relevant control group, the survey cannot determine whether the four at-issue Vanilla Representations caused respondents' perceptions about the source of the flavor, separate from other factors such as preexisting beliefs about vanilla ice cream or the Breyers brand in general."  Toubia Decl. at ¶ 25, *citing* Diamond (2011) at 397.

An appropriate control would be one that "shares as many characteristics with the experimental stimulus as possible, with the key exception of the characteristic whose influence is being assessed."  Toubia Rep. ¶ 26, *quoting* Diamond (2011), at 399.  "Without a control group,

it is not possible to determine how much of the [apparent effect] is attributable to respondents'

preexisting beliefs or other background noise."  Diamond (2011) at 398-99; Toubia Rep. ¶ 45,

n.50; *see also*.  This flaw alone is such a serious breach of proper research protocol that it alone

warrants exclusion of the survey.  *See Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d

339, 351-52 (S.D.N.Y. 2008) (rejecting false-advertising survey that did not use a control group

to account for preexisting beliefs); *Cytosport, Inc. v. Vital Pharms, Inc.*, 894 F. Supp. 2d 1285,

1291 (E.D. Ca. 2012) (same); 6 J. Thomas McCarthy, McCARTHY ON TRADEMARK & UNFAIR

COMPETITION § 32:187 (4th ed. 2017) ("Courts have held that a survey that fails to use a control

may be . . . excluded from evidence altogether." (collecting cases)); *see also* cases cited in

Unilever's Motion to Strike at 15-16.

Although Dr. Dennis has no true controls in his Consumer Perception Study, he

inadvertently created a condition that, though flawed, can suggest how an actual control group

would have performed in his leading and biased survey.  In one arm of the survey, Dr. Dennis

tested an alternate stimulus, the packaging of Häagen-Dazs vanilla ice cream.  The Häagen-Dazs

container is semi-useful as a control because it lacks three of the four Challenged Labeling

Elements that Plaintiff alleges to be misleading.  Toubia Rep. ¶ 31.  And, while the Häagen-Dazs

stimulus also changes non-challenged aspects of the packaging, it remains a package of vanilla

ice cream, and all of Dr. Dennis' biased and misleading survey instructions and questions, and

the more general context of the survey, including respondents' preconceptions, are held constant

between Dr. Dennis' Breyer and Häagen-Dazs conditions.

Treating the Häagen-Dazs package as a control, a researcher would treat any consumers

reporting that they received the allegedly deceptive message from the Häagen-Dazs container as

"noise" created by preexisting beliefs, survey artifacts and bias, and would deduct the number

reporting the "all of the vanilla flavor" message from those who did so in response to the Breyers

package with the Challenged Label Elements.  This produces a "net of noise" percentage which

the researcher would adopt as his final results.  Here, the researcher would deduct the 75.1% of

respondents who answered "All of the vanilla flavor" when reacting to the Häagen-Dazs label

from the 79.9% who did so for the Breyers label, resulting in just **4.8%** of respondents, net of noise, whose answers might be attributable to the Challenged Label Elements, with almost as many (4.2%) responding that the label communicates that *not all* of the vanilla flavor comes from vanilla extract.  Dr. Dennis himself tested these groups for statistical significance, and found them "statistically indistinguishable."  Dennis Rep. ¶¶ 23, 24.

Dr. Dennis will object that this is not the intended use of his Häagen-Dazs group. Admittedly, it is not a well-designed control.  Toubia Rep. ¶¶ 26-29.  But, in the absence of any proper control from Dr. Dennis, it is instructive, suggesting that Dr. Dennis' survey would have returned the same results with almost any container of vanilla ice cream, and that essentially no respondents received the alleged message from three of the four Challenged Label Elements. This is less than the "significant portion of the general consuming public or of targeted consumers" that must be found to be deceived, *see Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 129 Cal. Rptr.2d 486, 495 (2003); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965-66 (9th Cir. 2016), and is consistent with the rulings of sixteen courts to date, that reasonable consumers are not led, by the type of labeling elements challenged here, to believe that all of the vanilla flavor in the Product must come from vanilla extract.

