United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

**LISA VIZCARRA,**

Plaintiff**,**

vs.

**UNILEVER UNITED STATES, INC.,**

Defendant**.**

CASE NO.  4:20-cv-02777 YGR

**ORDER
DENYING MOTION FOR CLASS
CERTIFICATION WITHOUT PREJUDICE;
DENYING MOTION TO EXCLUDE OR
STRIKE EXPERT TESTIMONY;
RE: MOTIONS TO SEAL; AND
GRANTING MOTION TO FILE SUR-
REPLY**

Re: Dkt. Nos. 47, 48, 52, 55, 61

Plaintiff Lisa Vizcarra brings this proposed class action against Defendant Unilever United States, Inc. ("Unilever") for claims arising out of Unilever's allegedly misleading labeling of Breyers Natural Vanilla Ice Cream as containing vanilla flavor derived exclusively from the vanilla plant.  Now before the Court is Vizcarra's motion for certification of a proposed class under Rules 23(b)(2) and 23(b)(3), as well as Unilever's motion to exclude or strike the opinions of Vizcarra's survey expert, Dr. J. Michael Dennis.  Having carefully considered the pleadings, the record, the parties' briefs, and the argument presented at the hearing held on October 26, 2021, and for the reasons set forth below, the Court **DENIES** the motion for class certification **WITHOUT PREJUDICE** and it **DENIES** the motion to exclude or strike the opinions of Dr. Dennis.[1]

---

[1] Unilever moves for leave to file a sur-reply brief on the ground that Vizcarra's reply brief discusses a new theory of liability that is not alleged in the complaint and was not included in Vizcarra's opening brief in support of her motion for class certification.  *See* Docket No. 61. Vizcarra opposes the motion, arguing that it is not the case that Unilever's reply discusses a new theory of liability.  Because Vizcarra has not identified any prejudice that she would suffer if the Court were to consider Unilever's proposed sur-reply, and because the Court finds that the sur-reply would assist its resolution of the issues presented in the motions before it, the Court **GRANTS** Unilever's motion for leave to file a sur-reply.

United States District Court
Northern District of California

### I.   MOTIONS TO SEAL

As a preliminary matter, both sides have submitted administrative motions to seal documents or portions of documents offered in support of their class certification briefing.  *See* Docket Nos. 48, 55.  While the standard for sealing documents in connection with class certification does not require "compelling reasons" as set forth in *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010), the Court nevertheless finds that the sealing requests here are overbroad and good cause has not been established to seal certain documents to the extent requested.  The Court has considered the basis offered for sealing, as well as the significance to the Court's decision of the portions sought to be sealed, in determining which portions to cite or quote in its order herein.  The motions to seal are granted only insofar as they are not necessary to the Court's analysis.

Therefore, to the extent that the Court has quoted or recited in this opinion the contents of any specific portion of a document or material subject to a motion to seal, the Court **DENIES** the motion to seal that information for lack of good cause.  The motions to seal, Docket Nos. 48, 55, are otherwise **GRANTED** for good cause shown.

### II.   BACKGROUND

The following are allegations from the operative complaint, Docket No. 1.

Unilever sells Breyers Natural Vanilla Ice Cream ("the ice cream at issue") in cartons, the front label of which "said 'Natural Vanilla' in large, light green letters against a black background, contained pictures of two vanilla beans and vanilla flowers and a scoop of the ice cream with noticeable specks purporting to be actual vanilla beans."  *Id.* ¶ 12.  Vizcarra allegedly relied on these representations ("Vanilla Representations") when purchasing the ice cream at issue, which led her to believe that the ice cream's vanilla flavor "would come only from the vanilla plant," *id.*, even though some of the vanilla flavor is derived from non-vanilla plant sources, *id.* ¶ 27.  Vizcarra alleges that she would not have purchased or paid more for Breyers Natural Vanilla Ice Cream had she realized that much, if not all, of its vanilla flavor comes from non-vanilla-plant sources.  *Id.* ¶ 7.  Vizcarra would purchase Breyers Natural Vanilla Ice Cream again in the future

if the product "were remedied to reflect Defendant's labeling and marketing claims for it."  *Id.*
¶ 12.

In the complaint, Vizcarra asserts the following claims on her own behalf and on behalf of a proposed class of consumers in California who purchased Breyers Natural Vanilla Ice Cream for personal use from April 21, 2016, to the present: (1) claims under the unlawful, unfair, and fraudulent prongs of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) a claim for false and misleading advertising in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and (3) a claim for violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*  Vizcarra seeks damages "and an injunction to stop Unilever's false and misleading marketing practices with regard to Breyers Natural Vanilla Ice Cream," *id.* ¶ 9, among other remedies.

On July 16, 2020, the Court denied Unilever's motion under Rule 12(b)(6) and Rule 12(b)(1) to dismiss Vizcarra's claim for damages under the CLRA, her claim under the unlawful prong of the UCL, and her request for injunctive relief.  Docket No. 30.   The present motions follow.

### III.   LEGAL STANDARD

#### A.   *Daubert* Motion Standard

Federal Rule of Evidence 702 permits opinion testimony by an expert as long as the expert is qualified and his or her opinion is relevant and reliable.  An expert witness may be qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.

"[I]n evaluating challenged expert testimony in support of class certification, a district court should evaluate admissibility under the standard set forth in" *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993).  *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 985 (9th Cir. 2020) (citation omitted).  A court may exclude expert testimony submitted in support of class certification if it does not comply with the standards set forth in *Daubert.  See id.*

"Under *Daubert*, 'the district court judge must ensure that all admitted expert testimony is both relevant and reliable.'"  *Id.* (quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017)).  "Scientific evidence is reliable if the principles and methodology used by an

expert are grounded in the methods of science." *Wendell*, 858 F.3d at 1232 (citation and internal quotation marks omitted). "The focus of the district court's analysis must be solely on principles and methodology, not on the conclusions that they generate," and "the court's task is to analyze not what the experts say, but what basis they have for saying it." *Id.* (citations, alteration, and internal quotation marks omitted). In conducting this analysis, the district court may consider "whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Id.* (citation omitted).

### B.    Motion for Class Certification

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotations omitted). "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). The rigorous analysis that a court must conduct requires "judging the persuasiveness of the evidence presented" for and against certification and "resolv[ing] any factual disputes necessary to determine whether" the requirements of Rule 23 have been satisfied. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982-83 (9th Cir. 2011). A "district court must consider the merits if they overlap with the Rule 23(a) requirements." *Id.* (citations omitted).

The party moving for certification first must show that the four requirements of Rule 23(a) are met. Specifically, Rule 23(a) requires a showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

The party moving for certification must then show that the class can be certified based on at least one of the grounds in Rule 23(b). *See* Fed. R. Civ. P. 23(b). As relevant here, certification under Rule 23(b)(2) is appropriate only if "the party opposing the class has acted or refused to act

United States District Court
Northern District of California

1  on grounds that apply generally to the class, so that final injunctive relief or corresponding

2  declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

3  Certification under Rule (b)(3) is appropriate only if "the questions of law or fact common to class

4  members predominate over any questions affecting only individual members" and "a class action

5  is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

6  R. Civ. P. 23(b)(3).

7  **IV.     DISCUSSION**

8         The Court first turns to Unilever's motion to exclude or strike the opinions of Vizcarra's

9  survey expert, Dr. Dennis.  Docket No. 55-8.  The Court then turns to Vizcarra's motion for class

10  certification.  Docket No. 48-4.

11        **A.     *Daubert* Motion as to Dr. Dennis**

12        Unilever moves to exclude or strike the opinions of Dr. J Michael Dennis, Vizcarra's

13  survey expert, under Federal Rule of Evidence 702 and *Daubert*.  Alternatively, Unilever argues

14  that Dr. Dennis' opinions should be given no weight in the class certification analysis.

15        Before turning to Unilever's arguments, the Court first provides an overview of Dr.

16  Dennis' opinions.  Dr. Dennis submitted an expert report in support of Vizcarra's motion for class

17  certification.  Dennis Report, Docket No. 47-2.  Dr. Dennis acknowledges that Vizcarra's claims

18  in this action arise out of the Vanilla Representations, which are labeled in the report as either "the

19  alleged misrepresentations" or as "the Vanilla Representations."  *Id.* ¶ 13.  The report refers to the

20  ice cream at issue as "the Product."  *Id.*  The report provides that Vizcarra alleges that "the

21  Product's packaging (displayed in Exhibit 1) communicates that all the vanilla flavor is sourced

22  from the vanilla plant *through the use of various descriptors and images*, namely the use of the

23  words 'Natural Vanilla,' the image of vanilla plant flowers, the image of vanilla beans, and the

24  image of ice cream with black specks (the '*Vanilla Representations*')."  *Id.* ¶ 13 (emphasis added).

