August T. Horvath (*pro hac vice*)
*ahorvath@foleyhoag.com*
FOLEY HOAG LLP
1301 Avenue of the Americas, 25th floor
New York, NY 10019
Telephone:  212-812-0344

Christopher A. Nedeau (SBN 81297)
*cnedeau@nedeaulaw.net*
THE NEDEAU LAW FIRM
750 Battery Street, 7th floor
San Francisco, CA 94111
Telephone:  415-516-4010

Attorneys for Defendant
Unilever United States, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| LISA VIZCARRA, individually, and on behalf of those similarly situated,<br><br>                                          Plaintiff,<br><br>     v.<br><br>UNILEVER UNITED STATES, INC.,<br><br>                                          Defendant. | Case No. 4:20-CV-02777-YGR<br><br>**DEFENDANT UNILEVER UNITED STATES, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF LISA VIZCARRA'S SECOND MOTION FOR CLASS CERTIFICATION**<br><br>Date:  Sept. 27, 2022<br>Time:  2:00 p.m.<br>Courtroom:  1 (1301 Clay Street)<br>Judge:  Hon. Yvonne Gonzalez Rogers |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND .................................................... 1

    A.   The Court's Previous Order Denying Class Certification ................................. 2

    B.   Plaintiff's Renewed Motion and Revised Dennis Survey ................................ 4

III. LEGAL STANDARD ..................................................................................................... 5

IV.  ARGUMENT – PLAINTIFF STILL CANNOT SATISFY THE COMMONALITY AND
    PREDOMINANCE REQUIREMENTS OF RULES 23(a)(2) AND 23(b)(3) .................. 7

    A.   Plaintiff Cannot Establish Class-Wide Deception Because Dr. Dennis' Survey Still
        Does Not Isolate and Test the Challenged Claims ............................................ 7

        1.   Dr. Dennis Fails to Employ a Control Condition that Does Not Include the
            Challenged Claims ............................................................................... 7

        2.   Dr. Dennis Does Not Test the Vanilla Representations as They Appear on
            the Breyers Ice Cream Carton ............................................................. 9

    B.   Plaintiff Cannot Establish Class-Wide Materiality Because Dr. Dennis' Survey Still
        Does Not Isolate and Test the Challenged Claims .......................................... 10

    C.   Plaintiff Cannot Establish Class-Wide Damages in the Form of a Price Premium
        Because Dr. Dennis Proposes No Viable Method for Doing So ...................... 12

        1.   The Price Premium Study Will Not Isolate and Test the Challenged
            Labeling Elements .............................................................................. 13

        2.   The Price Premium Study Has Significant Methodological Pitfalls that Dr.
            Dennis Does Not Address ................................................................... 16

V.   CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013).................................................................................................5

*Bernstein v. Conopco Inc.*,
    No. 3:21-cv-10160-KAR, 2022 U.S. Dist. LEXIS 106579
    (D. Mass. June 15, 2022)........................................................................................2

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013).........................................................................................4, 5, 6

*Cytosport, Inc. v. Vital Pharms, Inc.*,
    894 F. Supp. 2d 1285 (E.D. Ca. 2012)..................................................................6

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011)..................................................................................5

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)...............................................................................5, 6

*McMorrow v. Mondelez Int'l, Inc.*,
    3:17-cv-2327-BAS-JLB, 2020 WL 1157191 (S.D. Cal. March 9, 2020)...........4, 13

*Procter & Gamble v. Ultreo, Inc.*,
    574 F. Supp. 2d 339 (S.D.N.Y. 2008)...................................................................6

*Rutledge v. Elec. Hose & Rubber Co.*,
    511 F.2d 668 (9th Cir. 1975).................................................................................5

*Weisberg v. Takeda Pharm. U.S.A., Inc.*,
    No. CV 18-784 PA, 2018 WL 4043171 (C.D. Cal. Aug. 21, 2018), *recons.*
    *denied sub nom. Weisberg v. Takeda Pharm. Co. Ltd.*, 2018 WL 5917884
    (C.D. Cal. Oct. 15, 2018).......................................................................................5

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... *passim*

**Other Authorities**

S. S. Diamond, "Reference Guide on Survey Research," in *Reference Manual on*
    *Scientific Evidence, 3d ed.*, National Academies Press, 2011 .........................6, 8, 9

6 J.T. McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION, (4th ed.
    2017), § 32:18 ........................................................................................................6

## I.      INTRODUCTION

Unilever respectfully requests that the Court DENY Plaintiff's second motion for class certification (Dkt. 47) on the grounds that:

(1) this case does not meet the requirement of Rule 23(a)(2) that there are questions of law or fact common to the class; and

(2) this case does not meet the requirement of Rule 23(b)(3) that questions of law or fact common to the class predominate over any questions affecting only individual members.

