United States District Court
Northern District of California

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

**LISA VIZCARRA,**

Plaintiff**,**

vs.

**UNILEVER UNITED STATES, INC.,**

Defendant**.**

CASE NO.  4:20-cv-02777 YGR

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION; DENYING MOTION TO STRIKE**

Re: Dkt. Nos. 71, 80

Plaintiff Lisa Vizcarra brings this proposed class action against defendant Unilever United States, Inc. ("Unilever") for claims arising out of Unilever's allegedly misleading labeling of Breyers Natural Vanilla Ice Cream as containing vanilla flavor derived exclusively from the vanilla plant.  Now before the Court are (1) Vizcarra's renewed motion for certification of a proposed class under Rules 23(b)(2) and 23(b)(3); and (2) Unilever's motion to strike the reply report of Vizcarra's survey expert, Dr. J. Michael Dennis ("Dennis Reply Report"), as well as portions of Vizcarra's reply brief in support of her motion for class certification that cite or rely upon the Dennis Reply Report.  Having carefully considered the pleadings, the record, the parties' briefs, and for the reasons set forth below, the Court **DENIES** the motion to strike and it **GRANTS** the motion for class certification.[1]

## I.    BACKGROUND

The following are allegations from the operative complaint, Docket No. 1.

Unilever sells Breyers Natural Vanilla Ice Cream ("the ice cream at issue") in cartons, the front label of which "said 'Natural Vanilla' in large, light green letters against a black background,

---

[1] The Court finds in its discretion that the motions are appropriate for resolution without oral argument.  *See* Civil L.R. 7-1(b).

United States District Court
Northern District of California

1    contained pictures of two vanilla beans and vanilla flowers and a scoop of the ice cream with

2    noticeable specks purporting to be actual vanilla beans." *Id.* ¶ 12.  Vizcarra allegedly relied on

3    these representations ("Vanilla Representations") when purchasing the ice cream at issue, which

4    led her to believe that the ice cream's vanilla flavor "would come only from the vanilla plant," *id.*,

5    even though some of the vanilla flavor is derived from non-vanilla plant sources, *id.* ¶ 27.

6    Vizcarra alleges that she would not have purchased or paid more for Breyers Natural Vanilla Ice

7    Cream had she realized that much, if not all, of its vanilla flavor comes from non-vanilla-plant

8    sources.  *Id.* ¶ 7.  Vizcarra would purchase Breyers Natural Vanilla Ice Cream again in the future

9    if the product "were remedied to reflect Defendant's labeling and marketing claims for it."

10   *Id.* ¶ 12.

11       In the complaint, Vizcarra asserts the following claims on her own behalf and on behalf of

12   a proposed class of consumers in California who purchased Breyers Natural Vanilla Ice Cream for

13   personal use from April 21, 2016, to the present: (1) claims under the unlawful, unfair, and

14   fraudulent prongs of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et*

15   *seq.*; (2) a claim for false and misleading advertising in violation of California's False Advertising

16   Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and (3) a claim for violations of the

17   Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*  Vizcarra seeks, among

18   other remedies, monetary damages pursuant to the CLRA; restitution pursuant to the UCL and

19   FAL; and an injunction pursuant to the UCL, FAL, and CLRA "to stop Unilever's false and

20   misleading marketing practices with regard to Breyers Natural Vanilla Ice Cream," *id.* ¶ 9.

21       On July 16, 2020, the Court denied Unilever's motion under Rule 12(b)(6) and

22   Rule 12(b)(1) to dismiss Vizcarra's claim for damages under the CLRA, her claim under the

23   unlawful prong of the UCL, and her request for injunctive relief.  Docket No. 30.

24       On October 27, 2021, the Court denied Unilever's motion to exclude under *Daubert v,*

25   *Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702 the opinions of

26   Vizcarra's survey expert, Dr. Dennis, which Vizcarra offered in support of her first motion for

27   class certification.  *See* Docket No. 66 at 5-10.  The opinions of Dr. Dennis that were at issue were

28   those set forth in his report of June 11, 2021, Docket No. 47-2.

United States District Court
Northern District of California

Also on October 27, 2021, the Court issued an order denying without prejudice Vizcarra's first motion to certify under Rules 23(b)(2) and 23(b)(3) a proposed class comprised of "[a]ll persons who purchased Breyers Natural Vanilla Ice Cream in the State of California at any time from April 21, 2016 through the final disposition of this Action."  Docket No. 66 at 10-11.  In that order, the Court found that Vizcarra had satisfied the numerosity, typicality, and adequacy-of-representation requirements of Rule 23(a); the requirement of Rule 23(b)(2) for certifying a class for injunctive relief; and the superiority requirement of Rule 23(b)(3) for certifying a class for damages.  The Court found, however, that Vizcarra had *not* satisfied the commonality requirement of Rule 23(a) or the predominance requirement of Rule 23(b)(3).

In summary, with respect to the commonality requirement of Rule 23(a), plaintiff had not shown that Dr. Dennis' opinions as set forth in his report of June 11, 2021, were capable of answering the common questions that are integral to plaintiff's claims under the UCL and FAL (i.e., likelihood of deception) and the CLRA (i.e., materiality).  Instead, Dr. Dennis' opinions were based on consumer-perception and materiality surveys that, undisputedly, did not specifically test the *effect of the Vanilla Representations* on consumers' beliefs and purchasing decisions even though the Vanilla Representations were allegedly the basis of the purchase decisions.  *See* Docket No. 66 at 15-16.  Indeed, Dr. Dennis admitted the same during his deposition.  *See, e.g.*, *id.* at 14, 23, 30.

With respect to predominance under Rule 23(b)(3), Vizcarra had not met her burden to show that damages were capable of being measured on a class-wide basis consistent with her theory of liability.  Again, the proposed damages model, designed by Dr. Dennis, did not purport to measure the price premium, if any, resulting from the Vanilla Representations.  Dr. Dennis admitted during his deposition that his proposed model would test, instead, the effect of an attribute he called "source of vanilla flavor," which Vizcarra had not shown had any specific connection to the Vanilla Representations.  *See id.* at 30-33.  Accordingly, the Court concluded that Vizcarra had not met the predominance requirement under Rule 23(b)(3).

Given the noted failures, the Court denied Vizcarra's certification motion without prejudice to Vizcarra filing a renewed motion for certification that cured the defects identified in

United States District Court
Northern District of California

the Court's October 27, 2021, order.  On November 17, 2021, the Court issued an order approving a stipulated schedule relating to Vizcarra's then-forthcoming renewed motion for class certification.  Docket No. 69.  This stipulated schedule required the following service of: (i) a "revised class certification expert report" on February 18, 2022; (ii) defendant's "expert report(s)" on May 18, 2022; and (iii) a renewed motion for class certification on June 17, 2022.  *See id.* at 2.  The stipulated schedule was silent as to whether either party could serve on the other any reply or sur-rebuttal expert reports.

The parties complied with the stipulated schedule.  On February 18, 2022, Vizcarra served on Unilever the Revised Expert Report of Dr. J. Michael Dennis, dated February 18, 2022 (hereinafter, "Dennis Revised Opening Report").  Sue Nam Decl. ¶ 7, Docket No. 84-1.

On May 18, 2022, Unilever served on Vizcarra a rebuttal report by its expert, Dr. Oliver Toubia ("Toubia Rebuttal Report").  *See* August Horvath Decl. ¶ 2, Docket No. 75.  The Toubia Rebuttal Report responds to the Dennis Revised Opening Report.