### 2. Plaintiff Cannot Establish Class-Wide Materiality Because Dr. Dennis' Survey Is Incompetent, Unreliable, and Does Not Show the Materiality of the Challenged Labeling Elements

As discussed fully in Dr. Toubia's declaration and in Unilever's motion to strike, Dr. Dennis' materiality study inherits the critical flaws of his consumer perception study.  Some of these inherited flaws – in particular the leading question wording – have even more impact in the Materiality Study.

The Materiality Study not only does not test the four Challenged Label Elements, it does not test the Product Label at all.  Instead of presenting different Product labels to respondents, the Materiality Study gives them statements written by the researcher that the respondents may or may not have perceived from the product packaging.  The Materiality Study thus does not address itself to Plaintiff's theory of liability, and Dr. Dennis can proffer no opinion on whether

the Challenged Label Elements are material to consumers.  Toubia Rep. ¶¶ 41-46.

The Materiality Study artificially focuses respondents' attention on one attribute of the product – the source of the vanilla flavor – and explicitly tells respondents that all the other attributes are the same, so they don't have to consider them.  This telegraphs what the researcher is interested in, and exaggerates the importance of an attribute that respondents had not necessarily ever even thought of prior to being asked about it in the survey.  The predictable impact, supported by the research literature, is to vastly inflate the materiality of this one aspect of the product.  Toubia Rep. ¶¶ 47-50.

The Materiality Study's leading response alternatives, borrowed from the Consumer Perception Study, are even more problematic when respondents face the task of imagining a pair of products and deciding which one they would rather have.  The response alternative, "Not all of the vanilla flavor comes from vanilla extract," is, as described above, fatally ambiguous. Toubia Rep. ¶ 51.  It could mean anything from no vanilla extract at all to 99.9% vanilla extract. Respondents in the Materiality Study, in particular, must come to some decision about what they think this hypothetical product is before they can decide whether they want it or not.  They must decide, in order to have a concrete product in mind when they answer, that some percentage of its vanilla flavor, such as 0%, or 20%, or 50%, or 90%, or 99.9%, is from vanilla extract. ██████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████.  We don't know; and neither does Dr. Dennis, who in fact has no idea what respondents were telling him when answering this survey.

In addition, the Materiality Study offered respondents a choice between an ice cream that affirmatively says that it has *all* vanilla flavor coming from vanilla extract or affirmatively says that it has *not all* vanilla flavor coming from vanilla extract – both of which beg the question of whether the label communicates anything, either way – but *not* the "Not sure" option.  The "Not sure" option is a very important response choice because it is what Dr. Dennis maintains that respondents in the Consumer Perception Study were supposed to use to indicate a label that

doesn't say whether the Product derives all or not-all of its vanilla flavor from vanilla extract – as Unilever, and every court to rule on the sufficiency of Plaintiff's vanilla flavor cases thus far, agree is what reasonable consumer actually think.  Dennis Dep. at 202:2-5.  Respondents in Dr. Dennis' Materiality Study were never offered this option to choose a Product about which they *don't know* whether 100% of its vanilla flavor comes from vanilla extract, because the label doesn't say.  Instead, the second alternative in Dr. Dennis' materiality study is a straw-man product that affirmatively communicates that it has less than 100% of its vanilla flavor derived from vanilla extract.  This choice utterly fails to test the question at issue in this litigation.