25  It further provides that Vizcarra alleges that, "to the extent that the market price for the Product is

26  the result of the alleged misrepresentations, class members were economically harmed."  *Id.*

27        Dr. Dennis' assignment was three-fold: (1) to conduct a consumer survey to determine

28  whether "consumers perceived *the Product's packaging* that displayed the Vanilla Representations

United States District Court
Northern District of California

to communicate that all the vanilla flavor is sourced from vanilla extract (made from the vanilla plant)"; (2) "to measure whether the alleged misrepresentations were material to consumers' decisions to purchase the Product"; and (3) "to provide a plan for designing, executing, and reporting on a price premium survey for measuring any economic value solely attributable to the alleged misrepresentations." *Id.* ¶ 14 (emphasis added).

The first part of Dr. Dennis' report describes the "consumer perceptions survey" he conducted. Dr. Dennis surveyed more than 900 California past-year purchasers of vanilla-flavored ice cream and Breyers-branded ice cream, *id.* ¶¶ 28, 41, to determine whether "consumers perceived the Product's packaging that displayed the Vanilla Representations to communicate that all the vanilla flavor is sourced from vanilla extract (made from the vanilla plant)," *id.* ¶ 14. The survey involved showing respondents images of the front of the package of the ice cream at issue, which contained not only the Vanilla Representations, but also other statements and elements not challenged by Vizcarra in this action, *id.* ¶ 50, as well as images of the sides of the packaging, which contained multiple statements and elements not challenged by Vizcarra and none of the Vanilla Representations, *id.* ¶ 51. After showing these images to respondents, respondents were asked: "What is your EXPECTATION about whether all or not all of the vanilla flavor comes from vanilla extract (made from the vanilla plant)?" *Id.* ¶ 55. The three possible responses were "not all of the vanilla flavor," "all of the vanilla flavor," and "not sure." *Id.* The survey results show that 79.9% of respondents expected based on the packaging of the ice cream at issue that "all of the vanilla flavor" comes from the vanilla plant; 14.5% expected that "not all of the vanilla flavor" comes from the vanilla plant; and 5.7% indicated that they were not sure. *Id.* ¶ 20. Dr. Dennis concluded based on these survey results "that a reasonable consumer in the state of California perceives *the Product's packaging* to convey that all the vanilla flavor comes from vanilla extract (made from the vanilla plant)." *Id.* ¶ 74 (emphasis added).

The second part of Dr. Dennis' report describes a materiality survey he conducted (which he labeled the "Materiality (Referendum) Survey"), which sought to measure "any materiality associated with consumers' preference to purchase Product for which all the vanilla flavor comes from vanilla extract (made from the vanilla plant)." *Id.* ¶ 73. The survey involved showing

6

images of the packaging of the ice cream at issue to respondents (both the front label and the side labels of the packaging) and then asking them to assume that Ice Cream A and Ice Cream B are identical in all respects except in terms of the source of the vanilla flavor in the ice cream, where one of those hypothetical products had "all of the vanilla flavor" derived from vanilla extract, and the other had "not all of the vanilla flavor" derived from the vanilla extract. *Id.* ¶ 62. The survey asked respondents to choose one of the two hypothetical ice cream products to purchase. *Id.* ¶ 63. Dr. Dennis' study showed that "consumers, with respect to *purchasing vanilla ice cream*, place importance on the attribute regarding the source of the vanilla flavor." *Id.* ¶ 24 (emphasis added). The survey showed that 88.6% of respondents prefer to purchase a vanilla ice cream product for which all of the vanilla flavor comes from the vanilla plant, that only 6.7% of consumers prefer to purchase a vanilla ice cream product for which "not all" of the vanilla flavor comes from the vanilla plant, and that 4.7% indicated that they do not know their preference. *Id.* ¶ 24. Dr. Dennis concluded, based on these survey results, "that the alleged misrepresentations are material to purchase decision making [sic] for a reasonable consumer in the state of California." *Id.* ¶ 75.

The third part of Dr. Dennis' report describes a "methodology for conducting a price premium survey and analysis" to measure "the extent to which class members paid a price premium as a result of being misled into believing that all of the vanilla flavor of the Product is from the vanilla plant." *Id.* ¶¶ 77-78. Dr. Dennis opines that "[t]he market price premium attributable to the challenged claim can be determined through one or more conjoint surveys," *id.* ¶ 79, which he describes as "a methodology that is capable of isolating and measuring the value of an individual product attribute such as a specific understanding of a challenged claim," *id.* ¶ 87. Choice-based conjoint analysis utilizes a survey where respondents are presented with various choices of product attributes, prices, and alternatives; respondents are asked to rank their preferences, which allows researchers to then apply statistical methods, including regression analysis, to value those attributes in the market. *Id.* ¶¶ 84-105.

Specifically, Dr. Dennis explains that:

> In a conjoint survey, survey participants are presented with a "choice exercise" in which they are typically shown a set of 3 or 4 hypothetical products and asked to choose which of the products, if

any, they would purchase.  The hypothetical products in conjoint surveys are typically comprised of 6 to 8 "attributes" that reflect attributes that consumers consider in making purchasing decisions. For consumer packaged goods, attributes that consumers typically consider in their purchasing decisions include things like product brand, packaging claims, product size and, of course, price. . . .

For each product attribute, there are various "levels" of the attribute.  For example, if a conjoint was considering golf balls, attributes might be model and brand, performance, and price. . . .

The levels for each product attribute are systematically randomized so that the hypothetical product choices respondents are presented with will have a mix of products with different combinations of attribute levels. . . .

Based on respondents' choice of a specific product (or selecting no product) their preferences for specific attributes and the attribute levels are revealed.  By having each survey respondent repeat the choice task 12 to 20 separate times (each with a unique set of products with systematically varied levels of the attributes) and having a statistically significant number of survey respondents (typically in the hundreds), the choices made by survey respondents will provide thousands of data points from which the market price premium attributable to a particular attribute can ultimately be determined.

This is done through the use of hierarchical Bayes regression analysis which processes the survey data, along with information about historical prices, and by the use of a market simulator that not only includes information on consumer choice (demand-side factors) but also supply-side factors such as historical sales and pricing.  When performed in this manner, a reliable estimate of the real-world market price premium attributable to a product attribute can be calculated.

*Id.* ¶¶ 88-92.  Dr. Dennis represents that his proposed, but not-yet-executed, conjoint analysis will be based on the methodology just described and will seek to measure the price premium associated with being misled into believing that all of the vanilla flavor of the ice cream at issue is from the vanilla plant.  *Id.* ¶¶ 93-136.  Dr. Dennis states that he intends to rely on documents and pricing and other data produced in this litigation, and other information relevant to the claims in this action, to ensure that his proposed price premium analysis accurately captures both demand-side and supply-side factors to determine the price premium associated with the alleged deception in this action.  *See id.* ¶¶ 97, 120.  This would include taking into account real-world pricing of the products sold during the class period.  *Id.* ¶¶ 120, 132.

United States District Court
Northern District of California

1    Nowhere in his report does Dr. Dennis state that he has tested or isolated, or intends to test

2    or isolate, the impact of the Vanilla Representations on respondents' expectations of the source of

3    the vanilla flavor in the ice cream at issue or respondents' purchasing decisions.  Nor does he state

4    that he intends to isolate or determine the price premium, if any, caused by the Vanilla

5    Representations.  Instead, as noted above, his consumer and materiality surveys rely on showing

6    respondents images of *the entire package* of the ice cream at issue (both the front label and the

7    side labels, which include statements and elements not challenged by Vizcarra).  Dr. Dennis'

8    proposed conjoint analysis will determine the price premium associated with an attribute he calls

9    "source of vanilla flavor" but it will not determine the price premium, if any, caused by the

10   Vanilla Representations.  *See* Dennis Dep. Tr. at 59-61.

11   Unilever moves to exclude or strike all three parts of Dr. Dennis' report.  Docket No. 55-8.

12   As to the first part of the report, which describes the consumer perception study, Unilever argues

13   that (1) it does not speak as to whether the Vanilla Representations were likely to deceive

14   consumers, because it does not test the effect of the Vanilla Representations and instead tests the

15   entire package of the ice cream at issue; (2) the survey uses leading and biased questions; and (3)

16   the survey lacks adequate controls.