Plaintiff relied, and continues to rely, on surveys performed by Dr. Michael Dennis to meet these requirements.  In all three actual and proposed surveys now presented by Dr. Dennis, he has failed to heed the Court's directive, which he and Plaintiff admitted was necessary, that "to properly isolate and test the effect of the Vanilla Representations, Dr. Dennis should have tested [the actual Breyers package against] a stimulus that removed the Vanilla Representations but was otherwise identical to the package of the ice cream at issue."  (Order Denying Class Certification, Dkt. 66, at 15.)  To do this, he needed to create a control group, to which half of his subjects would be randomly assigned, who would see and react only to this new stimulus described by the Court.  Dr. Dennis' key survey on the deceptiveness of the package still does not test any stimulus with the Vanilla Representations removed, and none of the three surveys uses a control group or tests any stimulus that is otherwise identical to the package of ice cream at issue.  Indeed, none of the surveys any longer even test the actual ice cream package at issue or anything similar to it.  As a result, Dr. Dennis still fails to isolate the impact, if any, of the Vanilla Representations from remaining package elements, from existing consumer beliefs, from research artifacts and from other noise.  Further, his new surveys introduce the new fatal flaw of not testing the claims as they appear on the Product at issue in this case.  Accordingly, class certification should again, and finally, be denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

For a full account of this case prior to the Court's denial of class certification, Unilever refers the Court to Part II of Unilever's previous opposition to class certification (Dkt. 51).  Briefly, Plaintiff alleges that four elements on the packaging of Breyers Natural Vanilla Ice

Cream communicate to consumers that all of the vanilla flavor of the ice cream is provided by vanilla extract, sourced from the vanilla plant.  The four are (1) the phrase "Natural Vanilla," (2) an image of a vanilla flower, (3) a partial image of a vanilla bean pod, and (4) an image of the ice cream, in which small black specks can be seen (the "Challenged Label Elements" or the "Vanilla Representations"[1]).  Almost all of the over 100 cases similarly challenging the labels of various vanilla ice creams have vanished from court dockets, with many having been dismissed on motion for failure to allege plausibly that a reasonable consumer could be deceived by the packaging elements challenged, including a recent case in which vanilla bean, speck, and flower imagery also was used, *Bernstein v. Conopco Inc.*, No. 3:21-cv-10160-KAR, 2022 U.S. Dist. LEXIS 106579 (D. Mass. June 15, 2022), and many more having been dismissed voluntarily without settlement.  In this case, Unilever elected not to make a dispositive motion on these grounds because Unilever can and, if necessary, will further show that, beyond any serious dispute, the vanilla flavor of Breyers Natural Vanilla Ice Cream *is* all provided by vanilla extract, even though its labeling, as held by other courts, does not claim this.

### A.    The Court's Previous Order Denying Class Certification

Plaintiff moved for class certification, attaching a survey by Dr. J. Michael Dennis as her only basis to establish common issues of law or fact under Rule 23(a)(2) and the predominance of those common issues over individual issues under Rule 23(b)(3).  The Court denied this motion, finding that Plaintiff failed to establish that her two key questions, (1) "whether the Vanilla Representations were likely to deceive reasonable consumers" and (2) "whether the Vanilla representations were material to reasonable consumers" are capable of common proof. Dkt. 66 at 12.  As the Court noted, Plaintiff's motion put forward Dr. Dennis' expert opinion as both the only basis for her contention that these questions can be answered with common proof, and as that proof itself.  *Id*. at 12, 14.  However, the Court held, the surveys conducted and proposed by Dr. Dennis had "no persuasive value in the context of the class certification analysis, because Dr. Dennis did not specifically test the effect of the Vanilla Representations on

---

[1] Unilever herein adopts the Plaintiff's conclusory term "Vanilla Representations" for consistency with other filings, but without admitting that they make any representations.

consumers' beliefs or purchasing decisions, or on whether consumers paid any price premium attributable to such alleged misrepresentations." *Id.* at 10.  Therefore, Plaintiff furnished neither common proof of these contentions nor evidence that they are susceptible to common proof.

As the Court noted in its Opinion, "Vizcarra … does not challenge Dr. Toubia's opinions that, to properly isolate and test the effect of the Vanilla Representations, Dr. Dennis should have tested a stimulus that removed the Vanilla Representations but was otherwise identical to the package of the ice cream at issue, and that Dr. Dennis' failure to isolate the Vanilla Representations in that manner means that his survey results cannot speak as to whether the Vanilla Representations caused respondents' perceptions about the source of the vanilla flavor." *Id.* at 15.  Similarly, with respect to Dr. Dennis' survey on materiality, by showing respondents two identical packages and merely telling them that one of them represented the product as having all of its vanilla flavor coming from the vanilla plant while the other did not, the Court agreed that "Dr. Dennis did not test or isolate the effect of the Vanilla Representations on consumers' decision to purchase the ice cream at issue" and that "Dr. Dennis' opinions are not capable of answering the question of whether a reasonable consumer would find the Vanilla Representations material when purchasing the product at issue." *Id.* at 22, 23.

This Court ruled that because Plaintiff had not shown that her key allegations are capable of being proven on a class-wide basis, she failed to meet the commonality requirement of Rule 23(a)(2) and also the predominance requirement of Rule 23(b)(3).  In similar cases where the predominance requirement has been met, "the plaintiff showed that the questions of likelihood of deception and materiality, which, as noted, address the most critical elements of claims under the UCL, FAL, and CLRA, could be resolved with common proof.  In light of that showing, courts concluded that common questions predominated over individual ones as to the UCL, FAL, and CLRA." *Id.* at 27.  Without proof that likelihood of deception and materiality can be established on a common basis, there is little left in a UCL, FAL, and CLRA case to predominate over individual issues, and so the Rule 23(b)(3) requirement also is not met.