On June 17, 2022, Vizcarra filed a renewed motion for certification of a proposed class under Rules 23(b)(2) and 23(b)(3).  Docket No. 71.  This motion expressly relies on both the Dennis Revised Opening Report and the Dennis Reply Report, which Vizcarra served on Unilever on the same date, June 17, 2022.  *See* Sue Nam Decl. ¶ 7, Docket No. 84-1.  The Dennis Reply Report responds to the Toubia Rebuttal Report.  Counsel for Vizcarra, Sue Nam, declares that counsel for Unilever "never raised any issues about the [Dennis] Reply Report or the need for additional expert discovery" after Vizcarra served Unilever with the Dennis Reply Report on June 17, 2022.  *See id.*

On June 21, 2022, the parties filed a stipulated schedule for Unilever's opposition to Vizcarra's renewed motion for class certification, and for Vizcarra's reply in support of her class certification motion.  Docket No. 72.  Pursuant to the parties' stipulated schedule, Unilever's opposition would be due on August 16, 2022, and Vizcarra's reply would be due on September 6, 2022.  *Id.*  The stipulation was silent as to the need for additional expert discovery or as to any objections that Unilever might have had as to the Dennis Reply Report.  On June 27, 2022, the Court approved the parties' stipulated schedule.  Docket No. 73.

United States District Court
Northern District of California

1      Again, the parties complied.  On August 16, 2022, Unilever filed its opposition to

2  Vizcarra's renewed motion for class certification.  Docket No. 74.  Unilever's opposition does not

3  contain any objection to the Dennis Reply Report or any request for leave to conduct additional

4  expert discovery.  *See generally id.*  On September 6, 2022, Vizcarra filed her reply in support of

5  her renewed motion for class certification.[2]  Docket No. 79.

6      Six days later, on September 12, 2022, Unilever filed a motion to strike the Dennis Reply

7  Report and portions of Vizcarra's reply in support of her renewed motion for class certification

8  that cited or relied upon that report.  Docket No. 80.  On September 26, 2022, Vizcarra filed an

9  opposition to Unilever's motion to strike.  Docket No. 84.  The deadline for Unilever to file a

10  reply in support of its motion to strike was October 3, 2022.  As of the date of this order, Unilever

11  has not filed a reply.[3]

12  **II.    MOTION TO STRIKE**

13      As noted, about a month after it filed its opposition to Vizcarra's renewed motion for class

14  certification, Unilever filed a motion to strike the Dennis Reply Report and certain portions of

15  Vizcarra's reply brief in support of her renewed motion for class certification that refer to that

16  report.  Docket No. 80.  Unilever does not challenge the admissibility of Dr. Dennis' opinions

17  under *Daubert* or Federal Rule of Evidence 702.  Nor does Unilever argue that the Dennis Reply

18  Report contains new opinions or theories not previously disclosed.

19      Instead, Unilever argues that the Dennis Reply Report is improper and prejudices Unilever.

20  First, Unilever claims that because the November 2021 stipulated schedule did not expressly

21  authorize a reply expert report, plaintiff should have sought leave of court to serve one and did

22

23      [2] On August 30, 2022, the parties filed a stipulation requesting that the hearing on

24  Vizcarra's renewed motion for class certification, which was then-set for September 28, 2022, at
    2:30 p.m., be reset such that the hearing would take place by videoconference in lieu of taking

25  place in person.  Docket No. 77.  On August 30, 2022, the Court issued a text-only order denying
    the stipulation and vacating the September 28, 2022, hearing.  Docket No. 78.  The Court noted

26  that it would reset the hearing in the future "if necessary."  *Id.*

27      [3] On September 13, 2022, the Court vacated the hearing on Unilever's motion to strike,

28  which had been set for October 18, 2022.  Docket No. 83.  The Clerk's notice vacating the hearing
    stated that the Court would reset the hearing "if necessary."  *See id.*

United States District Court
Northern District of California

1  not.  Second, Unilever admits that it had the reply report by June 17, 2022, when Vizcarra filed her

2  renewed motion, but Unilever nevertheless argues prejudice because Unilever was "never afforded

3  the opportunity to respond" to that report "or to conduct further discovery relating to it."  *Id.* at 1-

4  2.  In the alternative, Unilever requests leave to file a sur-reply expert report that responds to the

5  Dennis Reply Report and a 10-page sur-reply brief on Vizcarra's renewed motion for class

6  certification.  *Id.* at 2.

7      Vizcarra opposes the motion to strike.  Docket No. 84.  Vizcarra contends that the Dennis

8  Reply Report does not contain any new opinions and simply responds, as it should, to

9  Dr. Toubia's criticisms of the Dennis Revised Opening Report.  Next, Vizcarra disputes the claim

10  of prejudice because Unilever could have responded to the Dennis Reply Report in its opposition

11  to her renewed class certification motion given its reliance on the reply report.  Further, Vizcarra

12  notes that Unilever inexplicably delayed in raising any concerns,[4] and, in any event, never sought

13  to depose Dr. Dennis since the service of his initial report in February 2022, undermining the

14  credibility of Unilever's assertion that it needed additional expert discovery.  Unilever did not file

15  a reply in support of its motion to strike.

16      In terms of procedural requirements, a party must disclose the identity of any expert

17  witness it intends to use at trial.  Fed. R. Civ. P. 26(a)(2)(A).  The party also must serve a written

18  report of a retained expert.  Fed. R. Civ. P. 26(a)(2)(B).  A rebuttal disclosure, namely one that is

19  "intended solely to contradict or rebut evidence on the same subject matter identified by" another

20  party's expert, must be made in the time or sequence that the Court orders, but in the absence of a

21  stipulation or a court order governing the timing of that disclosure, a rebuttal disclosure must be

22  made within thirty days after the other party's disclosure.  Fed. R. Civ. P. 26(a)(2)(D)(ii).  "The

23  rules do not, however, discuss whether a party may reply to rebuttal reports or whether a party

24  needs to seek leave to do so."  *Allstate Ins. Co. v. Shah*, No. 215CV01786APGDJA, 2021 WL

25  4555177, at *3 (D. Nev. Oct. 5, 2021).

26

27      [4] Vizcarra's counsel declares that, prior to Unilever's filing of its motion to strike the
Dennis Reply Report on September 12, 2022, Unilever never "raised any issues" with Vizcarra's

28  counsel or the Court as to the Dennis Reply Report or Unilever's purported need for additional
expert discovery.  *See* Sue Nam Decl. ¶ 7, Docket No. 84-1.

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). However, even where information was not properly disclosed, a district court has discretion to allow the information to be introduced at trial if the failure to properly disclose was "substantially justified or harmless." *Id.* (citing Fed. R. Civ. P. 37(c)(1)). A party moving for sanctions for a failure to properly disclose information has the initial burden to show that a discovery violation has occurred, and once that burden is satisfied, the burden shifts to the non-moving party, which must then show that its failure to properly disclose the information at issue was substantially justified or harmless. *See id.* at 1107.

Here, Unilever, as the moving party, has not met its burden to show a discovery violation in connection with the Dennis Reply Report. Unilever argues, without citation, that the Dennis Reply Report is "impermissibl[e]" based on its view of the stipulated schedule noted above. Given the context, the Court is persuaded by authorities, which Vizcarra cited and Unilever has not rebutted, that support the opposite conclusion. *See*, *e.g.*, *Allstate*, 2021 WL 4555177, at *3 (declining to strike reply expert report for failure to obtain leave of court prior to serving it because "[t]he rules [of civil procedure] do not . . . discuss whether a party may reply to rebuttal reports or whether a party needs to seek leave to do so"). This is sufficient to deny Unilever's motion to strike.

Even assuming, however, that Unilever had met its burden to show a discovery violation, striking the Dennis Reply Report would not be warranted because Vizcarra has shown that Unilever suffered no prejudice by it. Vizcarra contends, and Unilever does not dispute, that the Dennis Reply Report is limited to responding to the Toubia Rebuttal Report and does not contain any new opinions. The absence of any new opinions in the Dennis Reply Report supports a finding that Unilever was not prejudiced by it and counsels against striking it. *See In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2022 WL 1604753, at *8 (N.D. Cal. Jan. 25, 2022) (denying motion to exclude reply expert report on the basis that the "reply report does not contain

1    new theories, opinions, or evidence").  Further, Vizcarra has shown that Unilever had two months

2    to respond to the report or to conduct further expert discovery.[5]

3         Unilever ignores the import of those two months and has not even attempted to show they

4    were insufficient for it to conduct further expert discovery and respond to the Dennis Reply

5    Report.  Additionally, Unilever could have requested additional time and another modification to

6    the schedule or alerted the Court of its objections when it was served with the reply report.  It did

7    not.  *See* Sue Nam Decl. ¶ 7, Docket No. 84-1.  Instead, Unilever inexplicably delayed and filed a

8    motion to strike.  The Court finds that the two months *were* sufficient not to create any prejudice.