> **3.    Plaintiff Cannot Establish Class-Wide Damages in the Form of a Price Premium Because Dr. Dennis Proposes No Viable Method for Doing So**

As noted in Unilever's Motion to Strike, Dr. Dennis reports almost nothing of substance about how he would perform his proposed Price Premium Study, and admits that he has not even started Step 1 of designing it.  Dennis Dep. at 12:15-13:4.  There is no information in Dr. Dennis' pure boilerplate recital of conjoint survey methodology about how he would tackle the issues unique to this matter.  Under *Olean*, this is not enough information to permit the Court to determine, by a preponderance of evidence, that whatever he plans to do will be able to establish statistically that a universal price premium was paid by the class.  Dr. Dennis' price premium study proposal should be rejected on that basis alone, with that their expert must do more than copy some textbook chapters and state he might, in the future, start of actually designing the study in order to carry Plaintiff's burden at the class certification stage.  In any event, from Dr. Dennis' deposition, it is evident that his plans are to do a study that is invalid and unreliable.

> **a.    The Price Premium Study Will Not Test the Labeling Elements Directly, but Will Rely on the Fatally Flawed Consumer Perception and Materiality Studies**

Dr. Dennis again plans, as in his Materiality Study, not to have price premium respondents choose from among alternative vanilla ice cream packages – let alone systematically vary the Challenged Label Elements, as he should – but merely to choose between statements that are the researcher's interpretation of what they should take away from such labels.  The

1   court in *Maeda v. Kennedy Endeavors, Inc., No. 18-00459 JAO-WRP,* 2021 U.S. Dist. LEXIS

2   117433 (D. Haw. June 23, 2021) criticized and ultimately disregarded a price premium conjoint

3   analysis performed by another expert, in conjunction with a consumer perception survey by Dr.

4   Dennis, which mirrors the analysis Dr. Dennis now proposes to do by himself.  The conjoint

5   study in *Maeda*, like Dr. Dennis' proposed conjoint study here, did not test respondents'

6   reactions to the product labels.  Instead, the conjoint study respondents were fed the response

7   alternatives from Dr. Dennis' prior consumer perception study.  The court found that "to the

8   extent Plaintiffs rely on Boedeker's calculations alone to demonstrate that a sufficient number of

9   class members were injured, they come up short because Boedeker's calculations are predicated

10  on Dr. Dennis' survey results regarding the belief that the Hawaiian Snacks are made in

11  Hawaii…. Boedeker's model does not address the Hawaiian Snacks' packaging, which is a

12  critical component of Plaintiff's theory of liability that consumers were deceived into believing

13  that the products were made in Hawai'i." *Maeda*, 2021 U.S. Dist. LEXIS 117433, at *46-*47.

14  Because Dr. Boedeker's price premium analysis did not measure the product labels, the price

15  premium study did not measure damages attributable to the plaintiff's theory of liability, and

16  failed to satisfy the Plaintiff's predominance requirement.  Dr. Dennis proposes to do exactly the

17  same thing in this case.  Dennis Dep. at 59:23-60:23, 61:13-21.

18      Dr. Dennis' decision to test respondents' reactions to his own survey response options,

19  rather than form preferences based on the actual labels that are the subject of this litigation, is

20  made even worse by the biased and leading nature of those response options, as set forth above.

21  Like the Materiality Study, the Price Premium Study will not give respondents a specific

22  alternative to "All of the vanilla flavor comes from vanilla extract," offering instead an

23  ambiguous "not all" that could be anything from 0% to 99.9% - and respondents must decide

24  what they think it is in order to be able to make concrete choices from among the hypothetical

25  products presented to them. ███████████████████████

26  ███████████████████████████████

27  ███████████████████████████

28

v ████████████████████████████████ Further, again, because Dr. Dennis appears to have no plans to translate the "Not sure" response alternative from the Consumer Perception Study to the price premium study, he plans not to offer respondents to this survey any way to consider a product that contains some vanilla extract, but does not say whether vanilla extract makes up all of its vanilla flavor – which is what the courts have ruled that the labels like that of the Product actually communicate.