17   As to the second part of Dr. Dennis' report, the materiality survey, Unilever argues that (1)

18   it does not speak as to whether the Vanilla Representations would be material to consumers in

19   their purchasing decisions because it does not test the materiality of the Vanilla Representations;

20   (2) it does not replicate market conditions; and (3) the questions used are biased.

21   As to the third part of Dr. Dennis' report, the proposed conjoint analysis, Unilever argues

22   that (1) it does not match Vizcarra's theory of liability as required by *Comcast*, because it will not

23   measure any price premium caused by the Vanilla Representations, as Dr. Dennis does not

24   propose to isolate the effect of the Vanilla Representations on consumers' decision to purchase the

25   ice cream at issue; (2) Dr. Dennis' description of his proposed conjoint analysis is too vague to

26   allow meaningful analysis for the purpose of determining whether the requirements for class

27   certification are met; and (3) the proposed study does not properly incorporate supply-side factors.

28

1  Vizcarra opposes the motion, arguing that Unilever's challenges as to Dr. Dennis'

2  methodologies go to the weight to be given to his opinions, and not to their admissibility.  Docket

3  No. 59.

4  The Court concludes that Unilever has not shown that Dr. Dennis' opinions are subject to

5  exclusion at this stage of the litigation.  Unilever's objections as to Dr. Dennis' survey design,

6  methodologies, and reliability go to the weight to be given to Dr. Dennis' opinions, and not their

7  admissibility.  *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d

8  1025, 1038 (9th Cir. 2010) (holding that, in the context of survey evidence, criticisms as to "issues

9  of methodology, survey design, reliability . . . [and] critique of conclusions" "go to the weight of

10  the survey rather than its admissibility") (citation and internal quotation marks omitted); *see also

11  Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1033 (C.D. Cal. 2018) (holding that

12  criticisms based on expert's survey methodology, such as omitting a control group and asking

13  suggestive or vague questions, go to the weight, not the admissibility, of the expert's survey);

14  *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150 RS, 2017 WL 3310692, at *4 (N.D. Cal. Aug. 3,

15  2017) ("While the parties vigorously dispute whether the Dennis survey was properly conducted

16  and produced reliable results, P&G's complaints go to the weight of the evidence, and do not

17  preclude its admissibility.").  Accordingly, the Court **DENIES** Unilever's motion to strike or

18  exclude.

19  As will be discussed in more detail below, however, the opinions of Dr. Dennis upon

20  which Vizcarra relies to support her motion for class certification have no persuasive value in the

21  context of the class certification analysis, because Dr. Dennis did not specifically test the effect of

22  the Vanilla Representations on consumers' beliefs or purchasing decisions, or on whether

23  consumers paid any price premium attributable to such alleged misrepresentations.

24  **B.      Motion for Class Certification**

25  Vizcarra moves for class certification under Rules 23(b)(2) and 23(b)(3) based on her

26  claims under the UCL, FAL, and CLRA.

27  In her class certification motion, Vizcarra seeks to certify the following proposed class

28  under Rules 23(b)(2) and 23(b)(3):

1

> All persons who purchased Breyers Natural Vanilla Ice Cream in the State of California at any time from April 21, 2016 through the final disposition of this Action.

2

3    Docket No. 48-4 at 1.  Excluded from the proposed class are: "governmental entities; Defendant;

4    any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates,

5    legal representatives, employees, successors, subsidiaries, and assigns; and any judge, justice, or

6    judicial officer presiding over this matter and the members of their immediate families and judicial

7    staff."  *Id.*

8         In her motion for certification, Vizcarra argues, and Unilever does not dispute, that all

9    members of the proposed class were exposed to the Vanilla Representations, because "Defendant

10   labelled each and every Product with the same Vanilla Representations."  Docket No. 48-4 at 3;

11   *see also id.* at 2 ("All consumers in the proposed class saw the same Vanilla Representations on

12   the Product's label throughout the Class Period.").

13        **A.    Rule 23(a)**

14             **1.    Numerosity**

15        The requirement of numerosity is that the class be so numerous that joinder of all members

16   individually would be impracticable.  Fed. R. Civ. P. 23(a)(1).  "Although there is no exact

17   number, some courts have held that numerosity may be presumed when the class comprises forty

18   or more members."  *See Krzesniak v. Cendant Corp.*, No. 05–05156, 2007 WL 1795703, at *7

19   (N.D. Cal. June 20, 2007).

20        Plaintiff contends that this requirement is satisfied because Unilever sold tens of thousands

21   of units of the ice cream at issue in California during the Class Period.  *See* Docket No. 48-4 at 7.

22        Unilever does not credibly dispute this representation.

23        In the absence of any dispute as to the numerosity of the proposed class, the Court

24   concludes that Vizcarra has satisfied the numerosity requirement.

25             **2.    Commonality**

26        Commonality requires "questions of law or fact common to the class."  Fed. R. Civ. P.

27   23(a)(2).  To satisfy this requirement, the common question must be of "such nature that it is

28   capable of class-wide resolution—which means that the determination of its truth or falsity will

United States District Court
Northern District of California

resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2)[,] even a single common question will do." *Id.* at 359 (internal quotations and brackets omitted). The requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981 (quoting *Dukes*, 564 U.S. at 350). A district court must analyze the persuasiveness of evidence submitted to establish the commonality requirement and may not simply conclude that the commonality requirement is met on the basis that the plaintiff's evidence in support of that requirement is admissible. *See Grodzitsky*, 957 F.3d at 986 (holding that "[a] district court errs when it 'limit[s] its analysis of whether there was commonality to a determination of whether Plaintiffs' evidence on that point was admissible" and that a "district court must engage in a 'rigorous analysis' of commonality, rather than 'merely conclud[ing] that, because . . . evidence was admissible, a finding of commonality was appropriate'") (quoting *Ellis*, 657 F.3d at 984).

Here, Vizcarra argues that the commonality requirement is met because two questions that are "integral" to her claims under the UCL, FAL, and CLRA, "can be resolved with common proof," namely (1) "the question of whether the Vanilla Representations were likely to deceive reasonable consumers; and (2) whether the Vanilla Representations were material to reasonable consumers." Docket No. 48-4 at 8. The only common evidence to which Vizcarra points as being capable of answering these questions is the expert report of Dr. Dennis.

The Court analyzes each of these questions in turn and concludes that Vizcarra has not shown that they are susceptible to resolution with common proof. Accordingly, the commonality requirement is not met.

### i. UCL and FAL and Likelihood of Deception

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. The language of these statutes is "'broad' and 'sweeping' to 'protect both consumers and competitors by promoting fair competition in

United States District Court
Northern District of California

commercial markets for goods and services.'" *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011)).

"[T]o state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary *only* to show that members of the public are likely to be deceived."[2] *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), *abrogated on other grounds by Comcast*, 133 S. Ct. at 1426 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)) (emphasis added).  This standard is governed by whether a "reasonable consumer" is likely to be deceived.  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer.") (citation omitted).  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (relying on *Lavie* to hold that the reasonable consumer standard for likelihood of deception "requires more than a mere possibility that [the alleged misrepresentation] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner'" and instead requires a probability "'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled'") (quoting *Lavie*, 105 Cal. App. 4th at 508).[3]

---

[2] This standard is generally applied in the context of UCL claims brought under the fraudulent prong.  This is the only standard that Vizcarra cited in her briefs as being relevant to the certification of her UCL claims.  Accordingly, the Court proceeds under the assumption that Vizcarra seeks certification only of her fraudulent prong claim under the UCL.

[3] Because the UCL and FAL limit available remedies to injunctive relief, including restitution, a plaintiff suing under the UCL or FAL need not show actual falsity of the alleged misrepresentations or reliance by the plaintiff.  *See Pulaski & Middleman*, 802 F.3d at 986 (holding that the inquiry for a UCL and FAL claim does not require proof of deception, reliance, and injury) (citation and internal quotation marks omitted).  This contrasts with a common law claim for damages based on fraud, for which actual falsity, reliance, and injury are required elements.  *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, Vizcarra argues that the question of whether the Vanilla Representations were likely to deceive a reasonable consumer can be resolved with common proof, namely the opinions of Dr. Dennis.  *See* Docket No. 48-4 at 3.  As noted above, Dr. Dennis' consumer perceptions survey shows that 79.9% of respondents expected, based on the packaging of the ice cream at issue, that "all of the vanilla flavor" comes from the vanilla plant; 14.5% expected that "not all of the vanilla flavor" comes from the vanilla plant; and 5.7% were not sure.  Dennis Report ¶ 20.  Dr. Dennis concluded based on these survey results "that a reasonable consumer in the state of California perceives *the Product's packaging* to convey that all the vanilla flavor comes from vanilla extract (made from the vanilla plant)."  *Id.* ¶ 74 (emphasis added).