The Court further ruled that Plaintiff's proposed method of estimating damages was not

shown to "measure a price premium consistent with her theory of liability as required by [*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)]" because a conjoint study proposed by Dr. Dennis for this purpose also "does not test or isolate the price premium." *Id*. at 30. Dr. Dennis' study proposed to "measure any price premium associated with what Dr. Dennis describes as 'source of vanilla flavor,' which has no specific connection to the Vanilla Representations." *Id*. Like a previous study advanced by Dr. Dennis in *McMorrow v. Mondelez Int'l, Inc.*, 3:17-cv-2327-BAS-JLB, 2020 WL 1157191 (S.D. Cal. March 9, 2020), the proposed study in this matter tested the effect of the researcher's own interpretation of the challenged claims and not the challenged claims themselves, and as a result, "Vizcarra's proposed methodology for calculating damages does not isolate the Vanilla Representations that form the basis of her theory of liability, and accordingly, it is incapable of calculating the price premium, if any, caused by those alleged misrepresentations." *Id*. at 30-31.

**B.      Plaintiff's Renewed Motion and Revised Dennis Survey**

Plaintiff moved again for class certification on June 17, 2022, relying on a new expert opinion from Dr. Dennis as, again, her only evidence that the questions of whether the Vanilla Representations are likely to deceive reasonable consumers and are material to consumers are capable of common proof, in satisfaction of the Rule 23(a)(2) commonality and Rule 23(b)(3) predominance requirements. Dr. Dennis presents the results of new surveys purporting to show likelihood of deception and materiality, and proposes an entirely different method for estimating damages. Plaintiff and Dr. Dennis now claim that the new surveys are capable of proving, and do prove, likelihood of deception and materiality of the isolated Vanilla Representations on a class-wide basis, and that the new damages estimation methodology conforms to Plaintiff's theory of liability. A review of these actual and proposed studies shows, however, that they are not capable of isolating the alleged impact of the challenged claims, any more than the previous iteration rejected by this Court. In all three new studies, Plaintiff and Dr. Dennis declined to follow the Court's direction to "[test] a stimulus that removed the Vanilla Representations but was otherwise identical to the package of ice cream at issue," and still employed no control

groups.  Instead, all respondents still viewed the Vanilla Representations, but now on a doctored, unrealistic ice cream package with other marketing copy removed.  In a new materiality survey, Dr. Dennis uses this doctored stimulus together with an even more doctored one, presenting respondents with a choice between two unrealistic stimuli that neither isolates the Vanilla Representations nor gives any indication of what consumers actually would choose in the real-world marketplace.  Finally, in his new proposed damages estimation method, Dr. Dennis adopts a different methodology than conjoint analysis, and does not even present the stimuli he intends to test in order to comply with the Court's Order denying Plaintiff's first motion for class certification.

In response to Dr. Dennis' new expert opinion, Dr. Olivier Toubia, Glaubinger Professor of Business at the Columbia University Business School, submitted a second Expert Rebuttal report on May 18, 2022 (Exhibit 1 to Declaration of August T. Horvath, August 16, 2022, filed herewith) ("Toubia Rep."), which is referred to herein.

## III.    LEGAL STANDARD

"[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Comcast*, 569 U.S. at 33 (citation omitted).  Rule 23 imposes "strict requirements" for class certification.  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).  Plaintiffs bear the burden of showing "that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  Plaintiff's failure of proof on any one of the elements of Rule 23(a) defeats class certification.  *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).  This requires proof under the preponderance of evidence standard. *Weisberg v. Takeda Pharm. U.S.A., Inc.*, No. CV 18-784 PA, 2018 WL 4043171, at *4 (C.D. Cal. Aug. 21, 2018), *recons. denied sub nom. Weisberg v. Takeda Pharm. Co. Ltd.*, 2018 WL 5917884 (C.D. Cal. Oct. 15, 2018).  "[T]he trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza*,

666 F.3d at 588 (citation omitted).  After determining that a case meets all of the requirements of Rule 23(a), a court must continue its "rigorous analysis" to determine whether the case meets at least one of the requirements of Rule 23(b).  *Comcast*, 569 U.S. at 33.

After conducting such an analysis here, the Court should determine that Plaintiff's arguments for class-wide commonality, materiality, and damages, which hinge entirely on actual or potential surveys, are not capable of establishing, by a preponderance of the evidence, that these issues have been or will be provable on a class-wide basis.  The Court's prior decision was founded mainly on the failure of Plaintiff's survey expert, Dr. Dennis, to use proper controls to isolate the impact of the challenged Vanilla Representations by comparing consumer reactions to the actual product package against an alternative stimulus that retained the other elements of the Breyers ice cream, but omitted these representations.  An appropriate control would be one that "shares as many characteristics with the experimental stimulus as possible, with the key exception of the characteristic whose influence is being assessed."  Toubia Rep. ¶ 27, *quoting* Diamond (2011), at 399.  "Without a control group, it is not possible to determine how much of the [apparent effect] is attributable to respondents' preexisting beliefs or other background noise."  Diamond (2011) at 398-99; Toubia Rep. ¶ 26 & n.50; *see also* 6 J.T. McCarthy, MᴄCᴀʀᴛʜʏ ᴏɴ Tʀᴀᴅᴇᴍᴀʀᴋꜱ & Uɴꜰᴀɪʀ Cᴏᴍᴘᴇᴛɪᴛɪᴏɴ, (4th ed. 2017), § 32:187 ("the absence of a control is … a fatal weakness").  Dr. Dennis' new surveys employ no controls at all, a flaw that is such a serious breach of proper research protocol that it alone warrants rejection of the surveys as providing any useful evidence.  *See Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 351-52 (S.D.N.Y. 2008) (rejecting false-advertising survey that did not use a control group to account for preexisting beliefs); *Cytosport, Inc. v. Vital Pharms, Inc.*, 894 F. Supp. 2d 1285, 1291 (E.D. Ca. 2012) (same).