9    In any event, Unilever's unexplained delay in seeking relief counsels against granting its belated

10   motion to strike.

11        In light of the foregoing, the Court **DENIES** Unilever's motion to strike.  It also **DENIES**

12   Unilever's alternative request for leave to file a sur-rebuttal report and a sur-reply, because

13   Unilever could have responded to the Dennis Reply Report in its opposition to Vizcarra's renewed

14   motion for class certification, which it filed on August 16, 2022.

15   **III.    MOTION FOR CLASS CERTIFICATION**

16        **A.    Legal Standard**

17        A class action is "an exception to the usual rule that litigation is conducted by and on

18   behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)

19   (quotations omitted).  "Before certifying a class, the trial court must conduct a rigorous analysis to

20   determine whether the party seeking certification has met the prerequisites of Rule 23."  *Mazza v.*

21   *Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012), *overruled on other grounds in*

22   *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir.

23   2022) (en banc).  The rigorous analysis that a court must conduct requires "judging the

24   persuasiveness of the evidence presented" for and against certification and "resolv[ing] any factual

25

26        [5] The two months in question began on the date on which Vizcarra served the Dennis
27   Reply Report on Unilever and discussed the same in her opening brief in support of her renewed
     class certification motion (June 17, 2022), and ended on the date on which Unilever's opposition
28   to Vizcarra's renewed class certification motion was due pursuant to the parties' stipulated
     briefing schedule (August 16, 2022).

1    disputes necessary to determine whether" the requirements of Rule 23 have been satisfied.  *Ellis v.*

2    *Costco Wholesale Corp.*, 657 F.3d 970, 982-83 (9th Cir. 2011).

3         The party moving for certification first must show that the four requirements of Rule 23(a)

4    are met.  Specifically, Rule 23(a) requires a showing that: (1) the class is so numerous that joinder

5    of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

6    claims or defenses of the representative parties are typical of the claims or defenses of the class;

7    and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed.

8    R. Civ. P. 23(a).

9         The party moving for certification must then show that the class can be certified based on

10   at least one of the grounds in Rule 23(b).  *See* Fed. R. Civ. P. 23(b).  As relevant here, certification

11   under Rule 23(b)(2) is appropriate only if "the party opposing the class has acted or refused to act

12   on grounds that apply generally to the class, so that final injunctive relief or corresponding

13   declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

14   Certification under Rule 23(b)(3) is appropriate only if "the questions of law or fact common to

15   class members predominate over any questions affecting only individual members" and "a class

16   action is superior to other available methods for fairly and efficiently adjudicating the

17   controversy."  Fed. R. Civ. P. 23(b)(3).

18        A party moving for certification must establish "that the prerequisites of Rule 23 are

19   satisfied by a preponderance of the evidence."  *Olean*, 31 F.4th at 665.  "In carrying the burden of

20   proving facts necessary for certifying a class . . . plaintiffs may use any admissible evidence."  *Id.*

21   (citation omitted).

22        **B.    Discussion**

23        Vizcarra moves for class certification under Rules 23(b)(2) and 23(b)(3) based on her

24   claims under the UCL, FAL, and CLRA.  She seeks to certify a class of:

25              All persons residing in California who have purchased Breyers
             Natural Vanilla Ice Cream, for their own use and not for resale,
26              since April 21, 2016.[6]

27

28   _____

          [6] In her prior motion for class certification, Vizcarra worded the definition of the class she

9

Docket No. 71 at i.

Vizcarra requests that the Court reaffirm its prior findings, as set forth in its October 27, 2021 order, that she has satisfied Rule 23(a)'s requirements of numerosity, typicality, and adequacy of representation; Rule 23(b)(2)'s requirements for certifying a class for injunctive relief; and Rule 23(b)(3)'s superiority requirement.  Because Unilever does not oppose Vizcarra's request, the Court incorporates those prior findings, as described in more detail below.

### 1.    Rule 23(a)

#### a.    Numerosity

The requirement of numerosity is that the class be so numerous that joinder of all members individually would be impracticable.  Fed. R. Civ. P. 23(a)(1).  "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members."  *See Krzesniak v. Cendant Corp.*, No. 05–05156, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007).

In its October 27, 2021 order, the Court found that Vizcarra had satisfied this requirement because she showed, and Unilever did not dispute, that Unilever sold tens of thousands of units of the ice cream at issue in California during the Class Period.  *See* Docket No. 66 at 11.  This requirement is, therefore, met.

---

sought to certify under Rules 23(b)(2) and 23(b)(3) differently.  She proffered a class comprised of "[a]ll persons who purchased Breyers Natural Vanilla Ice Cream in the State of California at any time from April 21, 2016 through the final disposition of this Action."  Docket No. 66 at 11. Unilever has made no objection to Vizcarra's reformulation, nor has it argued that the modification impacts any of the Court's prior holdings, as set forth in its order of October 27, 2021.  Accordingly, the Court finds that Vizcarra's modification of the proposed class definition does not preclude the Court from reaffirming and incorporating into this order its prior findings that Vizcarra has met the numerosity, typicality, and adequacy-of-representation requirements of Rule 23(a); the superiority requirement of Rule 23(b)(3); and the requirements for certification of an injunctive-relief class under Rule 23(b)(2).

Further, and as before, excluded from the proposed class are: "governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff."  *Id.*

United States District Court
Northern District of California

b.      **Commonality**

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  To satisfy this requirement, the common question must be of "such nature that it is capable of class-wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[F]or purposes of Rule 23(a)(2)[,] even a single common question will do." *Id.* at 359 (internal quotations and brackets omitted).  The requirements of Rule 23(a)(2) have "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981 (citation omitted).

"[T]he court must make a 'rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the [class-wide] evidence to prove' the common question in one stroke." *Olean*, 31 F.4th at 666 (citation omitted).  "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Id.* at 666-67.  This analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 667 (citations and internal quotation marks omitted).  Where that is the case, the "[m]erits questions may be considered [only] to the extent [ ] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied[.]" *Id.*

In determining whether a common question is capable of class-wide resolution, a district court may not conclude that the commonality requirement is met merely because the expert evidence submitted in support of the commonality requirement is admissible.  *See Ellis*, 657 F.3d at 984 (holding that a district court must engage in a "rigorous analysis" of commonality, rather than "merely conclud[ing] that, because . . . evidence was admissible, a finding of commonality was appropriate").  This is because "[n]ot all expert evidence is capable of resolving a class-wide issue in one stroke." *Olean*, 31 F.4th at 666 n.9.  "Courts have frequently found that expert evidence, while otherwise admissible under *Daubert*, was inadequate to satisfy the prerequisites of Rule 23," such as where "the expert evidence was inadequate to prove an element of the claim for

11

the entire class" or where the expert evidence was "inconsistent with the plaintiffs' theory of liability[.]" *Id.* (citations omitted).

The Court noted above the basis of Vizcarra's initial failure to show commonality given Dr. Dennis' original report and concessions at deposition. *See supra* Section I; *see also* Docket No. 66 at 15-24, 30.