### b. The Price Premium Study Has No Real Means to Incorporate Supply-Side Market Factors

Dr. Dennis proposes to conduct a price premium analysis using a conjoint survey, in which respondents choose from among products defined by sets of attributes, having different levels. Such analyses are inadequate to estimate price premiums on a stand-alone basis because they only estimate consumers' willingness to pay for a particular feature or marketing claim, and can offer no insight into whether market conditions enabled or forced them to pay the premium they were willing to pay, or indeed any premium. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1073 (C.D. Cal. 2015); *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014); *Zakaria v. Gerber Prods. Co.*, No. 15-cv-00200-JAK, 2017 U.S. Dist. LEXIS 221124, 2017 WL 9512587 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018) (rejecting conjoint survey where "regardless whether consumers were willing to pay a higher price for the labelled product, the expert's opinion does not contain any evidence that such higher price was actually paid").

Plaintiffs' experts have devised several types of add-on post-conjoint analyses to try to take into account the "supply side" market facts missing from a willingness-to-pay measure. Not all of these analyses have merit. The conjoint survey proposed by Dr. Dennis to gather and analyze information about consumer preferences is strictly a demand-side, willingness-to-pay analysis, no matter how it is shrouded in jargon such as "hierarchical Bayes regression" and "market simulators." Toubia Decl. ¶¶ 79-81. "The supply-side considers complex market dynamics including substitutability between goods and differing price elasticities for competing products. An analysis considering supply-side factors in a but-for market would incorporate the

reaction of competing firms to a change in the at-issue products labeling or other features." Toubia Decl. ¶ 79.  There is no valid short cut for a detailed study of the market dynamics.

Dr. Dennis proposes, instead, to substitute a set of convenience assumptions, which require no investigation or knowledge of the marketplace, and will predictably inflate the price premium, for the hard work of researching a market.  These assumptions also violate fundamental laws of economics.  As he testified in his deposition, Dr. Dennis plans to assume that in a but-for marketplace where Unilever was not using the Challenged Label Elements, the quantity of ice cream that Unilever would sell, and its market share relative to its competitors, would nevertheless be exactly the same as it was in the world where Unilever used those claims. Dennis Dep. at 46:15-49:10; 83:3-15.  This requires assuming that marketing claims do not sell more volume of product, that competitors have no response to the introduction of marketing claims, and that the price of a product can vary independently of the quantity sold.  Although Dr. Dennis is not an economist, these economic principles are so well known that he testified in his deposition that he knows that each of his assumptions is not true.  *Id*.  By his own admission, Dr. Dennis' proposed method does not involve any true "market simulator" and is not capable of estimating prices in a world in which Unilever did not make the challenged marketing claims.

### 4.   Even If Credited, Plaintiff's Consumer Protection and Materiality Surveys Establish that More than a *De Minimis* Part of the Class Is Not Injured, Defeating Predominance

Certifying Plaintiff's proposed class would necessarily include a significant number of uninjured consumers, who lack standing to assert claims against Unilever.  The Ninth Circuit has held "[n]o class may be certified that contains members lacking Article III standing." *Mazza*, 666 F.3d at 594.  Accordingly, one of the Court's key factual determinations in considering predominance "is whether the plaintiffs' statistical evidence sweeps in uninjured class members." *Olean*, 993 F.3d at 784 (9th Cir. 2021).  In line with this standard, Courts have found that a proposed class is overly broad – and cannot be certified – "when the class definition includes those who have not been harmed by a defendant's alleged wrongful conduct." *Fox-Quamme v. Health Net Health Plan of Or., Inc.*, No. 3:15-cv-01248, 2017 WL 1034202, at *6

(D. Or. Mar. 9, 2017); *Oshana v. Coca-Cola Co*., 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of class certification where class membership "required only the purchase of a fountain Diet Coke," which would have included "millions who were not deceived" about product and "thus have no grievance"); *Moore v. Apple Inc*., 309 F.R.D. 532, 541-43 (N.D. Cal. 2015).