Unilever argues that Dr. Dennis' opinions are not capable of answering the question of whether a reasonable consumer was likely to be deceived by the Vanilla Representations because Dr. Dennis did not actually test the effect of the Vanilla Representations on consumers' views or expectations.  Docket No. 55-4.  Instead of testing the effect of the Vanilla Representations, Dr. Dennis tested *the entire package* of the ice cream at issue, which includes the Vanilla Representations as well as other elements that are not challenged by Vizcarra in the complaint.  To support this argument, Unilever points to the opinions of its own market research expert, Dr. Oliver Toubia, who was tasked with evaluating the validity Dr. Dennis' opinions.  Dr. Toubia Report, Docket No. 54-1.  Dr. Toubia opines that Dr. Dennis' survey cannot measure or isolate the effect, if any, of the at-issue Vanilla Representations on consumer perceptions, because it lacks an adequate control group, namely one that tested a stimulus that "shares as many characteristics with the experimental stimulus as possible, with the key exception of the characteristic whose influence is being assessed."  Docket No. 54-1 ¶ 26.  Dr. Toubia opines that, as a result of lacking a relevant control group, the survey cannot determine whether the four at-issue Vanilla Representations caused respondents' perceptions about the source of the flavor, "separate from other factors such as preexisting beliefs about vanilla ice cream or the Breyers brand in general."  *Id.* ¶ 25.  Unilever also contends that Dr. Dennis admitted during his deposition that he failed to isolate the effect of the Vanilla Representations, and that his survey results therefore speak as to the effect of the entire package, and not the Vanilla Representations specifically.  *See* Dennis Dep. Tr. at 57 ("I did not

attempt to isolate any one of these vanilla representations.  So, therefore, my survey results to date are, are speaking to the entire packaging there.").

Vizcarra does not dispute that Dr. Dennis did not test the Vanilla Representations to determine whether the Vanilla Representations would have led a reasonable consumer to believe that the vanilla flavor of the ice cream at issue came exclusively from the vanilla plant, and she admits that Dr. Dennis tested *the entire package* of the ice cream at issue instead.  *See* Docket No. 59 at 5 (admitting that Dr Dennis' "survey questions tested the Plaintiff's allegation that consumers perceived *the Product's packaging* to communicate that all the vanilla flavor comes from vanilla extract (made from the vanilla plant).") (emphasis added).  Vizcarra also does not challenge Dr. Toubia's opinions that, to properly isolate and test the effect of the Vanilla Representations, Dr. Dennis should have tested a stimulus that removed the Vanilla Representations but was otherwise identical to the package of the ice cream at issue, and that Dr. Dennis' failure to isolate the Vanilla Representations in that manner means that his survey results cannot speak as to whether the Vanilla Representations caused respondents' perceptions about the source of the vanilla flavor.  In reply, Vizcarra merely disagrees arguing that Unilever "does not contest" that the question of likelihood of deception can be resolved with common proof, Docket No. 58 at 3, and that it was not inappropriate for Dr. Dennis to test the entire package instead of the Vanilla Representations, because her theory of liability is premised on "the entire Product label," Docket No. 58 at 9.

As a threshold matter, the Court is not persuaded that Unilever "does not contest" that the question of likelihood of deception can be resolved with common proof.  As noted above, Unilever vigorously contests that issue.

The Court also is not persuaded by Vizcarra's current argument that her theory of liability as alleged in the complaint is based on *the entire* label of the ice cream at issue as opposed to the Vanilla Representations that appeared on the front label of the package.  In the complaint, Vizcarra does not allege that she relied on the entire label of the package when deciding to purchase the ice cream at issue.  Instead, Vizcarra alleges that she relied on the specific Vanilla Representations, namely: the statement "natural vanilla," and images of vanilla plant flowers and

beans, and a scoop of ice cream with dark specs.  *See* Docket No. 1 ¶ 12 ("The front of the cartons said "Natural Vanilla" in large, light green letters against a black background, contained pictures of two vanilla beans and vanilla flowers and a scoop of the ice cream with noticeable specks purporting to be actual vanilla beans.  *Plaintiff relied upon these representations* when Plaintiff purchased Breyers Natural Vanilla Ice Cream.") (emphasis added).  While the complaint contains allegations that the Vanilla Representations appeared on the front of the package of the ice cream at issue, that does not change the fact that Vizcarra claims to have relied specifically on the Vanilla Representations, and *not* on the entire label of the package.  Vizcarra's contention that her theory of liability is based on the entire label of the package instead of the Vanilla Representations, therefore, is contradicted by the allegations in the complaint.[4]

Further, Vizcarra's contention that her theory of liability is based on the entire label of the package is contradicted by her own opening brief in support of her motion for class certification.  *See, e.g.*, Docket No. 47 at 1 (stating that, based "the statement 'Natural Vanilla' and images of vanilla plant flowers and beans, and a scoop of ice cream with noticeable dark specks (the 'Vanilla

---

[4] Even if Vizcarra wished to proceed at this juncture with a theory of liability premised on *the entire* package of the ice cream at issue without identifying any specific elements or statements thereon, she has not shown that she could do so.  Where, as here, UCL, FAL, and CLRA claims are premised on alleged misrepresentations in product packaging or advertising, the claims are said to sound in fraud; accordingly, courts routinely hold that the claims must be pleaded with the heightened degree of particularity required by Rule 9(b), which requires, among other things, that the plaintiff identify the *specific* statements or images on that label that are allegedly misleading.  *See, e.g.*, *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-cv-00413, 2021 WL 1788397, at *7-8 (N.D. Cal. 2021) ("Rule 9(b)'s heightened pleading standard applies to UCL, FAL, and CLRA causes of actions because they "are 'grounded in fraud' or 'sound in fraud.'"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (same); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and *specific content of the false representations* as well as the identities of the parties to the misrepresentations'") (citation omitted) (emphasis added).  Vizcarra has not shown that a plaintiff can satisfy these pleading requirements, and avoid dismissal of her UCL, FAL, and CLRA claims, without identifying the specific statements or elements on a product that are allegedly misleading.  Additionally, even if Vizcarra *could* proceed on a theory of lability that was premised on the entire package without identifying specific misleading statements or elements, certification of the proposed class would nevertheless fail for lack of evidence of uniform exposure to the same allegedly misleading representations.  *See Mazza*, 666 F.3d at 596 (holding that "the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading").  Unilever argues that not all members of the proposed class were exposed to the same version of the package label, because there were at least 32 label variations used during the class period.  *See* Docket No. 61-2 at 2-3.  Vizcarra has pointed to no evidence showing that all proposed class members were exposed to the same version of the package label.  *See* Docket No. 47 at 2.

United States District Court
Northern District of California

1    Representations'), [Vizcarra] believed the Product's vanilla flavor came only from the vanilla

2    plant."); *id.* at 8-9 (arguing that the typicality requirement is met because Vizcarra and the

3    proposed class members "believed based on the Vanilla Representations that all of the vanilla

4    flavor of the Product was from the vanilla plant" and "paid a price premium based on the Vanilla

5    Representations").  The Court agrees with Unilever that the first time that Vizcarra contended that

6    her theory of liability was based on the entire label was in her reply in support of her motion for

7    class certification.

8           Having concluded that Vizcarra's theory of lability is premised on the Vanilla

9    Representations, the Court now turns to the issue of whether Vizcarra has shown that common

10   evidence can resolve the question of whether a reasonable consumer was likely to be deceived *by*

11   *the Vanilla Representations*.  The only common evidence to which she has pointed is the report of

12   Dr. Dennis.  As noted, however, Unilever has pointed to evidence of its own in the form of the

13   opinions of Dr. Toubia, which, if credited, negate or at the very least undermine Dr. Dennis'

14   opinions.

15          Where, as here, there is conflicting evidence presented for and against a requirement for

16   class certification, under Ninth Circuit law, the Court must "judg[e] the persuasiveness of the

17   evidence presented" and "resolve any factual disputes necessary to determine whether" the

18   requirements of Rule 23 have been satisfied.  *Ellis*, 657 F.3d at 982-83; *see also Grodzitsky*, 957

19   F.3d at 986 (holding that "[a] district court errs when it 'limit[s] its analysis of whether there was

20   commonality to a determination of whether Plaintiffs' evidence on that point was admissible" and

21   that a "district court must engage in a 'rigorous analysis' of commonality, rather than 'merely

22   conclud[ing] that, because . . . evidence was admissible, a finding of commonality was

23   appropriate'") (quoting *Ellis*, 657 F.3d at 984).