IV.     **ARGUMENT – PLAINTIFF STILL CANNOT SATISFY THE COMMONALITY AND PREDOMINANCE REQUIREMENTS OF RULES 23(a)(2) AND 23(b)(3)**

A.     **Plaintiff Cannot Establish Class-Wide Deception Because Dr. Dennis' Survey Still Does Not Isolate and Test the Challenged Claims**

1.     **Dr. Dennis Fails to Employ a Control Condition that Does Not Include the Challenged Claims**

Dr. Dennis now says that he has tested just the Vanilla Representations, but he has not done so. Although he has removed the Breyers brand and other marketing copy from the label, this does not test only the Vanilla Representations, nor does it isolate the Vanilla Representations from other likely drivers of Dr. Dennis' results. Specifically, because he has not used any control condition, Dr. Dennis cannot isolate the purported effects of the Vanilla Representations from the following, which remain as confounding factors in the one and only stimulus tested in the new deception survey:

- The package is still clearly a container of vanilla ice cream, and is explicitly identified as such in the survey questionnaire. Therefore, Dr. Dennis' new deception survey does not and cannot isolate the effect of any preexisting beliefs consumers have about the flavoring of vanilla ice cream in general from the purported impact of the Vanilla Representations.

- The distinctive Breyers trade dress is still recognizable despite the deletion of the Breyers brand, and many respondents may recognize the stimulus as a doctored Breyers package. Therefore, the survey does not and cannot isolate the effect of any preexisting beliefs consumers have about Breyers from the purported impact of the Vanilla Representations.

- The research context inherently creates demand effects and other biases to responses. The survey provides no means of measuring and compensating for the impact of these effects, and therefore does not and cannot isolate the effect of these potential biases from the purported impact of the Vanilla Representations.

- Dr. Dennis' biased and leading questions, discussed by Dr. Toubia in his first and second expert reports, likely distorted his responses. Even though the impact of

1    these flawed questions may be debated between the experts, it is crucial for

2    purposes of this motion that the survey provides no means of measuring any such

3    impact.  These potential biases therefore are not isolated from the purported

4    impact of the Vanilla Representations.

5  *See* Toubia Rep. ¶¶ 21-29.

6         As the Court pointed out, the only way to isolate the Vanilla Representations in this

7  context is to test a control stimulus *without* those representations, but otherwise identical to the

8  Breyers package and see whether that stimulus does *not* communicate the allegedly deceptive

9  message.  There is a common, standard, and easily implemented way to isolate advertising

10  claims from all of these other aspects of the packaging, preexisting beliefs, and research artifacts.

11  It has been done in hundreds of advertising copy tests for litigation.  To isolate the challenged

12  marketing claims, the researcher creates a control condition in which respondents are asked

13  about a package that "shares as many characteristics with the experimental stimulus as possible,

14  with the key exception of the characteristic whose influence is being assessed."  Toubia Rep.

15  ¶ 27, *quoting* Diamond (2011), at 399.  The appropriate design – the *only* design capable of

16  isolating the challenged claims in this case – would have been to create a version of the

17  Product's packaging that omitted only the Vanilla Representations, and to test this version on a

18  separate, randomly assigned group of subjects who would be asked the same questions as were

19  asked to the subjects who view the actual Product.  In such a design, the type of product,

20  consumers' existing beliefs, any artifacts created by the research context and methodology, and

21  any other survey "noise" would be common to both groups, with only the Vanilla

22  Representations differing between them.  Any difference in the results between the two groups

23  could then be attributed to the challenged claims.  This is what it means to "isolate" the

24  challenged marketing claims.  Lumping the challenged claims together with innocuous known

25  characteristics of the Product, with Breyers' trade dress, and with potential research artifacts,

26  with no means of determining whether these factors or the Vanilla Representations are driving

27  the results, does *not* isolate the challenged claims.  (Toubia Rep. ¶¶ 21-22.)

28

Because Dr. Dennis used no control group, we do not know whether there is any circumstance in which his survey would not produce the same results – that, purportedly, a large majority of consumers expect the product to be flavored entirely with the vanilla plant.  For all we know, this survey would produce the same results from testing *any container of ice cream in the world*, because it has shown no ability to differentiate between consumers' perceptions of a package that contains the Vanilla Representations and one that does not.  The control-group method laid out by Dr. Shari Diamond in her *Reference Guide on Survey Research*, by standard research practice as elucidated by rebuttal expert Dr. Toubia, by the past case law, and by this Court would address this issue, and is necessary to do so.  Without it, Dr. Dennis has not designed and performed a study capable of isolating and measuring the effect of the Vanilla Representations.