In her renewed motion for certification, Vizcarra argues that Dr. Dennis adjusted his consumer-perception and materiality surveys so that, consistent with her theory of liability, they now specifically test the effect of the Vanilla Representations on consumers' perceptions and purchasing decisions. Based on the results of the revised surveys, Dr. Dennis has concluded that (1) a reasonable consumer in California perceives the Vanilla Representations to convey that all of the vanilla flavor comes from vanilla extract made from the vanilla plant, which answers the common question of likelihood of deception that is integral to her claims under the UCL and FAL; and (2) that the Vanilla Representations were material to the purchasing decisions of a reasonable consumer in California, which answers the common question of materiality that is integral to her claim under the CLRA. *See* Dennis Revised Opening Report ¶¶ 53-54. Vizcarra submits that Dr. Dennis' opinions are now capable of answering the common questions integral to her claims and satisfy the commonality requirement of Rule 23(a).

Unilever disagrees, arguing that Dr. Dennis' revised surveys and resulting opinions still are not capable of answering the common questions of whether the Vanilla Representations were either (i) likely to deceive a reasonable consumer or (ii) were material to a reasonable consumer. In particular, Unilever seems to claim that the Court dictated an approach in its October 27, 2021 order, which plaintiff did not follow. Docket No. 74 at 1. According to Unilever, the Court required Dr. Dennis to test "a stimulus that removed the Vanilla Representations but was otherwise identical to the package of the ice cream at issue;" "[t]o do this, [Dr. Dennis] needed to create a control group, to which half of his subjects would be randomly assigned, who would see and react only to this new stimulus described by the Court." *Id.* Unilever contends that Dr. Dennis failed to employ the stimulus and control group just described, in contravention of the "Court's directive," and that this failure renders Dr. Dennis' revised surveys flawed in a way that

United States District Court
Northern District of California

"warrants rejection of the surveys as providing any useful evidence." *Id.* at 6.  Unilever also argues that Dr. Dennis' revised surveys suffer from other deficiencies that prevent them from reliably measuring the effect of the Vanilla Representations on consumers' beliefs and purchasing decisions, such as by employing questions that could lead to bias or employing stimuli depicting product packaging that does not reflect the packaging that consumers experience in the real world when purchasing the ice cream at issue.

The Court disagrees with Unilever's view of this Court's October 27, 2021 order.  There, the Court found, based on Dr. Dennis' admissions during his deposition, and the fact that Dr. Dennis' admissions were consistent with the opinions of Unilever's expert, Dr. Toubia, that Dr. Dennis' prior surveys did not test the effect of the Vanilla Representations on consumers' perceptions and purchasing decisions.  *See* Docket No. 66 at 17-25.  That the Court credited certain opinions of Dr. Toubia does not mean that the Court endorsed or required any particular method for testing that effect.  Accordingly, Unilever's argument fails to persuade.

Below, the Court examines the evidence presented by both sides to determine whether Vizcarra has met her burden to show by a preponderance of the evidence that Dr. Dennis' updated surveys and opinions are capable of answering the questions of likelihood of deception and materiality on a class-wide basis.  For the reasons set forth below, the Court concludes that Vizcarra has met that burden and that the commonality requirement is, therefore, satisfied with respect to her claims under the UCL, FAL, and CLRA.

### i.     UCL and FAL and Likelihood of Deception

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17500.  The language of these statutes is "'broad' and 'sweeping' to 'protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'"  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011)).

"[T]o state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary *only* to show that members of the public are

United States District Court
Northern District of California

likely to be deceived."[7] *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), *abrogated on other grounds by Comcast*, 133 S. Ct. at 1426 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)) (emphasis added). This standard is governed by whether a "reasonable consumer" is likely to be deceived. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer.") (citation omitted). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (emphasis added); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (relying on *Lavie* to hold that the reasonable consumer standard for likelihood of deception "requires more than a mere possibility that [the alleged misrepresentation] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner'" and instead requires a probability "'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled'") (quoting *Lavie*, 105 Cal. App. 4th at 508).

Because the UCL and FAL limit available remedies to injunctive relief, including restitution, a plaintiff suing under the UCL or FAL need not show actual falsity of the alleged misrepresentations or reliance by the plaintiff. *See Pulaski*, 802 F.3d at 986 (holding that the inquiry for a UCL and FAL claim does not require proof of deception, reliance, and injury). This contrasts with a common law claim for damages based on fraud, for which actual falsity, reliance, and injury are required elements. *Id.* That the UCL and FAL do not require a showing of actual falsity or reliance by the plaintiff is important in the class certification context, because "concerns

---

[7] This standard is generally applied in the context of UCL claims brought under the fraudulent prong. This is the only standard that Vizcarra cited in her briefs as being relevant to the certification of her UCL claims. Accordingly, the Court proceeds under the assumption that Vizcarra seeks certification only of her fraudulent-prong claim under the UCL.

United States District Court
Northern District of California

about [individual] reliance and causation" that a defendant may raise at the class certification stage

do not defeat class certification where the members of the proposed class were exposed[8] to the

same allegedly misleading representations and there is evidence that it is probable that a

significant portion of the viewing public could be misled by the alleged misrepresentations. *See*

*Stearns*, 655 F.3d at 1020.

   In her renewed motion for class certification, Vizcarra argues that the question of whether

the Vanilla Representations were likely to deceive a reasonable consumer can be resolved with

common proof, namely the opinions of Dr. Dennis. *See* Docket No. 71 at 3-5. Dr. Dennis

conducted a revised "consumer perception" survey, which he designed with the purpose of testing

the effect of the Vanilla Representations on the perceptions of California purchasers of vanilla-

flavored ice cream in the previous twelve months. Dennis Revised Opening Report ¶¶ 6, 35, 42-

43. The revised perception survey involved presenting to respondents an un-branded ice cream

product that displayed only the Vanilla Representations on the front label of the product. *Id.* ¶ 28.

78.7% of respondents reported that they believed that "all of the vanilla flavor" comes from the

vanilla plant; 16.6% perceived that "not all of the vanilla flavor" comes from the vanilla plant; and

4.7% were not sure. *Id.* ¶¶ 44-45. Dr. Dennis concluded based on these results that a reasonable

consumer in California perceives the Vanilla Representations to convey that all of the vanilla

flavor comes from vanilla extract (from the vanilla plant). *Id.* ¶ 53.

   Unilever attacks Dr. Dennis' opinions on the ground that the revised perception survey

does not employ an "appropriate control," namely the one that Unilever contends this Court

directed Dr. Dennis to use in its order of October 27, 2021. Docket No. 74 at 6. According to

Unilever, that control would have involved "creat[ing] a version of the Product's packaging that

omitted only the Vanilla Representations, and [testing] this version on a separate, randomly

---

[8] In its order of October 27, 2021, the Court found that Vizcarra had shown, and Unilever did not dispute, that all members of the proposed class were exposed to the Vanilla Representations, because "Defendant labelled each and every Product with the same Vanilla Representations." Docket No. 66 at 11. Unilever has not made any arguments in its opposition to the present renewed motion for certification as to the Court's prior finding as to exposure. Accordingly, the Court incorporates that finding herein.

assigned group of subjects who would be asked the same questions as were asked to the subjects who view the actual Product." *Id.* at 8.  Unilever argues that, because Dr. Dennis did not use that control, Dr. Dennis' survey cannot distinguish the effect of the Vanilla Representations on survey respondents' perceptions from the effect of the survey respondents' pre-existing beliefs or biases, including about the Breyers brand and vanilla ice cream in general.  Unilever also argues that Dr. Dennis' revised perception survey suffers from other flaws that prevent it from accurately measuring the effect of the Vanilla Representations on survey respondents, including the use of biased and leading questions, and the use of images of the package of the ice cream that differ from what consumers experience in the marketplace.  *Id.* at 8-9.