In *Olean*, the court ruled that the methodology used by the plaintiff was capable of establishing predominance, but the results revealed that the class, as defined by the plaintiff, swept in too many uninjured class members.  "Plaintiffs must establish, predominantly with generalized evidence, that all (or nearly all) members of the class suffered damage as a result of Defendants' alleged anti-competitive conduct."  993 F.3d at 791 (internal quotation omitted). The parties disputed whether the plaintiffs' method, properly applied, resulted in a lack of impact on 5.5% of the class versus 28% of the class.  *Id*. at 791-92.  The latter percentage, the court determined, was too substantial to permit a finding of predominance.  The district court abused its discretion by not deciding whether the 5.5% or the 28% was correct, but merely considering whether Plaintiff's statistical evidence was "plausibly reliable" and leaving ultimate determination to the jury.  *Id*. at 792.  The Ninth Circuit further held that only a *de minimis* percentage – much less than 28% - of uninjured class members may be included within the class; "[e]ven though a well-defined class may inevitably contain some individuals who have suffered no harm, the few reported decisions involving uninjured class members suggest that 5% to 6% constitutes the outer limits of a *de minimis* number."  *Id.* at 792-93 (internal quotations and citations omitted).

At least one District Court in this Circuit has already applied *Olean* to a motion for class certification in a false-advertising case like this one.  In *Maeda*, the plaintiffs alleged that the defendant's branding of "Hawaiian" potato chips and other snacks misleadingly represented the snacks as being made in Hawaii with local Hawaiian ingredients.  In that case, Dr. Dennis performed a consumer perception study and a materiality study, finding, as to Hawaii consumers, that 80.8% satisfied both conditions of being misled by the product packaging and preferring to purchase the products if made in Hawaii (*i.e.*, finding it material).  This meant that 19.2% of

Hawaii consumers were uninjured –too many, the court determined, to support a finding of predominance under *Olean*.

Here, as in *Maeda*, there is no need for this Court to resolve a battle of experts in order to conclude that a substantial percentage of the putative class consists of uninjured consumers.  In a false-advertising class action, uninjured class members include everyone who either (1) was not deceived by the challenged representations, or (2) did not find the challenged representations material.  *Maeda,* 2021 U.S. Dist. LEXIS 117433, at *45.  As the *Maeda* court held, Plaintiff's assertion and purported evidence of a market-wide price premium affecting 100% of class members does not resolve this, because consumers who are not deceived or who do not care about the challenged representations will be unwilling to pay the price premium and will not do so.  *Id.*  Here, even taking Dr. Dennis' studies completely at face value and ignoring the glaring methodological flaws that would drive down Dr. Dennis' results, likely to insignificance, if corrected, Dr. Dennis concluded that 79.9% of all consumers shown the Breyers label perceived all of the vanilla flavor to come from vanilla extract while, independently, 88.6% of respondents would prefer to buy the product if all vanilla flavor came from vanilla extract (Dennis Rep. ¶ 24).  Applying the materiality percentage to the percentage deceived, Dr. Dennis' findings here indicate that 88.6% of the 79.9% of consumers allegedly deceived would find the deception material, or 70.8% of total respondents, with the remaining 29.2% being uninjured.  This is a greater percentage than the Ninth Circuit in *Olean* ruled is far too much to support predominance – and, again, this is before the biases in Dr. Dennis' studies are taken into account.  As in *Maeda*, Dr. Dennis' own results, taken at face value, defeat commonality.