24          Here, it is undisputed that Dr. Dennis' consumer perceptions survey did not specifically

25   test the effect of the Vanilla Representations on consumers' expectations or beliefs; instead, it

26   tested the effect of *the entire package*, which contained the Vanilla representations *as well as* other

27   statements and elements that are not at issue in this action.  Dr. Toubia opines, and Vizcarra has

28   not disputed, that because Dr. Dennis did not specifically test the effect of the Vanilla

17

1    Representations, the results of his survey do not speak as to whether consumers' expectations as to

2    the vanilla content of the ice cream at issue were caused by any of the Vanilla Representations, as

3    opposed to something else, such as other aspects of the packaging that Vizcarra did not challenge

4    in the complaint.  In fact, Dr. Dennis himself admitted that this is the case.  *See* Dennis Dep. Tr. at

5    57 ("I did not attempt to isolate any one of these vanilla representations.  So, therefore, my survey

6    results to date are, are speaking to the entire packaging there.").  In light of this, the Court cannot

7    find that Dr. Dennis' opinions constitute common proof that could resolve the question of whether

8    a reasonable consumer was likely to be deceived by the Vanilla Representations.

9         *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *16-17 (N.D.

10   Cal. June 13, 2014) (Breyer, J.), which Unilever cited in its briefs but Vizcarra has neither

11   addressed nor distinguished, is instructive.  There, the court held that the plaintiff had not shown

12   that the question of likelihood of deception as to the use of the label "natural," which was the

13   alleged misrepresentation at issue in the case, could be answered with common proof because the

14   plaintiff pointed to no common evidence showing that consumers understood the word "natural"

15   in the manner alleged in the complaint.  The court reasoned that, "even if the challenged

16   statements were facially uniform, consumers' understanding of those representations would not

17   be" because "there is no fixed meaning for the word 'natural'" and the plaintiff had not shown that

18   the term had any particular meaning in the minds of consumers.  *Id.* at *17.

19        Similarly, here, Vizcarra has pointed to no common evidence showing that consumers

20   understood the Vanilla Representations—which are comprised of the term "natural vanilla," and

21   images of two vanilla beans, vanilla flowers, and a scoop of the ice cream with black specks—as

22   indicating that the ice cream at issue would be flavored exclusively with vanilla from the vanilla

23   plant.  As discussed above, Dr. Dennis' survey did not test the effect of the Vanilla

24   Representations, and instead tested the entire package, which contains other statements and

25   elements that are not challenged in the complaint and, therefore, the survey says nothing as to

26   whether the survey respondents' expectations as to the ice cream at issue were caused by the

27   Vanilla Representations as opposed to something else that is not at issue in this action.  In the

28

United States District Court
Northern District of California

18

United States District Court
Northern District of California

absence of evidence or authority to the contrary, it appears that the Vanilla representations have no "fixed meaning," just like the "natural" label at issue in *Jones*.

Vizcarra cites *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016) for the proposition that this Court previously held that, to satisfy the commonality element, a plaintiff need only show that there were "identical statements on the labels of the products at issue," because, when that is the case, the answer to the question of whether a reasonable consumer is likely to be deceived will "be based on common facts." *Kumar* is distinguishable. In *Kumar*, the allegedly misleading statement was a label of origin, namely "imported from Italy." In concluding that the question of likelihood of deception was susceptible to common proof, the Court distinguished the "imported from Italy" label at issue from the "natural" label that was at issue in *Jones*, 2014 WL 2702726, at *15, the case discussed above. This Court reasoned that the challenged statement "imported from Italy," unlike the label "natural" that was at issue in *Jones*, was not inherently ambiguous and could be deceptive as a matter of law in light of case law indicating that government regulation of the "use of [labels of origin] suggests that [a label of origin] can be used in misleading ways." *See id.* at *9 (citations omitted). Here, unlike in *Kumar*, the Vanilla Representations are not labels of origin that are subject to government regulation and specific case law suggesting that they could be deceptive as a matter of law. Further, unlike the label at issue in *Kumar*, the Vanilla Representations are inherently ambiguous, like the "natural" label at issue in *Jones*.

Vizcarra also relies on *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 399 (N.D. Cal. 2021) and *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 612 (N.D. Cal. 2018), which also are distinguishable. There, and unlike here, the plaintiff pointed to common evidence that *could* resolve the question of whether a reasonable consumer is likely to be deceived by the alleged representations at issue. *See Bailey*, 338 F.R.D. at 399 (common evidence was marketing expert's declaration and deposition testimony of defendant's representative); *Fizhenry-Russel*, 326 F.R.D. at 612 (common evidence was survey evidence that tested the effect of the alleged misrepresentation at issue on consumers' understanding of the product).

19

United States District Court
Northern District of California

1     Contrary to what Vizcarra suggests, the fact that the question of likelihood of deception

2  under the UCL and FAL is subject to the reasonable consumer standard does not necessarily mean

3  that evidence is not required to establish likelihood of deception.  "Whether a statement or

4  advertisement is likely to mislead is generally a question of fact," *Patricia A. Murray Dental*

5  *Corp. v. Dentsply Internat.*, Inc., 19 Cal. App. 5th 258, 272 (2018), and the plaintiff bears an

6  "evidentiary burden" to demonstrate, consistent with the definition of likelihood of deception set

7  forth in *Lavie*, 105 Cal. App. 4th at 508, "that it is probable that a significant portion of the

8  consuming public could be confused by the [allegedly misleading] labeling of defendants'

9  products," *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *7 (N.D.

10  Cal. Mar. 28, 2013) (granting motion to decertify class and motion summary judgment in favor of

11  defendants on claims under the UCL, FAL, and CLRA in part because plaintiffs failed to meet

12  their "evidentiary burden" to prove that a reasonable consumer was likely to be deceived by

13  "natural" labels on beverages).  Evidence that may be relevant to the factual determination of

14  whether a statement or advertisement is likely to deceive a reasonable consumer under *Lavie*

15  includes, but is not limited to, evidence regarding the knowledge base of the targeted consumer

16  (which is relevant to the determination of the reasonableness of the consumer), *Patricia A.*

17  *Murray*, 19 Cal. App. 5th at 272; the advertisement itself, *id.*; and evidence of "actual confusion,"

18  *see Brockey v. Moore*, 107 Cal. App. 4th 86, 99-100 (2003).

19     In light of these authorities, and where, as here, the plaintiff has not shown that the alleged

20  misrepresentations could be deceptive as a matter of law (as may be the case with labels of origin),

21  the plaintiff must point to common evidence other than the alleged misrepresentations themselves

22  to establish that the question of likelihood of deception can be resolved on a classwide basis.

23  Other than Dr. Dennis' opinions, which do not speak as to the likelihood of deception resulting

24  from the Vanilla Representations, Vizcarra has pointed to no other common evidence that could

25  establish likelihood of deception under *Lavie*.  A finding that the commonality requirement is not

26  met, and a denial of certification as to Vizcarra's claims under the UCL and FAL is, therefore,

27  warranted.  *See Grodzitsky*, 957 F.3d at 986-87 (holding that, where the district court could not

28  rely on an expert's testimony to find that the requirement of commonality was met, and the

plaintiff pointed to no other common evidence to satisfy the commonality requirement, it was appropriate for the district court to deny certification).

### ii.    CLRA and Materiality

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.  The requirements for stating a claim under the CLRA differ from those for a claim under the UCL and FAL because a CLRA plaintiff can obtain damages, as well as equitable relief and other remedies.  Cal. Civ. Code § 1780(a).  A CLRA plaintiff must "show not only that a defendant's conduct was deceptive but that the deception caused them harm."  *Stearns,* 655 F.3d at 1022 (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009)).  In other words, "[a] CLRA claim warrants an analysis different from a UCL [and FAL] claim because the CLRA requires each class member to have an actual injury caused by the unlawful practice."  *Id.* (citation omitted).  That said, "[c]ausation, on a classwide basis, may be established by materiality.  If the trial court finds that material misrepresentations have been made *to the entire class*, an inference of reliance arises as to the class."  *Id.* (quoting *In re Vioxx Class Cases*, 180 Cal. 4th at 129) (emphasis added).  "A misrepresentation is judged to be 'material' if a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."  *Kwikset*, 51 Cal. 4th at 332 (citation omitted).  "Whether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact[.]"  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020) (citation omitted).  "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified."  *Stearns*, 655 F.3d at 1022–23 (citing *In re Vioxx Class Cases*,180 Cal. App. at 129).