### 2.     Dr. Dennis Does Not Test the Vanilla Representations as They Appear on the Breyers Ice Cream Carton

To make matters worse, Dr. Dennis' new study now never presents the actual, complete Breyers package to consumers, violating the cardinal rule that allegedly false advertising claims must be considered in context.  (Toubia Rep. ¶¶ 30-31.)  The other packaging elements that Dr. Dennis deleted from the stimulus in his new study – the Breyers name, the non-challenged marketing copy, and so forth – *needed to be there*, because they are viewed by the consumer at the same time as the challenged claims and may explain, condition, or overwhelm the Vanilla Representations.  "By removing branding information from the stimulus presented to respondents in the modified Dennis Consumer Perceptions Survey, Dr. Dennis produced a stimulus that 'is fundamentally different from what consumers experience in the marketplace' rendering his results not representative of consumers' perceptions of the at-issue products in the marketplace."  Toubia Rep. ¶ 31, *citing* I. Simonson & R. Kivetz, *Demand Effects in Likelihood of Confusion Surveys: The Importance of Marketplace Conditions*, in S.S. Diamond & J.B. Swann, Trademark and Deceptive Advertising Surveys: Law, Science, and Design (ABA 2012), at 249.

In this way, Dr. Dennis' new study is even more irrelevant to Plaintiff's claims than his

previous one, to the point of being "irrelevant to the real world." (Toubia Rep. at 15). A properly controlled study presents the challenged advertising claims to respondents *in context*, then isolates those claims from the context by presenting a separate, equivalent group of consumers with *only the context* and not the challenged claims, as described above. The difference between the beliefs reported by consumers who see only the context and those who also see the challenged claims is the impact, if any, of the challenged claims. Dr. Dennis' study does not do this, despite Plaintiff admitting and being told by the Court that it is the only way to isolate the Vanilla Representations and to meet Plaintiff's burden on commonality and predominance.

Moreover, Dr. Dennis' substitution of an "unbranded, disguised" and highly doctored stimulus takes his survey even further from complying with the Court's directive to test the actual Breyers package against "a stimulus that removed the Vanilla Representations but was otherwise identical to the package of the ice cream at issue." Dkt. 66 at 15. In Plaintiff's new survey, there is no longer anything tested that is even similar to the Breyers ice cream package, let alone is identical to it. While he failed to isolate the Vanilla Representations from the remaining elements of Breyers' trade dress, from consumers' beliefs about ice cream, from research artifacts, and from other sources of noise, Dr. Dennis succeeded in isolating his survey from marketplace reality. The revised Dennis survey cannot isolate and attribute any impact to the Vanilla Representations, either in the abstract, or as actually used on the product at issue.

**B.    Plaintiff Cannot Establish Class-Wide Materiality Because Dr. Dennis' Survey Still Does Not Isolate and Test the Challenged Claims**

Dr. Dennis' new "materiality referendum survey" also does not use any controls. It differs from his previous study in that it now presents respondents with a choice between two different Product packages, one of which is the same heavily doctored Product package presented in the deception survey, and the other is the package still further doctored to omit the Vanilla Representations. By now, this second stimulus is just a black carton with a photo of an unidentified, off-white frozen dessert and the word "Vanilla." Dennis Rep. ¶ 34. Respondents are told the size of the package, that the prices are the "Same" but unspecified, and told that both

DEFENDANT UNILEVER UNITED STATES, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF LISA VIZCARRA'S SECOND MOTION FOR CLASS CERTIFICATION

10

products have "170 Calories per 2/3 Cup Serving."  Respondents are also that the "Nutrition information on front of package" is the "Same" but again unspecified, and also nonsensical because respondents can see that there is no nutritional information on the front of the package.

In this study, for the first and only time, Dr. Dennis tested a product package with and without the Vanilla Representations.  But it is not the package of the Product at issue.  The doctoring of the Product packaging has rendered it so "unbranded, disguised" (Dennis Rep. ¶ 28) that Dr. Dennis might as well have tested the Vanilla Representations in the abstract, without reference to any product in the marketplace.  No methodological reason is offered, nor could one be, for this extensive doctoring of the package.  Its only function is to focus respondents artificially on the presence or absence of the Vanilla Representations by signaling to them that nothing else about the product is important.

This Court ruled, with respect to Dr. Dennis' prior attempt to perform a materiality survey, that "Dr. Dennis did not test or isolate the effect of the Vanilla Representations on consumers' decision to purchase *the ice cream at issue*" and that "Dr. Dennis' opinions are not capable of answering the question of whether a reasonable consumer would find the Vanilla Representations material when purchasing *the product at issue*."  Dkt. 66 at 22, 23 (emphasis added).  In his new materiality survey, Dr. Dennis still failed to test the effect, if any, of the Vanilla Representations on consumers' decision to purchase the product at issue.  He never showed respondents the product at issue at all.  His study does not test consumers' decisions to purchase the product at issue, whether it is the effect of the Vanilla Representations or anything else.