Vizcarra disagrees and posits that, in essence, Unilever really just argues that "there is a better method for doing" the survey.  Docket No. 79 at 3.  Vizcarra argues that the existence of a dispute as to which expert's method is better is not a proper basis for finding that the commonality requirement of Rule 23(a) is not met via Dr. Dennis' opinions.  *Id.*  Vizcarra contends that Dr. Dennis explained in his reports that his revised perception survey (including the stimuli he used) were designed so that the survey would measure the effect of the Vanilla Representations directly while avoiding the risk that the results of the study would be "contaminated by pre-existing beliefs" of respondents or other biases, including pre-existing beliefs associated with the Breyers brand.  Dennis Revised Opening Report ¶ 28; Dennis Reply Report ¶¶ 36-40.  Vizcarra contends that, as a result of that design choice, and contrary to what Unilever contends, Dr. Dennis' revised perception survey *is* capable of distinguishing the effect of the Vanilla Representations on respondents' perceptions from the possible confounding effects of the respondents' pre-existing beliefs and other biases.

Where, as here, there is conflicting evidence presented for and against a requirement for class certification, under Ninth Circuit law, the Court must "resolve any factual disputes necessary to determine whether" the requirements of Rule 23 have been satisfied.  *See Ellis*, 657 F.3d at 982-83.  To satisfy the commonality requirement, Vizcarra must show by a preponderance of the evidence that Dr. Dennis' opinions are *capable* of answering the question of whether a reasonable

consumer is likely to be deceived by the Vanilla Representations.  The Court finds that Vizcarra has met that burden.

Unlike his prior perception survey, Dr. Dennis' revised perception survey *does* test the effect of the Vanilla Representations on consumers' perceptions, consistent with Vizcarra's theory of liability.  Contrary to Unilever's contentions and the opinions of its expert, Dr. Toubia, Dr. Dennis' revised survey does so with a sufficient degree of reliability such that a reasonable factfinder at trial could, based on Dr. Dennis' opinions, find that a reasonable consumer is likely to be deceived by the Vanilla Representations.  Unilever's criticisms boil down to a disagreement as to Dr. Dennis' survey design choices, which go to the weight to be accorded to Dr. Dennis' survey results and opinions when determining the merits of Vizcarra's claims at trial.  That merits determination is not one for this Court at the class certification stage.  *See In re Packaged Seafood Prod. Antitrust Litig.*, 332 F.R.D. 308, 328 (S.D. Cal. 2019) ("Defendant's criticisms are serious and could be persuasive to a finder of fact.  But determining which expert is correct is beyond the scope of this Motion [for class certification]."), *aff'd sub nom. Olean*, 31 F.4th at 651; *see also Olean*, 31 F.4th at 666-67 ("In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial.").

According to Unilever and its expert, the purported failure to use a "proper" control render the revised survey incapable of "providing any useful evidence" as to the effect of the Vanilla Representations.  Docket No. 74 at 6-7.  Moreover, Unilever argues that the failure to employ "the *only* design"[9] that could isolate the impact of the Vanilla Representations means that the revised perception survey's results cannot be reliably attributed to the Vanilla Representations, because

---

[9] Unilever's arguments with respect to the existence of "only" one survey design or control that could have reliably measured the effect of the Vanilla Representations appears to be a reference to its arguments elsewhere in its opposition that this Court endorsed or required a specific method for testing that effect in its order of October 27, 2021.  As discussed above, the Court at no point has endorsed or required any particular method for testing the effect of the Vanilla Representations on consumer perceptions or purchasing decisions.

United States District Court
Northern District of California

United States District Court
Northern District of California

such results could be driven by respondents' pre-existing beliefs, potential biases, or other confounding factors. *See id.* at 8 (emphasis in the original). The Court disagrees. It is not persuaded that Dr. Dennis' survey design choices render the results of his revised perception survey, or his opinions that are predicated on those results, incapable of answering the question of whether a reasonable consumer is likely to be deceived by the Vanilla Representations. Dr. Dennis explained in his Revised Opening Report that he designed the revised perception survey by drawing on his more than twenty years of experience in survey research and design; that he designed the revised survey and the stimulus he used in a manner that would minimize the effect of potential confounding factors, such as respondents' pre-existing beliefs and biases[10]; and that he employed rigorous quality control and quality assurance measures to ensure that the revised survey measured accurately the effect of the Vanilla Representations. *See, e.g.*, Dennis Revised Opening Report ¶¶ 50, 28-29. Based on Dr. Dennis' explanations for his methodology and survey design and the undisputed fact that he has decades of experience in survey research and design, the Court finds that the revised survey and its results, as well as Dr. Dennis' opinions based thereon, are sufficiently reliable and could sustain a reasonable jury finding that a reasonable consumer in California is likely to be deceived by the Vanilla Representations. Unilever has cited no authority that compels a different conclusion.[11]

---

[10] For example, Dr. Dennis chose to remove the "Breyers" branding from the stimulus he used for the revised perception survey. Dennis Revised Opening Report ¶ 28. Dr. Dennis explained that removing the "Breyers" branding was necessary to isolate the effect of the Vanilla Representations on consumers' perceptions and to prevent respondents' pre-existing perceptions about Breyers Natural Vanilla products from affecting the results of the survey. *See id.* ¶¶ 28-29.

[11] The authorities that Unilever cites are distinguishable. *See* Docket No. 74 at 6. In *CytoSport, Inc. v. Vital Pharms., Inc.*, 894 F. Supp. 2d 1285, 1291 (E.D. Cal. 2012), the admissibility under Federal Rule of Evidence 702 of a survey expert's opinions was at issue and the court found that the proponent of the opinions did not meet its burden to show that they were admissible. Here, Unilever does not argue that Dr. Dennis' opinions are inadmissible under Rule 702. In *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 351-52 (S.D.N.Y. 2008), the court, while acting as the factfinder in the context of a motion for a preliminary injunction with respect to allegedly false advertisements, declined to give any weight to the results of a survey in the context of determining whether certain advertisements were likely to mislead consumers, and it did so on the basis that the survey did not employ a control group and the results of the survey could not be distinguished from the effect of preexisting beliefs. Here, as discussed above, the determination of how much weight to accord to Dr. Dennis' opinions in the context of determining the merits of Vizcarra's claims is for the factfinder *at trial*.

United States District Court
Northern District of California

1     Accordingly, the Court finds that Dr. Dennis' opinions are capable of answering the

2  common question of likelihood of deception on a class-wide basis and that the commonality

3  requirement of Rule 23(a) is, therefore, met as to Vizcarra's claims under the UCL and FAL.  *See*

4  *Olean*, 31 F.4th at 667 (holding that "a district court may conclude that the plaintiffs have carried

5  their burden of satisfying the [Rule 23] requirements as to that common question of law or fact" if

6  it finds that "each class member could have relied on [the plaintiffs' evidence] to establish liability

7  if he or she had brought an individual action," and the evidence "could have sustained a

8  reasonable jury finding" on the merits of a common question) (citation and internal quotation

9  marks omitted).

10           **ii.        CLRA and Materiality**

11     The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

12  practices."  Cal. Civ. Code § 1770.  The requirements for stating a claim under the CLRA differ

13  from those for a claim under the UCL and FAL because a CLRA plaintiff can obtain damages, as

14  well as equitable relief and other remedies.  Cal. Civ. Code § 1780(a).  A CLRA plaintiff must

15  "show not only that a defendant's conduct was deceptive but that the deception caused them

16  harm."  *Stearns,* 655 F.3d at 1022 (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129

17  (2009)).  In other words, "[a] CLRA claim warrants an analysis different from a UCL [and FAL]

18  claim because the CLRA requires each class member to have an actual injury caused by the

19  unlawful practice."  *Id.* (citation omitted).