### B. Plaintiff Cannot Satisfy the Requirements of Rule 23(a)(4)

Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class."  The Court must "carefully scrutinize the adequacy of representation in all class actions," *Rutledge*, 511 F.2d at 673 (internal quotation marks and citation omitted), which includes determining whether named plaintiffs' counsel can and will prosecute the action vigorously on behalf of the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

1998) (citation omitted).  Such careful scrutiny ensures that absent class members are "afforded adequate representation before entry of a judgment which binds them."  *Id.*

In well over 100 vanilla flavoring cases that this Plaintiff's counsel has filed, Plaintiff's counsel has a pattern of half-hearted representation of consumer classes, which cannot be characterized as "vigorous."  In dozens of other cases, this counsel has solicited a class representative, commenced a suit on behalf of the named plaintiff and a proposed class, and litigated for a time, only to abandon the plaintiff and class with a sudden, unilateral, voluntary dismissal.  The pattern of Plaintiff's counsel's behavior is not ordinary forum shopping.  Their particular tactics demonstrate a cavalier approach to the interests of the putative classes that they purport to represent, and a willingness to prejudice the interests of these classes by abandoning their claims just when vigorous representation is required.

An example of Plaintiff's counsel's willingness to abandon putative classes of consumers that are relying on these counsel to defend their interests is *Derchin v. Unilever United States, Inc.*, No. 19-cv-3543-RPK-RER (E.D.N.Y.) the twin of this case, which these counsel filed in the Eastern District of New York on June 17, 2019, ten months before they filed this case.  *Id.*, Dkt. 1 (June 17, 2019).  *Derchin* made substantively identical allegations concerning the same Product as is challenged in this action.  Plaintiff's counsel litigated this case for 19 months, during which time the Court authorized limited discovery on the subject of the Product's flavoring formulation, which is how Plaintiff's counsel came to know more than a year ago that the Product's vanilla flavor is entirely derived from vanilla extract.  On January 13, 2021, the plaintiff voluntarily dismissed this case, six months after Unilever's motion to dismiss the case was fully briefed, submitted, and awaiting decision.  There was no settlement, no prior communication with Unilever or the Court, and no indication of why they took this action.  To this day, no other class counsel has stepped up to represent this class.  The class they represented in New York has now had than two years' worth of potential remedies forever extinguished.

Plaintiff's counsel have become well known for unilaterally dismissing these vanilla flavoring actions with no relief to the putative class, often after the full submission of a motion to

dismiss.  In response, some defendants have taken the unusual step of filing an answer while the motion to dismiss is still pending, in order to terminate the plaintiff's right to unilateral dismissal under Rule 41.  In Plaintiff's counsel's response to one such effort, they revealed their strategy for avoiding certain judges, even if the judges have not hinted that they will rule adversely in the instant case, but based on the judge's reputation or adverse rulings in other cases.  See *Kamara v. Pepperidge Farm, Inc.,* Case No. 1:20-cv-09012-PKC (S.D.N.Y.) (Dkt. 32, letter by Dale J. Giali to the Court, attaching correspondence and case analysis) (Exhibit 2 to Horvath Decl.).  Defense counsel in that case then analyzed Plaintiff's counsel's unilateral dismissals, concluding that they had done so in at least twenty-two vanilla flavoring cases as of June 2021, often following an adverse decision by the same judge in another of their cases.  *Id.* at Dkt. 32-4, 32-5.

Dropping a putative class action on the first hint that a court may be unsympathetic is hardly the vigorous pursuit of a class' interests.  In itself, however, such conduct is not necessarily so prejudicial to the putative class to prompt Unilever to move the Court to disqualify Plaintiff's counsel.  The real harm to the putative class members is that Plaintiff's counsel strings along their own clients for months in cases that they have already decided to dismiss and have no intention of pursuing.  As shown by their correspondence with defense counsel in *Kamara*, Plaintiff's counsel intentionally stretch cases they have already decided to dismiss for months, generally going through full briefing on a dispositive motion, until a decision on dismissal seems imminent.  As class counsel here wrote to counsel for Pepperidge Farm with respect to a vanilla flavoring case pending before Judge Castel in the Southern District of New York, "I saw this is judge castle [*sic*].  I will never let this case be decided in this court by this judge.  But we will go through the 'motions' nonetheless pardon the pun.  Eventually I'll file it elsewhere likely in a different state."  *Id.* at Dkt. 32-2 p. 1.