Vizcarra argues that the question of whether the Vanilla Representations would be material to a reasonable consumer is capable of resolution with common proof based on the opinions of Dr. Dennis.  *See* Docket No. 48-4 at 4.  As discussed above, in the second part of his report, Dr. Dennis sought to determine "any materiality associated with consumers' preference to purchase Product for which all the vanilla flavor comes from vanilla extract (made from the vanilla plant)."

21

United States District Court
Northern District of California

Dennis Report ¶ 73.  According to Vizcarra, Dr. Dennis' materiality study "measured consumers' preference to purchase either the Product for which (i) all the vanilla flavor comes from vanilla extract (made from the vanilla plant) or (ii) not all the vanilla flavor comes from vanilla extract (made from the vanilla plant)."  Docket No. 59 at 6 (citing Dennis Report ¶ 59).  Dr. Dennis concluded that 88.6% of respondents indicated that they would prefer a product for which all of the vanilla flavor comes from vanilla extract (made from the vanilla plant), while only 6.7% reported that they would prefer to purchase a product for which not all of the vanilla flavor comes from vanilla extract.  Based on these results, Dr. Dennis concluded "that the alleged misrepresentations are material to purchase decision making [sic] for a reasonable consumer in the state of California."  *Id.* ¶ 75.

Unilever argues that Dr. Dennis' opinions do not constitute common proof of whether the Vanilla Representations are material to a reasonable consumer because Dr. Dennis did not test the Vanilla Representations to determine whether they are material to consumers' decision to purchase the ice cream at issue.  Unilever contends that Dr. Dennis instead showed consumers two identical images of the entire packaging of the ice cream at issue and told them to choose between one hypothetical product that that was presented as having "all" of its vanilla flavor coming from the vanilla plant, and another hypothetical product presented as having "not all" of its vanilla flavor coming from the vanilla plant.  Dr. Toubia, who analyzed the validity of Dr. Dennis' report, opines that Dr. Dennis' "Materiality Survey does not examine how 'the use of the words 'Natural Vanilla,' the image of vanilla plant flowers, the image of vanilla beans, and the image of ice cream with black specks' on the packaging of the Breyers product affect consumer purchase decisions."  Docket No. 54-1 ¶ 42.  Accordingly, Dr. Toubia concludes that Dr. Dennis' materiality survey cannot measure whether the Vanilla Representations matter to consumers when it comes to purchasing the ice cream at issue.  *Id.* ¶¶ 43-46.

Again, Vizcarra does not dispute that Dr. Dennis did not test or isolate the effect of the Vanilla Representations on consumers' decision to purchase the ice cream at issue.  In reply, Vizcarra merely repeats the same arguments as made with respect to the question of likelihood of deception, namely that Unilever does not dispute that the question of materiality can be resolved

with common proof, and that her theory of liability is premised on the entire package of the ice cream at issue.

The Court finds that Unilever *does* dispute the issue of whether Vizcarra has shown that the question of materiality can be resolved with common proof, and that Vizcarra's theory of liability is based on the Vanilla Representations and not on the entire label of the ice cream at issue.

The Court agrees with Unilever that Dr. Dennis' opinions are not capable of answering the question of whether a reasonable consumer would find the Vanilla Representations material when purchasing the product at issue. *Jones*, 2014 WL 2702726, at *15, is instructive. There, the court held that the testimony of plaintiffs' expert could not resolve the question of whether the challenged statements would be material to a reasonable consumer because the expert, among other things, "did not explain how the challenged statements, together or alone, were a factor in any consumer's purchasing decisions." *Id.* Vizcarra has not addressed or distinguished *Jones*.

As in *Jones*, Dr. Dennis here has not explained how the Vanilla Representations, together or alone, would impact a consumer's decision to purchase the ice cream at issue. Nor could he. As discussed above, Dr. Dennis admitted during his deposition that he did not test the effect of the Vanilla Representations. Further, Dr. Toubia, whose opinions are unchallenged, opines that Dr. Dennis' failure to test the Vanilla Representations means that Dr. Dennis' materiality survey cannot measure whether the Vanilla Representations matter to consumers when it comes to purchasing the ice cream at issue. Docket No. 54-1 ¶¶ 42-46. Accordingly, Dr. Dennis' opinions have no bearing on the question of whether the Vanilla Representations were material to a reasonable person when purchasing the ice cream at issue.

Because Vizcarra has not pointed to any other common evidence that can answer the question of whether the Vanilla Representations were material to a reasonable consumer, the Court finds that she has not shown that this question is capable of resolution on a classwide basis and that certification should be denied as to Vizcarra's CLRA claim. *See Badella v. Deniro Mktg. LLC*, No., 10-cv-3908, 2011 WL 5358400, at *9 (N.D. Cal. Nov. 4, 2011) (holding that"[m]ateriality is an objective standard, but still, Plaintiffs will need to point to some type of

common proof" in order to meet their burden to show that materiality is a question that can be resolved with common proof); *see also Stearns*, 655 F.3d at 1022–23 ("If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified.").

### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Stearns*, 655 F.3d at 1019. "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation and quotation marks omitted). Typicality may be lacking "if 'there is a danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it.'" *Id.* (citation omitted).

Vizcarra argues that the typicality requirement is satisfied because:

> She, like all class members: purchased the Product during the Class Period that Defendant had labeled with the Vanilla Representations; believed based on the Vanilla Representations that all of the vanilla flavor of the Product was from the vanilla plant; paid a price premium based on the Vanilla Representations; and seeks damages, restitution, and injunctive relief.

Docket No. 48-4 at 9.

Unilever does not dispute that the typicality requirement is satisfied.

In the absence of any dispute, the Court finds that Vizcarra has sufficiently shown that her claims and experience with the ice cream at issue are typical of those of the proposed class members and that the typicality requirement is, therefore, met.

### 4. Adequacy of Representation

The requirement of adequate representation requires a showing that the representative parties "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

This requires inquiry into whether the plaintiff and its counsel have any conflicts of interest with other class members, and whether the plaintiff and its counsel will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Vizcarra argues that she and her counsel, Reese LLP and Sheehan & Associates, P.C., satisfy this requirement because (1) there are no conflicts between herself, her counsel, and the proposed class members; and (2) she and her counsel will prosecute the action vigorously on behalf of the proposed class members.  Docket No. 48-4 at 9-10.

Unilever argues that the adequacy-of-representation requirement is not satisfied because Vizcarra's counsel are unlikely to prosecute the action vigorously on behalf of the proposed class, as they have dismissed other proposed class actions before an unfavorable decision was issued in those cases.

The Court finds that Unilever's assertions with respect to the willingness of counsel to vigorously prosecute this action are speculative and, therefore, unpersuasive.  The Court finds no cause for concern with respect to counsel's ability and willingness to fairly and adequately protect the interests of the proposed class.  The record in this action shows that counsel have prosecuted this action vigorously, as demonstrated, for example, by their successful opposition to Unilever's motion to dismiss.  Additionally, both Reese LLP and Sheehan & Associates, P.C. have extensive experience successfully prosecuting consumer protection class actions such as this one.  *See* Docket No. 58 at 4.

Accordingly, the Court finds that the adequacy-of-representation requirement is met as to both Vizcarra and her counsel.

**B.      Rule 23(b)**

**1.      Rule 23(b)(2)**

Rule 23(b)(2) permits certification of a class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Class certification under Rule 23(b)(2) is appropriate only where the primary relief

United States District Court
Northern District of California

1   sought is declaratory or injunctive." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th

2   Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

3          Here, plaintiff contends that Rule 23(b)(2) certification would be appropriate because the

4   remedy she seeks is "class-wide, homogenous injunctive relief, namely, changes to the Product's

5   label to cure the deception." Docket No. 48-4 at 10.

6          Defendant does not dispute that the requirements of Rule 23(b)(2) are met based on

7   plaintiff's showing.

8          In the absence of any dispute that the injunctive relief that Vizcarra seeks would apply to

9   the proposed class as a whole and would be appropriate as a result of alleged uniform conduct by

10  Unilever affecting the entire proposed class, the Court finds that Vizcarra has satisfied the

11  requirements of Rule 23(b)(2). For the reasons discussed above, however, a Rule 23(b)(2) class

12  cannot be certified at this juncture because of Vizcarra's failure to satisfy the commonality

13  requirement.