Isolating the Vanilla Representations from the other Product packaging elements is not accomplished by eliminating those other Product packaging elements.  It is neither necessary nor proper to ignore the context in which the Vanilla Representations occur and to present respondents with a stimulus that they obviously would never see in the marketplace.  To isolate the effect of the Vanilla Representations from consumers' decision to purchase the *product at issue*, Dr. Dennis needed only to follow the guidance of standard research practice, Dr. Toubia,

past case law, and this Court:  "to properly isolate and test the effect of the Vanilla Representations, Dr. Dennis should have tested a stimulus that removed the Vanilla Representations but was otherwise ***identical to the package of the ice cream at issue***."  *Id.* at 15.  Dr. Dennis cannot test the impact of free-floating Vanilla Representations and pretend that they are applicable to the product at issue.  In his new materiality study, he has not tested or learned anything about consumers' decision to purchase Breyers Natural Vanilla Ice Cream.

Notably, Dr. Dennis designed a stimulus that omits the Vanilla Representations for his materiality study, yet he did not create a control group to test this stimulus in his likelihood-of-deception study.  This would still be an invalid control stimulus, because it is not "otherwise identical to the package of ice cream at issue," but it at least shows that Dr. Dennis knows how to delete the Vanilla Representations from the Product package if he wants to.  Dr. Dennis could easily have complied with standard survey practice, the authorities cited herein, and the Court's instruction by leaving the Breyers brand and other copy on the Product package, testing the exact Product as marketed as his experimental group, and testing the identical package but without the same Vanilla Representations that he removed for this survey as his control group.  He could have done such a between-groups comparison of the actual Breyers package and a proper control in both his likelihood-of-deception survey and his materiality survey.  But he did neither.  As a result, he not only failed to isolate the challenged Vanilla Representations, but also doomed both his likelihood-of deception survey and his materiality survey to complete irrelevance by never testing the Vanilla Representations as actually presented in the context of the full Breyers package.

> ### C.      Plaintiff Cannot Establish Class-Wide Damages in the Form of a Price Premium Because Dr. Dennis Proposes No Viable Method for Doing So

In response to this Court's ruling that the proposed choice-based conjoint study previously advanced by Dr. Dennis cannot estimate class-wide damages due to the Vanilla Representations because it would not isolate the effect of the specific Vanilla Representations, Dr. Dennis did not adopt the strategy that he employed in the previous similar case of *Mondelez*, where he redesigned his choice-based conjoint study to incorporate the specific representations

complained of by the plaintiff.  Although Dr. Dennis now writes that "It is a simple matter to modify my proposed approach to address the Court Order, that is, to have my price premium survey be based solely on the Vanilla Representations rather than the entire product packaging" (Dennis Rep. ¶ 58), he does not, in fact, propose to do so.  Instead, Dr. Dennis has thrown away the entire choice-based conjoint study method, and has proposed a new type of damages analysis that references no standard or conventional methodology.  Characterized by Dr. Dennis as a "modified referendum" study, this new proposed survey resembles a method known as "contingent valuation" research.[2]  Toubia Rep. ¶ 61.  Dr. Dennis offers no reason why he has abandoned choice-based conjoint research, which this Court ruled is an acceptable methodology for damages estimation in this case, in favor of this new study design.

Dr. Dennis' switch from choice-based conjoint to an unspecified hybrid referendum/contingent-valuation design introduces several methodological problems, but it does *not* cure the deficiency that was the basis for the Court's rejection of the damages estimation method he proposed in support of Plaintiff's prior motion.  The new study proposed by Dr. Dennis still does not propose to use proper controls, including stimuli that tests respondents' valuation of the Breyers Natural Vanilla Ice Cream carton with versus without the challenged Vanilla Representations.  Setting aside its methodological deficiencies, Dr. Dennis' study, by design and intention, is therefore not capable of isolating and measuring any price premium that consumers might pay for the Vanilla Representations as applied to the Breyers ice cream packaging.

### 1. The Price Premium Study Will Not Isolate and Test the Challenged Labeling Elements

Dr. Dennis' description of his proposed price premium study contains almost no information about his intended methodology.  In his previous report, Dr. Dennis admitted he had not even begun to design his conjoint survey and similarly supplied almost no relevant

---

[2] The term "referendum," as used in the context of contingent valuation studies, refers to the original use of such studies for asking citizens to evaluate public services or initiatives that were contemplated as subjects of a potential ballot proposition or plebiscite.  The study itself is not a "referendum."  Dr. Dennis' use of the term "referendum" in this context is meaningless, and provides no guidance as to the appropriate methodology.

information about it, but at least he could direct the Court to statistical software manuals that he planned to use as cookbooks to create a conventional, choice-based conjoint design.  The Court deemed this an adequate description of his methodology at this stage.  Here, Dr. Dennis provides even fewer details of his proposed price premium study, proposes a general methodology with only vague references to its purported prior use in litigation, and provides no reference to best practices or standard methods by which it would be conducted.  (Toubia Rep. ¶ 62.)