20     That said, "[c]ausation, on a classwide basis, may be established by materiality.  If the trial

21  court finds that material misrepresentations have been made *to the entire class*, an inference of

22  reliance arises as to the class."  *Id.* (quoting *In re Vioxx Class Cases*, 180 Cal. 4th at 129)

23  (emphasis added).  "A misrepresentation is judged to be 'material' if a reasonable [person] would

24  attach importance to its existence or nonexistence in determining his choice of action in the

25  transaction in question."  *Kwikset*, 51 Cal. 4th at 332 (citation omitted).  "Whether a

26  misrepresentation is sufficiently material to allow for an inference of reliance is generally a

27  question of fact[.]"  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020) (citation

28  omitted).  "If the misrepresentation or omission is not material as to all class members, the issue of

United States District Court
Northern District of California

1  reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns*,

2  655 F.3d at 1022-23 (citing *In re Vioxx Class Cases*, 180 Cal. App. at 129).

3       The parties dispute whether materiality can be shown.  As discussed above, where there is

4  conflicting evidence presented for and against a requirement for class certification, under Ninth

5  Circuit law, the Court must "resolve any factual disputes necessary to determine whether" the

6  requirements of Rule 23 have been satisfied.  *See Ellis*, 657 F.3d at 982-83.  To satisfy the

7  commonality requirement, Vizcarra must show by a preponderance of the evidence that

8  Dr. Dennis' opinions are *capable* of answering the question of whether the Vanilla

9  Representations are material to a reasonable consumer's purchasing decisions.  For the reasons

10  below, the Court finds that Vizcarra has met that burden.

11       The analysis here largely mirrors that referenced above:

12       Vizcarra relies on the opinions of Dr. Dennis to prove that the Vanilla Representations

13  were material to the purchasing decision of a reasonable consumer.  *See* Docket No. 71 at 5-7.

14  Dr. Dennis conducted a revised materiality survey that he designed with the purpose of testing the

15  effect of the Vanilla Representations on the purchasing decisions of California purchasers of

16  vanilla-flavored ice cream during the prior twelve months.  Dennis Revised Opening Report ¶¶ 33,

17  42-43.  The revised survey measures the extent to which a product having the Vanilla

18  Representations is preferred over the product not having the Vanilla Representations in the context

19  of purchasing behavior.  *Id.* ¶ 47 n.9.  The revised materiality survey involved presenting to

20  respondents images of two ice cream products for purchase, with the only difference between the

21  two being that one of the products displayed the Vanilla Representations and the other product did

22  not.  *Id.* ¶¶ 33-34.  Respondents were then asked, in a referendum format, which of the two

23  products they would purchase.  *Id.*  88.8% of respondents indicated that they would prefer to

24  purchase the product that had the Vanilla Representations; and 11.2% indicated that they would

25  prefer to purchase the product that did not have the Vanilla Representations.  *Id.* ¶ 47.  Dr. Dennis

26  concluded based on these results that the Vanilla Representations are material to the purchasing

27  decisions of a reasonable consumer in California.  *Id.* ¶ 54.

28

1       By contrast, Unilever again argues that Dr. Dennis' opinions are insufficient because (i)

2   Dr. Dennis did not employ a control that Dr. Toubia endorsed in his prior report and that the Court

3   discussed in its order of October 27, 2021,[12] and (ii) the stimuli were allegedly "doctor[ed]"

4   extensively such that they did not look like the actual package of the ice cream at issue.  Docket

5   No. 74 at 10-11.  As a result, Unilever submits that the survey does not test consumers' decisions

6   to purchase the ice cream at issue in this litigation, but rather an ice cream product that does not

7   exist in the real world.  *Id.*

8       As noted, Dr. Dennis' revised materiality survey and related opinions do not suffer from

9   the same flaws previously discussed.  Vizcarra has shown that Dr. Dennis' revised materiality

10   survey *does* test and does speak to the effect of the Vanilla Representations on consumers'

11   purchasing decisions, consistent with Vizcarra's theory of liability, and that it does so with a

12   sufficient degree of reliability such that a reasonable factfinder at trial could find, based on Dr.

13   Dennis' opinions, that the Vanilla Representations were material to a reasonable consumer's

14   purchasing decisions.  Once again, Unilever's criticisms of Dr. Dennis' revised materiality survey

15   boil down to a disagreement as to Dr. Dennis' survey design choices, but those go to the weight

16   that the factfinder at trial would accord to Dr. Dennis' survey results and opinions derived

17   therefrom when determining the merits of Vizcarra's claims.  That is not a task for this Court at

18   the class certification stage.  *See In re Packaged Seafood*, 332 F.R.D. at 328; *Olean*, 31 F.4th at

19   666-67.

20       The Court is not persuaded that Dr. Dennis' survey design choices render the results of his

21   revised materiality survey, or his opinions that are based on those results, incapable of answering

22   the question of whether the Vanilla Representations are material to a reasonable consumer.  As

23   discussed above, Dr. Dennis explained in his reports that his design of the revised materiality

24   survey (including the stimuli he used) reflects his more than two decades of experience in survey

25   research and design and that he designed the survey and stimuli to measure the effect of the

26

27       [12] More specifically, one that involved "test[ing] a stimulus that removed the Vanilla
28   Representations but was otherwise identical to the package of the ice cream at issue," Docket No.
    74 at 11-12.

United States District Court
Northern District of California

Vanilla Representations while minimizing the effect of potential confounding factors, such as respondents' pre-existing beliefs and biases.[13]  Dennis Revised Opening Report ¶ 50.  Dr. Dennis also explained that he employed rigorous quality control and quality assurance measures to ensure that the revised survey measured accurately the effect of the Vanilla Representations.  *See, e.g.*, *id.* ¶¶ 50-51.  The Court is persuaded, in light of the above, that the revised materiality survey and its results, as well as Dr. Dennis' opinions based thereon, are sufficiently reliable and could sustain a reasonable jury finding that the Vanilla Representations are material to the purchasing decisions of a reasonable consumer.  Unilever has cited no authority that compels a different conclusion.  *See* Docket No. 74 at 10-12 (citing no case or other authority in the section of opposition brief discussing Dr. Dennis' revised materiality survey that would support a finding that Dr. Dennis' opinions on materiality do not satisfy Rule 23(a)).

Because Dr. Dennis' opinions are capable of answering the common question of materiality on a class-wide basis, the commonality requirement of Rule 23(a) is met as to Vizcarra's claims under the CLRA.  *See Olean*, 31 F.4th at 667.

### c.     Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Stearns*, 655 F.3d at 1019.  "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (citation omitted).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citation and quotation marks

---

[13] The design choices included modifying the packaging of the ice cream products used as stimuli to remove certain elements that could contaminate the survey results with respondents' pre-existing beliefs, such as the Breyers branding.  *See, e.g.*, Dennis Revised Opening Report ¶ 33.

omitted).  Typicality may be lacking "if 'there is a danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it.'"  *Id.* (citation omitted).

In its October 27, 2021 order, the Court found that Vizcarra had satisfied the typicality requirement because she showed, and Unilever did not dispute, that:

> She, like all class members: purchased the Product during the
> Class Period that Defendant had labeled with the Vanilla
> Representations; believed based on the Vanilla Representations
> that all of the vanilla flavor of the Product was from the vanilla
> plant; paid a price premium based on the Vanilla Representations;
> and seeks damages, restitution, and injunctive relief.

Docket No. 66 at 24.  The element is, therefore, met.

### d.  Adequacy of Representation

The requirement of adequate representation requires a showing that the representative parties "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). This requires inquiry into whether the plaintiff and its counsel (i) have any conflicts of interest with other class members and (ii) will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

In its October 27, 2021 order, the Court found that Vizcarra had satisfied the adequacy-of-representation requirement because Vizcarra met her burden to show that she and her counsel, Reese LLP and Sheehan & Associates, P.C., will prosecute the action vigorously on behalf of the proposed class members, will protect the interest of the class, and do not have any conflicts of interest with the class.  *See* Docket No. 66 at 24-25.  This element is met.