Plaintiff's counsel sometimes decides, as soon as a judge is assigned, that they will eventually voluntarily dismiss a case, as shown in the same email to the *Kamara* defense counsel, listing Judges Oetken, Matsumoto, Vitaliano, Komitee, and Seibel of the Southern and Eastern Districts of New York, and adding as to Judge Seibel, "Yes another thing – whatever

cases we may have before judge seibel won't ultimately be decided there." *Id.*, at Dkt. 32-2 p. 1. But although Plaintiff's counsel may decide to drop a case as soon as the judge is assigned, they still drag the case out for months, dismissing as late as it is safe to do so without risking a decision on a litigated motion.

The issue here is not just forum shopping or waste of judicial and party resources. Relevant to Rules 23(a) and 23(g), this pattern of conduct is prejudicial to the purported classes represented by these counsel. Counsel attracts class representative plaintiffs to their cases by advertising on social media for class plaintiffs, and at the same time publicizing the existence of the case. Representative plaintiffs sign up, believing that their interests will be represented, as do class members who become aware of the case. When the case is filed, the class action bar takes notice, and refrains from pursuing the same theory. When Plaintiff's counsel eventually files their long-planned unilateral dismissal, the class they have been pretending to represent for many months is left in the cold. The number of months during which the lawsuit was in being are now forever cut off from the beginning of any new class's injury and damages time period, under applicable statutes of limitations. Other class action counsel, believing that the voluntary dismissal indicates a private, individual-basis settlement including some enforceable conduct relief, likely conclude that a future suit is at least partially moot as to injunctive relief, and do not pick up the baton for that class. When Plaintiff's counsel re-files in another state, on behalf of a different class, the original state's class is abandoned. This is a dereliction of Plaintiff's counsel's duties and responsibilities toward the class, which they took on as soon as they filed a putative class action. *Fleury v. Richemont N. Am., Inc.*, 2008 U.S. Dist. LEXIS 64521, at *44 (N.D. Cal. July 3, 2008) (noting attorneys, purporting to represent a class, owe the entire class a fiduciary duty once the class complaint is filed, and collecting cases finding the same).

Plaintiff's counsel's conduct with respect to their other vanilla flavoring cases can give this Court no confidence that they will represent the purported class in this case diligently, vigorously, fairly and adequately. Plaintiff's counsel may counter, in response to this point, that if the class in this case is certified, they will be forced to represent the class adequately, because

they will no longer be able to exit the case without the Court's approval of a settlement that is fair to the class.  But the purpose of Rule 23 class certification, and in particular Rule 23(g) appointment of class counsel, is not to compel otherwise feckless class counsel to do an adequate job, with the Court as enforcer.  Class counsel should only be appointed if they have *already demonstrated* that they will faithfully advance the class' interests even without judicial supervision.  Plaintiff's counsel here has demonstrated the opposite in their other vanilla flavoring cases.  They should not be appointed class counsel in a vanilla flavor case, and they and their client should be deemed inadequate class representatives.

## V.      CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's motion for class certification.


Dated: July 26, 2021

By:    */s/ August T. Horvath*
           August T. Horvath (*pro hac vice*)

FOLEY HOAG LLP
1301 Avenue of the Americas, 25th floor
New York, NY 10019

Philip C. Swain
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600

Christopher A. Nedeau
THE NEDEAU LAW FIRM
750 Battery Street, 7th floor
San Francisco, CA 94111

*Attorneys for Defendant Unilever United States, Inc.*

1

## PROOF OF SERVICE

2
    I, August Horvath, hereby certify that on July 26, 2021, I caused the foregoing document

3
to be electronically filed with the Clerk of the Court for the United States District Court,

4
Northern District of California, by using the CM/ECF system and electronically served to all

5
counsel of record.  I declare under penalty of perjury under the laws of the United States that the

6
foregoing is true and correct.

7

8

9
Dated: July 26, 2021

*/s/ August T. Horvath*
August T. Horvath

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28