14                  **2.      Rule 23(b)(3)**

15         Under Rule 23(b)(3), a plaintiff must show that "the questions of law or fact common to

16  class members predominate over any questions affecting only individual members, and that a class

17  action is superior to other available methods for fairly and efficiently adjudicating the

18  controversy." Fed. R. Civ. P. 23(b)(3).

19                  **a.      Predominance**

20         Rule 23(b)(3) requires the Court to determine whether "questions of law or fact common to

21  class members predominate over any questions affecting only individual members." Fed. R. Civ.

22  P. 23(b)(3). "An individual question is one where 'members of a proposed class will need to

23  present evidence that varies from member to member,' while a common question is one where 'the

24  same evidence will suffice for each member to make a prima facie showing [or] the issue is

25  susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442,

26  453 (2016) (citation omitted). The "predominance inquiry asks whether the common,

27  aggregation-enabling, issues in the case are more prevalent or important than the non-common,

28  aggregation-defeating, individual issues." *Id.* (quoting 2 W. Rubenstein, Newberg on Class

Actions § 4:49 (5th ed. 2012)).  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"  *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005)).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc., v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

As noted above, the claims at issue are under the UCL, FAL, and CLRA.

### i.    UCL, FAL, and CLRA

Vizcarra argues that the predominance requirement is met with respect to her claims under the UCL, FAL, and CLRA, because the questions that Vizcarra contends are capable of class-wide resolution with common proof, namely likelihood of deception and materiality, predominate over individual questions.

Here, as discussed above, Vizcarra has not shown that the two questions central to a claim under the UCL and FAL, on the one hand, and the CLRA, on the other hand, namely likelihood of deception and materiality, respectively, are susceptible to resolution with common proof. Accordingly, the Court cannot conclude that common questions predominate over individual ones with respect to Vizcarra's claims under the UCL, FAL, and CLRA.

The authorities that Vizcarra relies upon to try to show that the predominance requirement is met are distinguishable.  *See* Docket No. 58 at 9.  In those cases, and unlike here, the plaintiff showed that the questions of likelihood of deception and materiality, which, as noted, address the most critical elements of claims under the UCL, FAL, and CLRA, could be resolved with common proof.  In light of that showing, the courts concluded that common questions predominated over individual ones as to the UCL, FAL, and CLRA claims.  *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (holding that predominance requirement was met as to claims under the FAL, CLRA, and UCL in part because the plaintiff had shown that likelihood of deception and materiality could be resolved on a classwide basis based on expert testimony and

defendant's own internal documents); *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2018 WL 4952519, at *11 (N.D. Cal. Sept. 25, 2018) (same based on expert testimony that the court found persuasive and defendants' admissions); *Bailey*, 338 F.R.D. at 407-08 (same based on expert and other deposition testimony); *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (same based on the defendants' own marketing research and surveys).

Vizcarra's argument that Unilever's challenges to the validity of Dr. Dennis' opinions cannot defeat predominance because plaintiff is not required to prove likelihood of deception or materiality at the class certification stage misses the point. Here, the Court's conclusions are not predicated on a finding that Vizcarra has failed to *prove* likelihood of deception or materiality; rather, they are based on a finding that Vizcarra has failed to point to common proof that is *capable* of answering those questions on a classwide basis. As noted above, the Court is required to judge the persuasiveness of evidence offered in favor and against class certification, and to resolve any factual disputes necessary to determine whether the Rule 23 requirements have been met. *See Ellis*, 657 F.3d at 984; *Grodzitsky*, 957 F.3d at 986. Here, for the reasons discussed above, the opinions of Unilever's expert, Dr. Toubia, which are unchallenged, negate any persuasive value that could be accorded to Dr. Dennis' opinions in the context of the class certification inquiry.

In sum, the Court finds that Vizcarra has not shown that the predominance requirement is met as to her claims under the UCL, FAL, and CLRA.

### ii.  Damages

A plaintiff seeking certification under Rule 23(b)(3) must show that damages are capable of measurement on a classwide basis. *Comcast*, 569 U.S. at 35. In *Comcast*, the Supreme Court held that, to meet the predominance requirement, the plaintiff must proffer a damages model showing that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* While the model "must measure only those damages attributable to" the plaintiff's theory of liability, *id.*, the calculations "need not be exact" at the certification stage, *id.* A plaintiff must only "show that [its] damages stemmed from the defendant's actions that created the legal

liability," *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Pulaski & Middleman*, 802 F.3d at 987 ("[T]he mere fact that there might be differences in damage calculations [across individual members of a class] is not sufficient to defeat class certification.") (citation omitted).

The damages and restitution owed to a plaintiff pursuant to the CLRA, and UCL and FAL, respectively, is based on the difference between the price the consumer paid and the price a consumer would have been willing to pay for the product had it been labeled accurately. *Pulaski & Middleman*, 802 F.3d at 988-89. In other words, "the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Id.* (citing *Kwikset*, 51 Cal. App. 4th at 329).

Vizcarra's proposed damages model is the one described in the third part of Dr. Dennis' report. Dr. Dennis proposes a choice-based conjoint analysis to measure the price premium associated with the Vanilla Representations that is based on acceptable methodologies for conducting choice-based conjoint analyses. Vizcarra contends that, because numerous courts have "approved conjoint analysis as a methodology to determine the price attributable to a misrepresentation on a product label," Docket No. 48-4, this Court should do the same here with respect to Dr. Dennis' proposed conjoint analysis.

Unilever argues that Dr. Dennis' proposed conjoint analysis is insufficient to satisfy *Comcast*'s requirement that it measure damages consistent with Vizcarra's theory of liability because the proposed conjoint analysis will not test or isolate any price premium caused by the Vanilla Representations. Unilever also argues Dr. Dennis' proposed conjoint analysis lacks "enough particularity for the Court to conduct the necessary evaluation under" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021)[5], which requires a court to ensure that a proposed damages analysis will be capable of measuring a classwide injury and would not sweep in more than a *de minimis* number of proposed class members who were

---

[5] *Olean* was vacated on August 3, 2021, so that it can be reheard en banc. *See Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods*, 5 F. 4th 950, 2021 WL 3355496 (9th Cir. 2021) (unpublished memorandum). Accordingly, the Court does not consider here any arguments that are predicated on that opinion.

United States District Court
Northern District of California

1   uninjured; and (3) Dr. Dennis' proposed analysis will not take into account supply-side factors.

2           In mislabeling cases where the injury suffered by consumers was in the form of an

3   overpayment (or price premium) resulting from the alleged misrepresentation at issue, courts

4   routinely hold that choice-based conjoint models that are designed to measure the amount of

5   overpayment arising out of the alleged malpresentation at issue satisfy *Comcast*'s requirements.

6   *See, e.g., Zakaria v. Gerber Prod. Co.*, No. LACV1500200JAKEX, 2017 WL 9512587, at *17

7   (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018) (holding that a conjoint analysis

8   that purported to measure consumers' overpayment caused by alleged misrepresentations satisfied

9   *Comcast* because it was consistent with the theory of lability that the alleged misrepresentations

10  caused consumers to suffer economic losses in the form of overpayment).

11          Here, however, Vizcarra has not shown that Dr. Dennis' proposed conjoint analysis would

12  measure a price premium consistent with her theory of liability as required by *Comcast*.  Unilever

13  argues, and Vizcarra does not dispute, that Dennis' proposed conjoint analysis does not test or

14  isolate the price premium, if any, resulting from the Vanilla Representations.  It is undisputed that

15  Dr. Dennis instead will measure any price premium associated with what Dr. Dennis describes as

16  "source of vanilla flavor," which has no specific connection to the Vanilla Representations

17  according to Dr. Toubia.  *See* Toubia Rep. ¶ 75 n.109.  Dr. Dennis himself confirmed this during

18  his deposition.  *See* Dennis Dep. Tr. at 59-61 (admitting that his current design for his proposed

19  conjoint study will not isolate a price premium associated specifically with the Vanilla

20  Representations and will instead "isolate any economic value that is associated with this attribute

21  *source of vanilla flavor* and answer empirically whether consumers care or not and how much do

22  they care economically about what the source is") (emphasis added); *see also id.* at 60 ("Q. So

23  your conjoint survey is not directly testing the price premium that consumers would pay as a result

24  of those four vanilla representations; correct?  A. I think the, well, it's going to depend ultimately

25  on how I make final decisions on the design of the conjoint survey and whether I find it practical

26  and desirable to be able to show these images that you talked about and show them as attributes.