One interpretation of Dr. Dennis' description of his new price premium study is that Dr. Dennis now intends merely to adapt the "Materiality (Referendum) Study," already reported at paragraphs 33-34 and 47-49 of his report, which he previously used only to assess the "materiality" of the Vanilla Representations, by adding questions about prices.  Because the existing "Materiality (Referendum) Study" asks consumers which of two packages they would prefer *at the same price*, and that price is unspecified, this study cannot be used to quantify a price premium, as Dr. Dennis admits.  (Dennis Rep. at 12 n.9.)  His new proposal apparently is to substitute a price for the unspecified "same price" direction, and then add additional questions that offer respondents additional, arbitrary, lower price points, asking whether they would now prefer their less-favored product option at each price.  (Dennis Rep. ¶¶ 62-65.)

Most crucially, Dr. Dennis does not present the stimuli that he would show to respondents in his new price premium study.  He writes that he plans to give respondents the choice between "the product with the Vanilla Representations [and] the product without the Vanilla Representations."  Dennis Rep. ¶ 61.  However, if the price premium study is to be based on the "Materiality (Referendum) Study," then this is not what he actually intends.  The stimuli used in the "Materiality (Referendum) Study" were not "the product" with and without the Vanilla Representations, they were a heavily doctored, anonymous, implausible carton of an unspecified dessert with and without the Vanilla Representations.  These stimuli do not succeed in isolating and testing the Vanilla Representations, for the reasons discussed above in connection with the "Materiality (Referendum) Study."  Moreover, as applied to an estimation of price premiums, these stripped-down stimuli are even more invalid, because when asking the

total price consumers would pay for a product, it is absolutely essential to describe completely the product they are being offered for that price.

For respondents to place a value on an attribute of the product, such as the Vanilla Representations, the respondents must be allowed to consider the attribute of interest in the context of the other product attributes driving their purchase decisions.  This is a primary reason for the development of the choice-based conjoint study method that Dr. Dennis previously proposed.  Respondents in such an analysis are presented with multiple attributes of the product, without knowing which one is of interest to the researcher, so that they can balance and weigh each attribute in the context of their overall purchasing decision.  Respondents must be allowed to assess the value of the Vanilla Representations in the context of the other attributes of a realistically presented, actual product.  Out of the total price of a carton of Breyers Natural Vanilla Ice Cream, how much is the Breyers brand worth?  How much is the product being "made with fresh cream, sugar and milk" worth?  How much is "partnering with American farmers [for] 100% Grade A milk and cream" worth?  How much is the Rainforest Alliance Certification worth?  How much are other things respondents already know or believe about the Product worth?  Dr. Dennis cannot isolate the impact of the Vanilla Representations from these other product attributes without showing consumers these product attributes.  Again, Dr. Dennis has failed to heed the Court's instruction in its prior Order, supported by standard research practice and the case law, that he must test the actual, complete Breyers package against "a stimulus that removed the Vanilla Representations but was otherwise identical to the package of the ice cream at issue" in order to isolate the impact of the Vanilla Representations as they appear in the marketplace.  Dkt. 66 at 15.

In short, Dr. Dennis' proposed survey, by design, is incapable of answering the research question he himself proposes:  "at what price point would the reasonable consumer be willing to purchase *the product without the Vanilla Representations*."  (Dennis Rep. ¶ 59, emphasis added.)  Using the stimuli he already developed for his "Materiality (Referendum) Study," as he apparently intends, Dr. Dennis does not plan to show respondents "the product without the

Vanilla Representations" (or, for that matter, the product *with* the Vanilla Representations) and therefore cannot estimate a price point at which consumers are willing to purchase it. He intends only to estimate a price point at which consumers are willing to purchase free-floating Vanilla Representations divorced from the product at issue and irrelevant to the facts of this litigation. His proposed analysis, by design, is incapable of estimating how much consumers allegedly were overcharged by the Vanilla Representations appearing on the Breyers ice cream package.

> ### 2. The Price Premium Study Has Significant Methodological Pitfalls that Dr. Dennis Does Not Address

Because Dr. Dennis' new method of estimating a price premium is completely different from that advanced in his previous expert report, the Court may consider whether the methodological deficiencies of the new approach render it weightless as a scientific methodology. Dr. Toubia provides a guide to these deficiencies in his new rebuttal report (Toubia Rep. ¶¶ 61-66).

Dr. Dennis repeats the incorrect claim that if the hypothetical prices used in his price premium analysis happen to approximate real-world ice cream prices, then the study incorporates supply-side factors into the analysis. As Dr. Toubia explained previously and explains again in his rebuttal report, it simply does not. (Toubia Rep. ¶¶ 65-67.) That is doubly true here, where Dr. Dennis promises to ask consumers to choose between two ice cream cartons at the "actual historical price" paid for Breyers Natural Vanilla Ice Cream (Dennis Rep. ¶ 61), but the product he will be showing them, because of his extensive doctoring, will not be Breyers Natural Vanilla Ice Cream. It will not bear the Breyers brand, or any brand. It will not be "made with fresh cream, sugar and milk." It will not be partnered with American farmers to have 100% Grade A milk and cream. It will not be Rainforest Certified. What basis does Dr. Dennis have to assume that consumers would pay the "actual historical price" of Breyers Natural Vanilla Ice Cream for this implausible mystery dessert? None at all.