### 2.  Rule 23(b)

### a.  Rule 23(b)(2)

Rule 23(b)(2) permits certification of a class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."  *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In its order of October 27, 2021, the Court found that Vizcarra had met her burden to

2    satisfy the requirements for certifying an injunctive relief class under Rule 23(b)(2).  Vizcarra

3    showed, and Unilever did not dispute, that the remedy she seeks is "class-wide, homogenous

4    injunctive relief, namely, changes to the Product's label to cure the deception."  Docket No. 66 at

5    25-26.  Further, she showed that the injunctive relief that she seeks would apply to the proposed

6    class as a whole and would be appropriate as a result of alleged uniform conduct by Unilever

7    affecting the entire proposed class.  *Id.*  This requirement is met.

8                                    **b.      Rule 23(b)(3)**

9    Under Rule 23(b)(3), a plaintiff must show that "the questions of law or fact common to

10   class members predominate over any questions affecting only individual members, and that a class

11   action is superior to other available methods for fairly and efficiently adjudicating the

12   controversy."  Fed. R. Civ. P. 23(b)(3).

13                                  **i.      Predominance**

14   Rule 23(b)(3) requires the Court to determine whether "questions of law or fact common to

15   class members predominate over any questions affecting only individual members."  Fed. R. Civ.

16   P. 23(b)(3).  "An individual question is one where 'members of a proposed class will need to

17   present evidence that varies from member to member,' while a common question is one where 'the

18   same evidence will suffice for each member to make a prima facie showing [or] the issue is

19   susceptible to generalized, class-wide proof.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442,

20   453 (2016) (citation omitted).  The "predominance inquiry asks whether the common,

21   aggregation-enabling, issues in the case are more prevalent or important than the non-common,

22   aggregation-defeating, individual issues."  *Id.* (quoting 2 W. Rubenstein, Newberg on Class

23   Actions § 4:49 (5th ed. 2012)).  "When 'one or more of the central issues in the action are

24   common to the class and can be said to predominate, the action may be considered proper under

25   Rule 23(b)(3) even though other important matters will have to be tried separately, such as

26   damages or some affirmative defenses peculiar to some individual class members.'"  *Id.* (quoting

27   7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005)).

28

                                              24

United States District Court
Northern District of California

1    "Considering whether 'questions of law or fact common to class members predominate'

2    begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc.,*

3    *v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

4                  **a)**        **Damages**

5    As noted above, plaintiff brings claims under the UCL, FAL, and CLRA and seeks

6    certification as to these claims under Rule 23(b)(3) because she seeks damages pursuant to the

7    CLRA and restitution pursuant to the UCL and FAL on behalf of the proposed class.  The

8    damages and restitution owed to a plaintiff under the CLRA, and UCL and FAL, respectively, are

9    based on the difference between the price the consumer paid and the price a consumer would have

10   been willing to pay for the product had it been labeled accurately.  *Pulaski*, 802 F.3d at 988-89.  In

11   other words, "the focus is on the difference between what was paid and what a reasonable

12   consumer would have paid at the time of purchase without the fraudulent or omitted information."

13   *Id.* (citing *Kwikset*, 51 Cal. App. 4th at 329).

14   A plaintiff seeking certification under Rule 23(b)(3) must show that damages are capable

15   of measurement on a class-wide basis.  *Comcast*, 569 U.S. at 35.  In *Comcast*, the Supreme Court

16   held that, to meet the predominance requirement, the plaintiff must proffer a damages model

17   showing that "damages are susceptible of measurement across the entire class for purposes of Rule

18   23(b)(3)."  *Id.*  While the model "must measure only those damages attributable to" the plaintiff's

19   theory of liability, *id.*, the calculations "need not be exact" at the certification stage, *id.*  A plaintiff

20   must only "show that [its] damages stemmed from the defendant's actions that created the legal

21   liability," *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Pulaski*, 802

22   F.3d at 987 ("[T]he mere fact that there might be differences in damage calculations [across

23   individual members of a class] is not sufficient to defeat class certification.") (citation omitted).

24   In her prior motion for class certification, Vizcarra argued that the price premium

25   associated with her claims under the UCL, FAL, and CLRA could be measured on a class-wide

26   basis via a proposed damages model by Dr. Dennis, which would employ a choice-based conjoint

27   analysis.  Docket No. 66 at 28-33.  In its order of October 27, 2021, the Court found that, while

28   courts routinely hold that proposed choice-based conjoint models are capable of measuring a price

premium resulting from allegedly false advertisements, Vizcarra had not met her burden to show that Dr. Dennis' proposed damages model was capable of measuring the price premium associated with the Vanilla Representations on a class-wide basis, consistent with her theory of liability, as required by *Comcast*. *Id.* This was because Dr. Dennis' proposed conjoint analysis sought to measure a price premium associated with an attribute he described as the "source of vanilla flavor," which did not appear to have any specific connection to the Vanilla Representations that give rise to Vizcarra's claims in this action. *See id.* The Court, therefore, concluded that the price premium that Dr. Dennis' conjoint analysis would measure would not be one that could be attributed to the Vanilla Representations. *Id.*

In her renewed motion for class certification, Vizcarra argues that the price premium that members of the proposed class paid as a result of the Vanilla Representations can be measured on a class-wide basis via a revised price premium model proposed by Dr. Dennis, which Dr. Dennis has not yet executed. Docket No. 71 at 7-8. This revised price premium model, which seeks to measure the extent to which consumers paid a price premium as a result of the Vanilla Representations, would not employ a choice-based conjoint analysis, as Dr. Dennis' prior proposed price premium model did. Instead, the revised model would measure the price premium by employing a "contingent valuation methodology," Dennis Reply Report ¶ 45, which would involve modifying the "referendum question" he used for his revised materiality survey so that it includes an attribute for the actual historical price paid by consumers during the class period, Dennis Revised Opening Report ¶¶ 60-67. This historical price, which would be the same for both products that the revised materiality survey would use as the stimuli (i.e., the image of a product with the Vanilla Representations and the image of a product without the Vanilla Representations), would incorporate supply-side factors into the price premium analysis. *Id.* ¶¶ 60-61. Respondents of the revised materiality survey who select to purchase the product with the Vanilla Representations will be asked, as part of the proposed price premium analysis, a follow-up question about their willingness to buy the product without the Vanilla Representations when the product is made available at a lower price. *Id.* ¶¶ 62, 65. In the follow-up question, respondents will be shown four varying discounted prices, based on which Dr. Dennis will be able to measure

respondents' sensitivity to price and the discounted price at which the respondent would be willing to purchase the product without the Vanilla Representations. *Id.* ¶¶ 62, 63. The difference between the discounted price elicited and the market price shown in the survey will represent the price premium that can be attributed to the Vanilla Representations. *Id.* ¶ 64. For respondents who selected to purchase the product without the Vanilla Representations, Dr. Dennis would administer the same questions to identify the price at which the respondent would be willing to purchase the product with the Vanilla Representations. *Id.* ¶ 65.

Unilever argues that Dr. Dennis' revised price premium model "does not cure the deficiency that was the basis for the Court's rejection of the damages estimation method he proposed in support of Plaintiff's prior motion," because the revised model involves "a new type of damages analysis that references no standard or conventional methodology" and because it is "not capable of isolating and measuring any price premium that consumers might pay for the Vanilla Representations." Docket No. 74 at 12-13. Unilever contends that the revised model is not capable of measuring the price premium attributable to the Vanilla Representations because it (1) "still does not propose to use proper controls" or stimuli that reflect the packaging that consumers would observe in the real world; (2) it does not incorporate supply-side factors; and (3) Dr. Dennis' choice to test only one attribute of the package, namely the Vanilla Representations, means that the importance of the Vanilla Representations will be inflated in the minds of respondents and "will activate demand effects." *Id.* at 16-17.