27  *My current plan is not to show those, those design elements*.") (emphasis added).  This alone

28  warrants denying certification of the proposed Rule 23(b)(3) class on the basis that the proposed

United States District Court
Northern District of California

United States District Court
Northern District of California

1    method for calculating damages does not fit Vizcarra's theory of liability and therefore is

2    inconsistent with *Comcast*.

3         *McMorrow v. Mondelez Int'l, Inc.*, 3:17-cv-2327-BAS-JLB, 2020 WL 1157191, at *5-9

4    (S.D. Cal. March 9, 2020), which Unilever cited in its briefs, is instructive.  There, the court

5    denied a motion for certification on the basis that the plaintiff's proposed damages methodology,

6    which was one advanced by Dr. Dennis, did not satisfy *Comcast's* requirement that it measure

7    damages consistent with the plaintiff's theory of liability.  The Court reasoned that the proposed

8    conjoint study would not actually measure the price premium associated with the statement that

9    the plaintiff had challenged as misleading, because it would not isolate the price premium, if any,

10   that was caused by the challenged statement.  Instead of specifically testing the effect of the

11   statement that the plaintiff had challenged, namely the word "nutritious," the proposed study

12   would test entire phrases that contained other words that the plaintiff had not challenged, namely

13   "nutritious sustained energy," "nutritious steady energy all morning," and "4 hours of nutritious

14   steady energy."  *Id.* at *5-9.  The court reasoned that, because the proposed study would not

15   isolate the price premium resulting from the challenged word "nutritious," the proposed study was

16   not consistent with the plaintiff's theory of liability and, therefore, did not satisfy *Comcast*.  *See*

17   *id.* at *19-20 ("Class certification can be denied under *Comcast* "when the proposed price

18   premium (i.e. overpayment) methodology fails to . . . isolate the premium attributable only to the

19   alleged misleading marketing statement.") (citation omitted).  After the court denied the motion

20   for certification on this basis, the plaintiff filed a renewed motion for class certification that relied

21   upon a *revised* proposed conjoint study by Dr. Dennis, and the court granted certification at that

22   point.  *See McMorrow v. Mondelez Int'l, Inc.,* No. 17-CV-2327-BAS-JLB, 2021 WL 859137, at

23   *7 (S.D. Cal. Mar. 8, 2021) (granting renewed motion for class certification and noting that "Dr.

24   Dennis has redesigned the survey, this time with a proposal to isolate the price premium attached

25   to the term, "nutritious.").  Only the initial opinion in *McMorrow* is relevant here.

26        As in the first opinion in *McMorrow*, Vizcarra's proposed methodology for calculating

27   damages does not isolate the Vanilla Representations that form the basis of her theory of liability,

28   and accordingly, it is incapable of calculating the price premium, if any, caused by those alleged

United States District Court
Northern District of California

1    misrepresentations.  Notably, Vizcarra has not addressed, much less distinguished, the first

2    opinion in *McMorrow*.[6]

3         Vizcarra relies on *Broomfield*, 2018 WL 4952519, at *17, for the proposition that Dr.

4    Dennis need not test the effect on consumers of the Vanilla Representations as part of his conjoint

5    analysis to satisfy *Comcast*.  Docket No. 58 at 11.  *Broomfield* is distinguishable.  In *Broomfield*,

6    the plaintiffs alleged to have relied on many misrepresentations that appeared on the packaging of

7    beers, which led them to believe that the beers were brewed in Hawaii.  *Id.* at *2.  In support of

8    class certification, the plaintiffs submitted a damages model that "involve[d] a two-pronged

9    approach": (1) first, conducting a consumer survey to test whether the alleged representations on

10   the packing lead consumers to believe that the beers are brewed in Hawaii and whether the alleged

11   representations were material to consumers' purchasing decisions; and (2) using a choice-based

12   conjoint analysis "to test whether consumers' belief that Kona Beer is brewed in Hawaii allows

13   [the defendant] to charge a price premium for the beers."  *Id.* at *14.  The court held that this two-

14   pronged damages model was consistent with the plaintiffs' theory of liability and, therefore, with

15   *Comcast*, because the court was persuaded that the first part of the model, the survey, could

16   establish that consumers believe that beers are from Hawaii based on the packaging, and the

17   second part of the proposed model, the conjoint analysis, "tests the impact of that belief" by

18   calculating a price premium attributed to that belief.  *Id.* at *16-17.  In light of this, the court held

19   that the second part of the model, the conjoint analysis, "need not have asked about the packaging

20   because that is the function of" the first part of the model, namely the survey.  *Id.* at *16; *see also*

21   *id.* at * 17 ("Thanks to [the survey's] results, the packaging is irrelevant to this final question [of

22   whether consumers have suffered injury from their belief that the beer is brewed in Hawaii], and

23   thus unnecessary to [the conjoint analysis] model").

24        Here, there is no basis to find that testing the Vanilla Representations as part of Dr.

25   Dennis' proposed conjoint analysis is not required based on *Broomfield*.  In *Broomfield*, the

26

27        _____

28        [6] In her opposition, Vizcarra cites the *second* opinion in *McMorrow* that accepted the
     revised proposed conjoint study and granted certification.  *See* Docket No. 58 at 10.  That second
     opinion is not relevant here.

conjoint analysis could be combined with a survey that the court was persuaded was capable of testing the alleged misrepresentations at issue, which, in turn, obviated the need for the conjoint analysis to *again* test the alleged misrepresentations at issue.  By contrast, Dr. Dennis' proposed conjoint analysis here cannot be combined with the results of his survey in order to determine the price premium attributable to the Vanilla Representations.  This is because Dr. Dennis' survey did not test the Vanilla Representations, as discussed at length above.

Vizcarra also argues that "any flaws regarding methodology go to weight, not admissibility."  Docket No. 58 at 10.  This argument is unavailing because, here, the Court is not analyzing the flaws of Dr. Dennis' proposed conjoint study in the context of determining the admissibility of his opinions (the Court has found Dr. Dennis' opinions to be admissible).  As noted above, at this stage, the Court is required to judge the persuasiveness of the evidence offered in support and against class certification, *see Ellis*, 657 F.3d at 984; *Grodzitsky*, 957 F.3d at 986.  The Court analyzes the flaws in Dr. Dennis' opinions in that context.  Here, Unilever has shown, based on Dr. Toubia's unchallenged opinions and the relevant authorities discussed above, that Dr. Dennis' failure to isolate the price premium caused by the Vanilla Representations renders his proposed conjoint study incapable of measuring damages that are consistent with Vizcarra's theory of liability.  *See, e.g.*, Toubia Rep. ¶ 75 n.109 ("Choosing not to measure the price premium created by the accused misrepresentation would add further distance between what is alleged and what [Dr. Dennis' conjoint] study actually measures.").

In light of the foregoing, the Court concludes that Vizcarra has not shown that damages consistent with her theory of liability are capable of measurement on a classwide basis.  *See Comcast*, 569 U.S. at 35.

### b.    Superiority

Rule 23(b)(3) requires a court to consider whether a class action would be a superior method of litigating the claims of the proposed class members by taking into account (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in

the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).

Vizcarra argues that a class action is superior to other available methods of litigating the claims of the proposed class members because (1) the amounts that each proposed class member can recover are not significant and are small relative to the high costs of individual litigation; (2) judicial economy would be promoted and the litigation of the claims would be made more efficient and practical; and (3) the prosecution of individual claims could establish inconsistent standards of conduct for defendant.  Docket No. 48-4 at 13.

Unilever does not dispute that the superiority requirement is satisfied.

The Court finds that the superiority requirement is met here because a class action would lead to a more efficient and speedy resolution of the claims of the proposed class members, and because individual class members do not have a sufficient incentive to litigate their claims individually.

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Vizcarra's motion for class certification **WITHOUT PREJUDICE**, and it **DENIES** Unilever's motion to exclude or strike the opinions of Dr. Dennis.  The Court **GRANTS** Unilever's motion to file a sur-reply.

This order terminates Docket Numbers 47, 48, 52, 55, and 61.

In light of this Order, the Court hereby SETS a compliance deadline for 9:01a.m. on November 18, 2021.  Five (5) business days prior to the date of the compliance deadline, the parties shall file a JOINT STATEMENT setting forth the parties' position with respect to the scheduling of this case.  If compliance is complete, the compliance deadline will be taken off calendar.

**IT IS SO ORDERED.**

Dated: October 27, 2021

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**