Even more divorced from reality are Dr. Dennis' proposed "discounts" for the mystery product without the Vanilla Representations. To determine how much less a manufacturer would have been forced to charge by the marketplace if it did not used challenged claims such as the

DEFENDANT UNILEVER UNITED STATES, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF LISA VIZCARRA'S SECOND MOTION FOR CLASS CERTIFICATION

16

1   Vanilla Representations, the researcher must have some understanding of what factors constrain

2   the manufacturer from raising or lowering its prices in response to a change in consumer

3   demand.  Dr. Dennis now writes that, for consumers who indicate that they would prefer an ice

4   cream with the Vanilla Representations to one without the Vanilla Representations at the same

5   price, he will offer "one of four varying discounted prices (from modest to extreme discounted

6   price points)" to determine what price the respondent would pay for an ice cream without the

7   Vanilla Representations.  Dennis Rep. ¶ 62.  He offers no basis whatsoever for assuming that

8   Unilever (or whoever makes his unbranded mystery ice cream) could or would offer any of these

9   discounted prices to consumers.  They are completely arbitrary.  In other words, his analysis

10  considers only the demand side, and not any measured or modeled market price premium that

11  would actually be charged.  His proposed research, by design, is incapable of estimating real-

12  world price premiums allegedly paid because of the Vanilla Representations.

13          Dr. Dennis' proposed methodology also, by design, inflates the importance of the Vanilla

14  Representations.  By asking respondents about only one set of claims, and even actually

15  eliminating most other claims from the packaging and therefore from consideration, Dr. Dennis

16  would make only one attribute of the ice cream salient to respondents.  It would be obvious to

17  respondents what attribute Dr. Dennis is interested in, which will activate demand effects.

18  Respondents will know exactly what the researcher wishes them to consider valuable about the

19  ice cream, since the ice cream's other attributes are not asked about and are deleted.  A major

20  benefit of the type of conjoint study previously proposed by Dr. Dennis is that, if properly

21  conducted, it disguises the researcher's focus of interest and does not inflate its importance, and

22  therefore does not inflate the value assigned to the attribute of interest.  As Dr. Toubia explains,

23  this bias is a well-known pitfall of contingent valuation analysis, which is the type of survey that

24  Dr. Dennis' non-standard approach most resembles.  (Toubia Rep. ¶ 63.)  Dr. Dennis offers no

25  indication that he even understands these research issues, let alone how he intends to address this

26  and several other known methodological challenges of this type of contingent valuation study.

27  (Toubia Rep. ¶¶ 63-64.)

28

DEFENDANT UNILEVER UNITED STATES, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF
LISA VIZCARRA'S SECOND MOTION FOR CLASS CERTIFICATION

17

## V.     CONCLUSION

The issues discussed here with respect to Dr. Dennis's survey are not mere methodological deficiencies that might weaken Plaintiff's proof of deception and materiality or her estimate of the price premium.  They are design choices that define what Dr. Dennis' surveys were intended to do and were *capable* (and incapable) of doing.  Notwithstanding what Dr. Dennis says about his surveys, they were not intended or designed to isolate and measure the impact of the Vanilla Representations, and were never capable of doing so.  Dr. Dennis intentionally made no effort to isolate the Vanilla Representations from most of the other likely influences on consumer beliefs and responses, despite the existence of widespread, standard methods for doing so and despite the Court's instructions at oral argument and in its decision denying Plaintiff's first motion for class certification.  The Court should consider that Dr. Dennis' surveys do not match his statements about them and do not align with Plaintiff's theory of liability.  Plaintiff has still not shown that its two key allegations, (1) that the Vanilla Representations, as they appear on the Product, communicate that all vanilla flavor in the Product comes from vanilla extract and (2) that whether all vanilla flavor in the Product comes from vanilla extract is material to consumers, can be proven on a class-wide basis.  Plaintiff has thus failed to address the fatal defect identified by the Court in her first motion for class certification.  Plaintiff's second motion should also be dismissed, this time without leave to renew.

It is now clear that Plaintiff will not commission a survey capable of isolating and testing the claims she challenges on a common class-wide basis, despite being given clear instructions on how to do so, because she knows that she cannot.  The method for isolating the marketing claims of interest from non-challenged marketing copy, consumers' preexisting beliefs, and survey bias and artifacts, using appropriate controls, is well established and straightforward to implement.  Plaintiff refuses to do so, and as a result, still has not tested either the deceptiveness or the materiality of the four challenged marketing elements.  She has provided no common proof of either of the key questions that form the basis of her motion for class certification.

For these reasons, the Court should deny Plaintiff's renewed motion for class certification without leave to further renew.

Dated: August 16, 2022

By:    */s/ August T. Horvath*
       August T. Horvath (*pro hac vice*)

FOLEY HOAG LLP
1301 Avenue of the Americas, 25th floor
New York, NY 10019

Christopher A. Nedeau
THE NEDEAU LAW FIRM
750 Battery Street, 7th floor
San Francisco, CA 94111

*Attorneys for Defendant Unilever United States, Inc.*

## PROOF OF SERVICE

I, August Horvath, hereby certify that on August 16, 2022, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court, Northern District of California, by using the CM/ECF system and electronically served to all counsel of record.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 16, 2022

       /s/ *August T. Horvath*
       August T. Horvath