Vizcarra replies that multiple courts have accepted the contingent valuation methodology upon which Dr. Dennis' proposed revised price premium model is based as a reliable method for measuring class-wide damages. Docket No. 79 at 11. She also argues that the proposed contingent valuation methodology is substantially similar to the choice-based conjoint methodology that Dr. Dennis previously proposed and that this Court noted was an acceptable method of measuring class-wide damages, except that the contingent valuation methodology "will capture consumers' valuation of non-textural Vanilla Representations, which a conjoint approach cannot." *Id.* at 12. Vizcarra also contends that Unilever's disagreements as to the ability of Dr. Dennis' proposed model to isolate and measure the price premium associated with the Vanilla

1  Representations are based on the incorrect assumption that the Court endorsed or required a

2  particular way of doing so in its October 27, 2021 order.  Vizcarra also points to portions of the

3  Dennis Reply Report in which Dr. Dennis describes why contingent valuation is "an established

4  methodology, that, when implemented properly, will produce scientifically accepted results," *id.* at

5  13 (citing Dennis Reply Report ¶¶ 53, 45).

6          The Court finds that Vizcarra has met her burden to show that the revised price premium

7  model that Dr. Dennis has proposed satisfies *Comcast*.  Dr. Dennis represents that his proposed

8  model employs contingent valuation methodology, which has been widely accepted as a reliable

9  method for calculating damages on a class-wide basis in false advertising and mislabeling cases.

10 *See Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2019 WL 3006465, at

11 *3 (S.D. Cal. July 10, 2019) ("District courts have held that contingent valuation analysis is a

12 reliable survey based methodology to determine price premium damages.") (collecting cases).

13 Further, Dr. Dennis represents that he intends to use actual, historical pricing data for the ice

14 cream product at issue in calculating the price premium associated with the Vanilla

15 Representations as part of his proposed price premium analysis.  Dr. Dennis' proposed use of

16 actual pricing data serves to incorporate supply-side factors into the price premium analysis, so

17 that his price premium calculations do not reflect only demand-side factors.  Based on the

18 foregoing, the Court is persuaded that Dr. Dennis' proposed price premium model would be

19 capable of measuring any price premium resulting from the Vanilla Representations on a class-

20 wide basis, consistent with Vizcarra's theory of liability as required by *Comcast*.  Unilever has

21 cited no authority that compels a different conclusion.  *See* Docket No. 74 at 13-17 (citing no

22 authority that would support a finding that Dr. Dennis' revised price premium model is not

23 capable of satisfying *Comcast*).

24          Unilever's criticisms of Dr. Dennis' revised price premium model go to the weight that a

25 jury would accord to Dr. Dennis' opinions as to a price premium calculated pursuant to his

26 proposed model, but they do not preclude a finding that the proposed model satisfies *Comcast*'s

27 requirements.  First, Unilever argues that the methodology underlying Dr. Dennis' proposed

28 model is "a new type of damages analysis that references no standard or conventional

United States District Court
Northern District of California

methodology," Docket No. 74 at 13, but that argument is undermined by the opinions of Unilever's own expert, Dr. Toubia, who admits that Dr. Dennis' methodology "resembles a contingent valuation method which relies on a referendum approach," *see* Toubia Rebuttal Report ¶ 20.  As noted above, contingent valuation is an acceptable methodology for calculating class-wide damages in false advertising or mislabeling cases.  Second, Unilever contends that Dr. Dennis' proposed model would not employ "proper controls" or stimuli to enable the model to reliably measure the price premium associated with the Vanilla Representations, Docket No. 71 at 13, but those arguments, as discussed above, are based on the assumption that this Court required a particular control and stimuli in its order of October 27, 2021, which it did not.  Third, Unilever argues that Dr. Dennis' proposed model does not incorporate supply-side factors, Docket No. 74 at 16-17, but Dr. Dennis intends to use historical pricing data in calculating the price premium for the Vanilla Representations, which is sufficient to satisfy *Comcast*.  *See Hilsley*, 2019 WL 3006465, at *3 ("As long as Plaintiff presents real world pricing data to support her damages model, she has sufficiently satisfied *Comcast*, and any disputes as to the method of calculating the price premium can be challenged later at trial.").  Finally, Unilever objects to Dr. Dennis' choice to test only one attribute of the product on the basis that doing so will bias the results of the price premium model, but the Court is persuaded that various measures that Dr. Dennis intends to implement as part of his proposed model will assist in minimizing the risk of bias.  *See, e.g.*, Dennis Reply Report ¶¶ 30-34.

In light of the foregoing, the Court concludes that Vizcarra has shown that damages consistent with her theory of liability are capable of measurement on a class-wide basis via Dr. Dennis' revised proposed price premium model.  *See Comcast*, 569 U.S. at 35.

### b)      UCL, FAL, and CLRA

Vizcarra argues that the predominance requirement is met with respect to her claims under the UCL, FAL, and CLRA, because the questions that she contends are capable of class-wide resolution with common proof, namely likelihood of deception and materiality, predominate over individual questions.  Unilever does not respond to that argument.

United States District Court
Northern District of California

1    Where, as here, the questions of likelihood of deception and materiality, which, as

2    discussed above, address the most critical elements of claims under the UCL, FAL, and CLRA,

3    can be resolved with common proof, courts routinely find that common questions predominate

4    over individual ones as to claims under the UCL, FAL, and CLRA.  *See, e.g.*, *Hadley v. Kellogg*

5    *Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (holding that predominance requirement

6    was met as to claims under the FAL, CLRA, and UCL in part because the plaintiff had shown that

7    likelihood of deception and materiality could be resolved on a class-wide basis based on expert

8    testimony and defendant's own internal documents); *Broomfield v. Craft Brew All., Inc*., No. 17-

9    CV-01027-BLF, 2018 WL 4952519, at *11 (N.D. Cal. Sept. 25, 2018) (same based on expert

10   testimony and defendants' admissions); *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-

11   RS, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) (same based on the defendants' own

12   marketing research and surveys).

13   Because Vizcarra has shown that the common questions of likelihood of deception and

14   materiality can be answered with common proof in the form of Dr. Dennis' opinions, as discussed

15   in detail above, the Court finds that Vizcarra has shown that the predominance requirement of

16   Rule 23(b)(3) is met as to her claims under the UCL, FAL, and CLRA.  *See Hadley*, 324 F. Supp.

17   at 1115.

18                    ii.        **Superiority**

19   Rule 23(b)(3) requires a court to consider whether a class action would be a superior

20   method of litigating the claims of the proposed class members by taking into account (A) the class

21   members' interests in individually controlling the prosecution or defense of separate actions; (B)

22   the extent and nature of any litigation concerning the controversy already begun by or against

23   class members; (C) the desirability or undesirability of concentrating the litigation of the claims in

24   the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P.

25   23(b)(3).

26   In its order of October 27, 2021, the Court found that Vizcarra had shown, and Unilever

27   did not dispute, that a class action is superior to other available methods of litigating the claims of

28   the proposed class members because (1) the amounts that each proposed class member can recover

United States District Court
Northern District of California

are not significant and are small relative to the high costs of individual litigation; (2) judicial economy would be promoted and the litigation of the claims would be made more efficient and practical; and (3) the prosecution of individual claims could establish inconsistent standards of conduct for defendant. *See* Docket No. 66 at 33-34. Accordingly, the superiority requirement of Rule 23(b)(3) is met.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Vizcarra's motion for certification of a class under Rule 23(b)(2) and Rule 23(b)(3), and it **DENIES** Unilever's motion to strike. The Court certifies the following class under Rule 23(b)(2) and Rule 23(b)(3):

> All persons residing in California who have purchased Breyers Natural Vanilla Ice Cream, for their own use and not for resale, since April 21, 2016.[14]

This Order terminates Docket Numbers 71 and 80.

\* \* \*

In light of this Order, the Court hereby SETS a compliance deadline for 9:01 a.m. on March 31, 2023. Five (5) business days prior to the date of the compliance deadline, the parties shall file a JOINT STATEMENT setting forth the parties' position with respect to the scheduling of this case. If compliance is complete, the compliance deadline will be taken off calendar.

**IT IS SO ORDERED.**

Dated: February 24, 2023

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

---

[14] Excluded from the proposed class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

31